IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| KENT CHRISTOFFERSON, et al., | ) | |
| | ) | Case No. 01-495C |
| | ) | |
| Plaintiffs | ) | Judge Eric G. Bruggink |
| | ) | |
| v. | ) | |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |
| | ) | **Hearing Requested** |
| | ) | |

**PLAINTIFFS' MOTION FOR LEAVE**
**TO FILE PROPOSED SECOND AMENDED COMPLAINT**

# TABLE OF CONTENTS

NOTICE OF MOTION AND MOTION . . . . . 1

INTRODUCTION . . . . . 2

STATEMENT OF QUESTIONS . . . . . 2

STATEMENT OF FACTS . . . . . 3

Claims for Unpaid Straight Time Work . . . . . 4

PROCEDURAL BACKGROUND . . . . . 7

ARGUMENT . . . . . 9

I. THE FEDERAL COURTS' LIBERAL POLICY ALLOWING AMENDMENT SUPPORTS GRANTING PLAINTIFFS' LEAVE TO AMEND BECAUSE "JUSTICE SO REQUIRES." . . . . . 9

II. DEFENDANT CANNOT MEET ITS BURDEN OF SHOWING UNDUE PREJUDICE TO DEFENDANT OR BAD FAITH OR INTENTIONAL DELAY BY PLAINTIFFS WHICH MIGHT JUSTIFY DENYING THE MOTION TO AMEND . . . . . 11

III. THE PROPOSED AMENDED CAUSE OF ACTION FOR STRAIGHT TIME WAGES WOULD NOT BE FUTILE ON GROUNDS OF UNTIMELINESS BECAUSE THE CLAIMS RELATE BACK TO THE ORIGINAL COMPLAINT. . . . . . 14

CONCLUSION . . . . . 15

## TABLE OF AUTHORITIES

**Cases**

Bank of America, FSB v. United States, 51 Fed.Cl. 500 (2002) . . . . . . . . . . 9

Ewer v. U.S., 63 Fed.Cl. 396 (2005) . . . . . . . . . . 14

Foman v. Davis, 371 U.S. 178 (1962) . . . . . . . . . . 9

Hickman v. U.S, 43 Fed.Cl. 424 (1999) . . . . . . . . . . 9

Senza-Gel Corp. v. Seiffhart, 803 F.2d 661 (Fed.Cir. 1986) . . . . . . . . . . 11

St. Paul Fire and Marine Ins. Co. v. United States, 31 Fed.Cl. 151 (1994) . . . . . . . . . . 11

State of Alaska v. United States, 15 Cl.Ct. 276 (1988) . . . . . . . . . . 11

Thompson v. New York Life Insurance Co., 644 F.2d 439 (5th Cir.1981). . . . . . . . . . . 9

**Codes and Statutes**

Federal Employees Pay Act (FEPA) . . . . . . . . . . 7

Fair Labor Standards Act (FLSA) . . . . . . . . . . 8

Rules of the U.S. Court of Federal Claims, Rule 15(a) . . . . . . . . . . 9, 10

Rules of the U.S. Court of Federal Claims, Rule 15(c)(2) . . . . . . . . . . 14

**NOTICE OF MOTION AND MOTION**

TO: DEFENDANT AND ITS ATTORNEYS OF RECORD

PLEASE TAKE NOTICE that as soon as the matter may be heard, in the above captioned court, plaintiffs will and hereby do move this Court for an Order allowing plaintiffs to file their Proposed Second Amended Complaint, which includes a new cause of action for payment of straight or regular time hours of work for which plaintiffs were not fully paid. The grounds for the motion are that (1) granting the motion is consistent with the federal courts' liberal policy allowing amendment ; and (2) there are no grounds for denying the motion since defendant would not be unduly prejudiced thereby and there is no basis to assert that the amendment is offered in bad faith, was intentionally delayed, or that it is futile or frivolous.

Plaintiffs request that the Court schedule this motion for a hearing.

**INTRODUCTION**

This motion seeks leave to file plaintiffs' Proposed Second Amended Complaint, which includes a new cause of action for payment of straight or regular time work (up to 40 hours per week) for which plaintiffs were not paid during the 2000 Census. See Ota Dec., Exh. 1, Proposed Second Amended Complaint.

The motion is needed because last October, defendant informed plaintiffs last October that it would not agree to compensate Concord, CA plaintiffs who were denied payment of straight time hours, although it would pay for the overtime hours for which they had not been paid. Ota Dec. ¶ 3. Up until that point, plaintiffs and defendant had been negotiating settlement of both plaintiffs' straight time and overtime claims. Ota Dec. ¶ 3.

