# EXHIBIT 3

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| KENT CHRISTOFFERSON, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 01-495C |
| | ) | (Judge Bruggink) |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OF UNDERSTANDING FOR SETTLEMENT**

1. Pursuant to the parties' confidentiality agreement, the parties memorialize their efforts to resolve this case as follows.

2. From August 24-26, 2004, the parties in this case met with their mediator, Senior Judge Eric Bruggink, to design a procedure for resolving the claims of the non-Concord, California plaintiffs in this case. Participating in the meetings were Judge Eric Bruggink and Chris Danley (Judge S. Braden's law clerk), Jack W. Lee and John Ota for the plaintiffs, Steve Gillingham (DOJ), and Rayna Eller (Department of Commerce, Office of General Counsel) for the defendant. They were joined on August 25, 2004, by statisticians Dr. Richard Drogin, for the plaintiffs, and Dr. Pat Cantwell, for the defendant. Since then, the parties have had additional discussions.

3. The parties' negotiators have reached agreement upon settlement amounts for 20 out of 53 Concord plaintiff claims (one plaintiff has a FOS and non-FOS claim). All or part of 14 of the remaining 33 will be subject to motions for summary judgment, as explained further below. The parties will discuss the remaining 19 with an eye towards settling them as soon as possible. See Attachment (Summary of Settlement Negotiations as of October 4, 2004).

4. The parties agree to make their best efforts to resolve the remaining 7500+ claims through the process described below. The parties will advise the court of the outline of this procedure to obtain the time necessary to execute this plan, and may seek court approval of particular portions if they determine that doing so will aid the process. In general, the process will include four general phases: first, completion of a questionnaire to elicit information about plaintiffs' claims and to advise plaintiffs of this process and of their obligations; second, depositions of some plaintiffs; third, the negotiation of the claims of the deponents; and fourth, the application of the deposition results to the claims of non-deposed plaintiffs. The process is detailed below.

5. Step One: Obtaining Plaintiffs' Work Data. In order to provide plaintiffs' work data, the Census Bureau must have plaintiffs' SSNs in electronic form. Plaintiffs' counsel will provide the SSNs for the majority of the plaintiffs, but the parties will cooperate to obtain the SSNs of those plaintiffs whose current SSNs are unknown.

6. Step Two: Questionnaires. The parties agree that the questionnaires will be sent by plaintiffs' counsel. The questionnaire format remains a matter of discussion between the parties. The intent of the questionnaire is to provide more detail concerning the plaintiffs' claims. Plaintiffs will be furnished Census payroll data that will identify the work weeks at issue, the hours submitted for payment, and the total hours paid by week to assist them in completing the questionnaire. Plaintiffs will be asked to provide information, to the best of their recollection, asking for each day they worked overtime and how much overtime they worked.

7. Step Three: Processing of Questionnaires. The questionnaires will be returned to the Plaintiffs' counsel. Upon their return, plaintiffs' counsel will provide them to a third party administrator ("TPA") to be hired by plaintiff. The role of the TPA will be to assist plaintiffs' counsel to: (a) create a database identifying plaintiffs, their filing dates, and questionnaire return dates; (b) compile a listing of those who have not responded by the deadline; (c) respond to questions of plaintiffs and refer them to legal counsel; and (d) create a database that will record all relevant information contained in the questionnaire. Communications between plaintiffs and the TPA will not be considered a waiver of any applicable attorney-client or work product privilege.

8. Step Four: Identification of Deponents Subject To Further Discovery. After the questionnaires are returned and the data compiled, the parties will examine the data for the purpose of dividing the returns into groups and identifying specific groups (strata) for further discovery, including deposition. The first group, the "certainty" group, will consist of plaintiffs nominated by each side. All members of the certainty group will be deposed. The members of the certainty group cannot be identified until questionnaires are returned. Following depositions, the certainty group's claims will be negotiated on an individual basis. Any adjustment to their claims shall not affect the claims or the adjustments of any other plaintiffs.

9. Once the certainty group has been determined, the remaining plaintiffs will be divided into strata designed to combine like plaintiffs. The parties have discussed useful stratifying factors such as job position, size of claim, and other characteristics. Once the stratification has been agreed upon, the parties will randomly select a sub group in each stratum for depositions. Nothing in this Memorandum of Understanding prevents the parties from deposing a smaller pilot group of the above sample and relying upon the pilot group for extrapolations if both parties agree. The purpose of the sampling is: (1) to measure the inverse ratio (reciprocal) of the amount of overtime claimed to the amount of overtime negotiated after deposition, based on a sampling of plaintiffs, not to estimate the overall amount of overtime; and (2) to estimate the variability of this sample ratio. The parties agree that, whenever possible, they should plan the depositions in a way that minimizes any burden on plaintiffs, including limiting travel distance

and commute time. Ideas discussed included holding depositions in major urban centers and using telephone depositions.

10. Step Five: Negotiation. Following the depositions, the parties will negotiate amounts to be paid individual deponents. Then, as previously agreed, within each stratum, the parties will compute the ratio of the sum of the negotiated Overtime amounts to the sum of the claimed Overtime amounts ("Ratio"). For each non-deponent in the stratum, the Ratio will be applied to the amount of Overtime he or she has claimed, which will provide an estimated amount of overtime that would have been negotiated, had that person been deposed. This estimated amount will be the amount to be paid such non-deponents.

11. Dispute Resolution Going Forward. The parties agree that the participation of a mediator and/or the court for resolution of issues related to their negotiated process and, potentially, the negotiation of individual pay amounts, is indispensable.

12. Legal Issues That Require Resolution. The resolution of certain legal issues will impact the negotiations in this matter. Thus, the parties have presented the following issues to the Court for resolution by summary judgment:

1. Whether the Concord Field Operations Supervisors are barred from receiving overtime pay under FLSA because they are exempt as executive employees.[1]

2. Whether the Concord Field Operations Supervisors are barred from claiming overtime under FEPA because they cannot show that their overtime work was "ordered and approved" in writing.

3. Whether plaintiffs may claim back pay under the FLSA for days in which they worked more than 8 hours per day, in weeks in which they did not work more than 40 hours.

4. Whether the claims of certain plaintiffs are time-barred either fully or partially by the FLSA's three-year statute of limitations.

13. The parties have filed cross motions for summary judgment on these issues and oral argument was held in February 3, 2005. During the time the motion is pending, the parties intend to pursue the resolution process to the extent possible.

---

[1] It is conceivable that the resolution of the issue of the exempt status of FOS, with respect to their duties, would not be finally resolved by way of summary judgment.

14. The parties agree to use their best efforts to resolve this case by March, 2006 [this now sounds unrealistic, as the original suppositions about processing did not materialize and we concentrated on the MSJs (and now a trial) instead].

15. Unaddressed/Unresolved Issues. In addition to any such issues noted above, the following issues were not resolved, but will be discussed at a later date.

a. Identifying claimants whose questionnaires demonstrate that, on their face, they are not claiming or entitled to payment. Prior to the mediation, the parties acknowledge that certain responses like "I have no interest in pursuing any overtime claim" may be a basis for elimination from the lawsuit, but the parties must agree on how to interpret ambiguous or contradictory responses.

b. Dismissal or severance of claims by those who were not employed as decennial field staff.

c. Size and choice of the certainty group.

d. Determination of other strata of respondents, and number of deponents in these strata.

e. Resolving complaints presented by plaintiffs who do not agree with their negotiated amounts.

Jack W. Lee
Attorney for Plaintiffs

Date: 2/18/05

Steven Gillingham
Attorney for Defendant

Date: 2/17/05

VERSION: February 8, 2005