Also, in reviewing the claim forms submitted by non-Concord plaintiffs since last September, plaintiffs' counsel unexpectedly learned that most of those responding report having been denied pay for straight or regular time work, as well as overtime pay. Ota Dec. ¶ 4. Less than half of the Concord, CA plaintiffs had claims for unpaid straight time hours. Ota Dec. ¶ 2.

In light of these two developments, plaintiffs asked defendant on December 21, 2006 to stipulate to allow plaintiffs to amend their Complaint to add a cause of action for unpaid straight time work. Ota Dec. ¶ 5. Because defendant has not agreed to such a stipulation and has argued against such an amendment (Ota Dec. ¶ 5), plaintiffs are making this motion.

**STATEMENT OF QUESTIONS**

Plaintiffs' motion to amend presents the following questions:

1. Should the strong policy of freely allowing amendments be applied to allow plaintiffs to amend their First Amended Complaint to include a cause of action for plaintiffs' claims for payment of regular or straight time work?

2. Can defendant meet its burden of proving that it would be unduly prejudiced by allowing plaintiffs leave to amend their First Amended Complaint to include a cause of action for plaintiffs' claims for payment of regular or straight time work?

3. Can defendant establish that allowing plaintiffs leave to amend their First Amended Complaint to include a cause of action for plaintiffs' claims for payment of regular or straight time work should be denied because the proposed amendment would be futile?

## STATEMENT OF FACTS

This action concerns claims for unpaid overtime work by persons who worked on the 2000 Census. Plaintiffs are about 7,000 of the approximately 500,000 temporary employees who worked for the U.S. Census Bureau in 2000. Plaintiffs worked in some 22 states (i.e. New York, New Jersey, Illinois, Georgia, Florida, Alaska, California, Arizona, Montana, Arkansas, Missouri, Indiana, Connecticut, Massachusetts, Vermont, Pennsylvania, Michigan, Kansas, Oregon, Louisiana, Mississippi and Nevada) and the District of Columbia.

Plaintiffs were the field workers who hit the streets of their local communities to complete census questionnaires for residents who failed to mail their forms in, and for those, such as the homeless or institutionalized, who might not otherwise be counted.

Census field employees worked in a variety of positions. Most numerous were the Enumerators, who did the actual door-to-door work. Most Enumerators were part-time employees, but many worked full-time on a regular basis. Crew Leaders and Assistant Crew Leaders supervised a crew of usually eight to eighteen Enumerators. Field Operations Supervisors supervised usually about six to eight Crew Leaders and their crews.

Due to a number of factors, including rigid deadlines, understaffing, difficult and dangerous conditions, and overwhelming work loads, plaintiffs often worked overtime, that is,

more than 40 hours per week. Because of the rigid deadlines, supervisors put enormous pressure on their subordinates to complete the work at all costs. However, Census supervisors almost always refused to sign time sheets showing more than eight hours per day or more than 40 hours per week, even when they knew the employees had worked excess hours. Some employees were told to carry over their overtime hours to the following weeks. Employees who complained were terminated or not given any more work.

**Claims for Unpaid Straight Time Work:** In reviewing the claim forms of the non-Concord plaintiffs, plaintiffs' counsel found that an unexpectedly large number of the responding plaintiffs report that they were denied pay for some straight time hours, as well as overtime hours. The Concord plaintiffs appear to have been somewhat different than the other plaintiffs in that the majority of Concord plaintiffs did not claim to have been denied pay for straight time hours.

Non-Concord plaintiffs who have claims for unpaid straight time hours appear to fall into four main categories: (1) those who were told they could only record on their time sheets a certain number of hours, which depended on how m any completed census questionnaires they completed; (2) those who were told that Enumerators were part-time employees and therefore, could not record 40 hours per week on their time sheets; (3) those who were told they could not record as work time on their time sheets time spent on certain types of work, such as work done at home, meetings with their supervisor, travel time, or other work time; (4) those whose straight time hours were reduced without explanation or for reasons other than the reasons above.

(1) Those who were told they could only record on their time sheets a certain number of hours, depending on how many completed census questionnaires they turned in. See the Cage, Jones, Lopez-Kallis, McCowan, Mitchell, Romero, Sciacca, Sevilla, Walker, Waters and Zabala

Declarations.[1] Illustrative of this category is Anidia Zabala, an accountant educated at the University of California, Berkeley and Stanford University. Ms. Zabala worked as an Enumerator as was told by her supervisor that she was "only allowed [to record] 30-45 minutes for a short form and an hour and a half to two hours for a long form." Zabala Dec. ¶ 3. Her supervisor told her to under-report her hours to conform to the desired ratio or quota. Id. She states, "I was not happy about having to adjust some of my hours because I was not padding my time." Id. Zabala went along because those who did not were flagged as having low productivity and were fired. Id.

Myra Romero, who worked as a Field Operations Supervisor in White Plains, NY, says she was told by her supervisor to enforce a "quota" system in which Enumerators were paid according to the number of cases they completed. Romero Dec. ¶ 5. Romero ordered her Crew Leaders to enforce this policy among their Enumerators. Id.

Many plaintiffs report that they had certain cases where it was very difficult or time-consuming to contact certain individuals in order to complete their book of assigned cases. In some of these cases, plaintiffs were denied pay for some of their hours. For instance, Joseph Sciacca, a retired U.S. Postal Service supervisor, who won two awards for high productivity during the 2000 Census, took 6.5 hours to locate one difficult-to-find individual. Sciacca Dec. ¶ 3. However, his supervisor crossed out his 6.5 hours on the time sheet and wrote 1.0 hours instead. Id. A copy of Sciacca's corrected time sheet is attached to his Declaration.

(2) Those who were told that since Enumerators were part-time employees, they could not record 40 hours per week on their time sheets. See the Lopez-Kallis, Monroe, Santiago, Shoffner

---

[1] The Declarations referenced in this paragraph are attached, in alphabetical order, as Exhibit 2 to the Declaration of John Ota.

and Wright Declarations. For example,, James Wright, an iron worker in Yonkers, NY, who worked at Ground Zero after September 11, 2001, states that a supervisor told him "that the enumerators had a set number of hours that they were permitted to report because they were supposed to be part time employees. I think it was 25 hours per week." Wright Dec. ¶ 3. Frank Santiago, an Information Services Manager in New Jersey says there was a limit on how many hours Enumerators could record on their time sheets. Santiago Dec. ¶ 2. "[W]e couldn't get paid for more than a certain number of hours because we weren't full time." Id.

(3) Those who were told they could not record as work time on their time sheets time they spent working at home, meeting with their supervisor, meal times during which they worked, travel time or other work time. See the Cage, Chan, Lockhart, Schlacter and Walker Declarations. Even though she completed between one-quarter and half of her forms through calls from her home, Enumerator Ethel Lockhart's supervisor made her remove hours from her time sheets for work done at home, telling her that Enumerators "could only put on our time sheets the time were out going door to door." Lockhart Dec. ¶ 2.

Special Operations Supervisor Linda Chan was ordered to work on some weekends, but told that she could not report those hours on her time sheet. Chan Dec. ¶ 6. Therefore, she lost pay for some of her straight time hours when the rest of her hours that week amounted to less than 40. Id. Filmmaker Adam Schlacter in Los Angeles, says he was told by his supervisor that he could not include driving time as work time, even though he did from a half hour to three hours of traveling per day. Schlacter Dec. ¶¶ 3-4.

(4) Those whose straight time hours were reduced without explanation or for reasons other than those in the first three categories. See the Chan, Compton, Lockhart, Monroe, Shoffner and Watahomigie Declarations. Henry Compton, a Crew Leader who did work in

Alaska from the Bering Sea to the Yukon River had his straight time hours cut, sometimes in half or more, with the explanation that that was all they could afford to pay him. Compton Dec. ¶¶ 2-3. Special Education teacher Alvin Monroe reports that he was not allowed to record the number of hours he actually worked. Monroe Dec. ¶ 2. Instead, he was only allowed to record the number of hours his supervisor told him to record, which was less than his actual work hours. Id.

Angelita Watahomigie, who helped enumerate her Havasupai Reservation in the Grand Canyon in Arizona recalls that she worked 55 to 60 hours one week and 35 to 45 hours the next week, but was only paid for eight hours the first week and four hours the second. Watahomigie Dec. ¶ 2. A census manager told her the reason was that her time sheets were late. Id.

**PROCEDURAL BACKGROUND:**

The Complaint in this action was filed on or about August 28, 2001. With the written consent of defendant, plaintiffs filed a First Amended Complaint on or about August 13, 2003, adding a claim under the Federal Employees Pay Act (FEPA) for plaintiffs who worked as Field Operations Supervisors during the 2000 Census.[2]

Because plaintiffs numbered about 7,000 and were located in 22 states around the country, on October 8, 2003, the Court ordered the parties to first concentrate on plaintiffs who worked in the Concord, California local census office. Defendants subsequently deposed all Concord plaintiffs who wished to proceed with their claims. During the depositions, it became clear that some, but not a majority of Concord plaintiffs had been denied pay for some of their regular time hours (i.e., hours up to 40 hours per week), as well as for their overtime hours. Ota

[2] In plaintiffs' Proposed Second Amended Complaint (Ota Dec., Exh. 1), the FEPA claim is withdrawn because case authorities since the filing of the First Amended Complaint have convinced plaintiffs that the FEPA claim is no longer viable.

Dec. ¶ 2.

Following mediation by Judge Eric G. Bruggink in August 2004, on February 17-18, 2005, counsel for plaintiffs and defendant signed a Memorandum of Understanding for Settlement (MOU). Ota Dec., Exh. 3. In the MOU, the parties agreed on a series of steps to resolve the Concord cases and the cases of plaintiffs outside Concord. Id. For the non-Concord plaintiffs, the MOU called for sending out a questionnaire, identification of plaintiffs subject to further discovery, statistical analysis and negotiations. Id. at pp. 2-3.

Cross motions for summary judgment were filed in late 2004 and the Court, in an order dated February 28, 2005, granted defendant's motion in part, but denied it with regard to the FLSA exempt status of the Field Operations Supervisors (FOSs). The Court conducted a trial from May 9-13, 2005 in San Francisco on the issue of FOS exempt status. In an order dated July 29, 2005, the Court determined that FOSs were not exempt employees under the FLSA.

Once the status of the FOSs was settled, the parties negotiated settlements for the individual Concord plaintiffs. During the negotiations, plaintiffs and defendant discussed compensation for unpaid straight time hours as well as for unpaid overtime hours. Ota Dec. ¶ 3. It was not until October 2006 that defendant notified plaintiffs that they would compensate for unpaid overtime hours, but not straight time hours. Ota Dec. ¶ 3.

The parties reached agreement on a method for processing the claims of plaintiffs other than those who worked at the Concord office. In about September 2006, a claim form agreed upon by the parties and the Court was mailed out. Ota Dec. ¶ 4. Plaintiffs' counsel has been reviewing the claim forms, contacting plaintiffs to clarify the information where needed, and compiling the responses in a database which will be turned over to defendant. Ota Dec. ¶ 4. In reviewing these claim forms and talking to the plaintiffs, counsel became aware that a majority of

responding plaintiffs had claims for unpaid straight time as well as overtime. Ota Dec. ¶ 4.

On December 21, 2006, plaintiffs' counsel asked defense counsel if defendant would stipulate to allowing plaintiffs to amend their Complaint to add a cause of action for unpaid straight time claims. Ota Dec. ¶ 5. In response, defense counsel has produced legal authority for the proposition that such an amendment would not be viable. Ota Dec. ¶ 5. Plaintiffs have construed this response to mean that defendant will not agree to such a stipulation.

## ARGUMENT

### I. THE FEDERAL COURTS' LIBERAL POLICY ALLOWING AMENDMENT SUPPORTS GRANTING PLAINTIFFS' LEAVE TO AMEND BECAUSE "JUSTICE SO REQUIRES."

Rule 15(a) of the Rules of the U.S. Court of Federal Claims requires that leave to amend "shall be freely given when justice so requires." The policy underlying Rule 15(a) is one in favor of liberal amendment. Thompson v. New York Life Insurance Co., 644 F.2d 439, 444 (5th Cir.1981). "In the absence of any apparent or declared reason–such as undue delay, bad faith or dilatory motive on the part of the movant, futility of the amendment–leave sought should be freely given." Hickman v. U.S, 43 Fed.Cl. 424,438-439 (1999) citing Foman v. Davis, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962). Leave to amend is to be freely given unless the opposing party makes a showing of undue prejudice, bad faith, undue delay or futility of amendment. Bank of America, FSB v. United States, 51 Fed.Cl. 500, 513 (2002).

Here, justice requires that plaintiffs be permitted to amend their complaint to include their straight/regular time claims, so that they can recover all wages they were unfairly denied, not just some of their unpaid wages. As plaintiffs' counsel has contacted plaintiffs around the country other than the "test case" Concord, CA plaintiffs, it has become apparent that straight time claims are much more prevalent among plaintiffs as a whole than they were among the Concord

plaintiffs. Ota Dec. ¶ 4.

While less than 27 percent (14 out of 52) of the Concord plaintiffs had straight time claims (Ota Dec. ¶ 2), an estimated 56 percent (1069 out of 1885) of all responding plaintiffs other than the Concord plaintiffs, whose claims have been input into the database[3], have straight time claims (Ota Dec. ¶ 4). The average claim of unpaid straight time is for about 25 hours. Ota Dec. ¶ 4. Most of those with claims for unpaid straight time worked as Enumerators and thus, were often the field workers least able to afford to lose some of their hard-earned wages.

Denying plaintiffs' motion to amend the Complaint to add a claim for unpaid straight time hours would be unjust because it would deny plaintiffs' payment of wages they earned through their hard work, often under difficult conditions, on a project of great importance to our government and its citizens. Denying plaintiff's motion to amend would also encourage defendant during the upcoming 2010 Census to continue and perhaps expand its unlawful 2000 Census practice of denying payment to field workers for some of their straight or regular time work hours.

Thus, Rule 15(a), which requires that leave to amend "shall be freely given when justice so requires" and the strong federal policy favoring amendment, favor granting plaintiffs leave to amend their First Amended Complaint to include their cause of action for payment of straight time hours which they were unjustly denied in 2000. See plaintiffs' Proposed Second Amended Complaint. Ota Dec., Exh. 1.

[3] At the time these figures were compiled, data from about 89 percent of the 2,768 non-Concord plaintiffs who had submitted claim forms, had been entered into plaintiffs' database. Ota Dec. ¶ 4.

## II. DEFENDANT CANNOT MEET ITS BURDEN OF SHOWING UNDUE PREJUDICE TO DEFENDANT OR BAD FAITH OR INTENTIONAL DELAY BY PLAINTIFFS WHICH MIGHT JUSTIFY DENYING THE MOTION TO AMEND

Factors such as undue prejudice to defendant, or bad faith or intentional delay by plaintiffs – which might override the liberal federal policy of allowing amendment of pleadings and be the basis for denying a motion to amend – are not present here.

The "crucial factor" in denying a motion to amend is a showing that the opposing party will be "severely disadvantaged or incapable of presenting facts or evidence.. . . . [A] showing of undue or substantial prejudice is an imperative to warrant the denial of a motion to amend a complaint." State of Alaska v. United States, 15 Cl.Ct. 276, 279 (1988). For courts "to avoid abusing their discretion . . . . leave to amend should be freely permitted absent sufficient explicit reasons indicating that it should be denied." Id. "Mere annoyance and inconvenience . . . are insufficient bases to warrant a denial of a motion to amend." St. Paul Fire and Marine Ins. Co. v. United States, 31 Fed.Cl. 151, 153 (1994). The party opposing amendment bears the burden of showing undue prejudice. Senza-Gel Corp. v. Seiffhart, 803 F.2d 661, 667 (Fed.Cir. 1986).

To successfully assert undue prejudice, the non-moving party has the burden of affirmatively establishing severe disadvantage or inability to present facts or evidence; the necessity of conducting extensive research shortly before trial due to the introduction of new evidence or legal theories; or excessive, intentional or bad faith delay that is unduly burdensome. State of Alaska, 15 Cl.Ct. at 279-280. The "mere fact that an amendment is offered late in the case is . . . not enough to bar it; amendments may be offered at trial, or even after reversal and remand." Senza-Gel Corp., 803 F.2d at 667.

Here, defendant cannot show undue prejudice. Plaintiffs' proposed amendment will not severely disadvantage defendant or make defendant unable to present facts or evidence. On the

contrary, defendant has ample opportunity to gather facts and evidence regarding the straight time claims. Defendant has not yet begun to review in detail the claims of the non-Concord plaintiffs. Defendant has yet to identify which of the non-Concord plaintiffs it wants to depose and none of the depositions have been scheduled. See MOU, Ota Dec., Exh. 3 ¶ 8. Thus, if plaintiffs' motion to amend is granted, defendant will have ample time to gather its facts and evidence.

Plaintiffs' motion to amend does not come on the eve of trial, thus, defendant is not prejudiced by having to conduct extensive research shortly before trial. Since there is no trial date set in this action, Defendant will not be prejudiced by a lack of time to conduct research that may be necessitated by the proposed amendment to the Complaint. See Ota Dec., Exh. 1, Proposed Second Amended Complaint; Exh. 3, MOU.

Moreover, plaintiffs did not intentionally or in bad faith delay in moving to amend the complaint. On the contrary, plaintiff moved diligently to amend the Complaint once it became evident that defendant would not otherwise agree to pay plaintiffs' straight time claims.

During the phase of the case in which the parties concentrated on the plaintiffs who worked in the Concord, CA local census office, less than 27 percent of plaintiffs had claims for unpaid straight time hours, and those who did mostly had claims involving a small number of hours. Ota Dec. ¶ 2. Until the Court's ruling on February 28, 2005, many of these straight time claims were thought to be overtime claims because they involved hours worked in excess of eight hours per day. Ota Dec. ¶ 2. During negotiations on the Concord plaintiffs' claims, counsel for plaintiffs and defendant discussed settlement of the incidental straight time claims, but it was not until October 31, 2006 that defendant made it clear that it would not negotiate payment of straight time claims. Ota Dec. ¶ 3.

Meanwhile, claim forms were mailed to the non-Concord plaintiffs in about September 2006 and plaintiffs's counsel began contacting plaintiffs and processing the 2,768 forms that were returned, a process that is continuing, but near completion. Ota Dec. ¶ 4. Only during this process did it become clear that the majority of non-Concord plaintiffs had straight time claims. Ota Dec. ¶ 4.

Soon after learning that defendant would not agree to pay straight time claims and also learning the extent of straight time claims among the non-Concord plaintiffs, plaintiffs' counsel asked defense counsel on December 21, 2006 if he would stipulate to amending the Complaint to add a cause of action for straight time claims. Ota Dec. ¶ 5. Defense counsel did not agree to such a stipulation and cited legal authority and arguments against such an amendment as recently as January 17, 2007. Ota Dec. ¶ 5. Finally, before a motion to amend could be made, plaintiffs' counsel needed to research the legal grounds for a cause of action for unpaid straight time wages, and also collected declarations from plaintiffs to use as evidence that unpaid straight time wages was a significant issue for the non-Concord plaintiffs. Ota Dec. ¶ 5.

Thus, plaintiffs' Motion to Amend was brought within a reasonably short period of time after the necessity for bringing such a motion became clear, and there is no indication of intentional or bad faith delay in bringing the motion.

Because defendant is not unduly prejudiced and because there was no intentional or bad faith delay in bringing the motion to amend, the motion to amend the First Amended Complaint to add a cause of action for unpaid straight time wages should be granted. See plaintiffs' Proposed Second Amended Complaint. Ota Dec., Exh. 1.

## III. THE PROPOSED AMENDED CAUSE OF ACTION FOR STRAIGHT TIME WAGES WOULD NOT BE FUTILE ON GROUNDS OF UNTIMELINESS BECAUSE THE CLAIMS RELATE BACK TO THE ORIGINAL COMPLAINT.

Because plaintiffs' proposed cause of action for unpaid straight time wages arose out of the same conduct, transaction or occurrence as plaintiff's cause of action for unpaid overtime wages, the proposed claims are timely because they relate back to the date of the original Complaint in this action. Therefore, the proposed new cause of action would not be futile on grounds of untimeliness.

Under the Rule 15(c)(2) of the Rules of the U.S. Court of Federal Claims, "an amendment of a pleading relates back to the date of the original pleading when the claim or defense asserted in the amended pleading arose out of the conduct, transaction or occurrence set forth or attempted to be set forth in the original pleading." Ewer v. U.S., 63 Fed.Cl. 396, 400 (2005).

Here, plaintiffs' straight time claims arise out of the same conduct, transaction and occurrence set forth in the original Complaint – defendant's failure to pay plaintiffs for *all* of their work time. Thus, the amendment of including plaintiffs' straight time claims would relate back to the date the original Complaint was filed. The amendment would not be futile on the ground of untimeliness and therefore, should be allowed.

//

//

//

//

//

//

**CONCLUSION**

For the above-stated reasons, plaintiffs respectfully request that the Court issue an Order granting plaintiffs leave to file their Proposed Second Amended Complaint, which includes a new cause of action for unpaid straight time wages

DATED: February 13, 2007

Respectfully submitted,

MINAMI TAMAKI LLP

s/

JACK W. LEE
360 Post St. 8th Floor
San Francisco, CA 94108-4903
Telephone: (415) 788-9000
Fax: (415) 398-3887

Attorney for Plaintiffs