IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| KENT CHRISTOFFERSON, et al., | ) | |
| | ) | Case No. 01-495C |
| | ) | |
| Plaintiffs | ) | Judge Eric G. Bruggink |
| | ) | |
| v. | ) | |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**PLAINTIFFS' REPLY BRIEF IN SUPPORT OF MOTION FOR**

**LEAVE TO FILE PROPOSED SECOND AMENDED COMPLAINT**

## TABLE OF CONTENTS

ARGUMENT……………………………………………………………………………….....1

I. DEFENDANT HAS FAILED TO MEET ITS BURDEN OF PROVING THAT IT WILL BE PREJUDICED IF PLAINTIFFS ARE ALLOWED TO FILE THEIR PROPOSED SECOND AMENDED COMPLAINT…………………….....................................................1

A. JUSTICE REQUIRES THAT PLAINTIFFS BE PERMITTED TO AMEND THEIR COMPLAINT TO ADD THE STRAIGHT TIME CLAIMS………………………1

B. DEFENDANT PROVED ONLY INCONVENIENCE, NOT UNDUE PREJUDICE SUFFICIENT TO WARRANT DENYING MOTION FOR LEAVE TO AMEND........................................................................................................................2

C. THE DELAY IN BRINGING THE MOTION FOR LEAVE TO AMEND WAS NOT IN BAD FAITH AND HAS NOT UNDULY PREJUDICED DEFENDANT…………………………………………………………………4

II. PLAINTIFFS' PROPOSED AMENDED COMPLAINT IS NOT FUTILE……………….8

A. THIS COURT HAS JURISDICTION OVER PLAINTIFFS' STRAIGHT TIME CLAIMS………………………………………………………………………...8

B. PLAINTIFFS' STRAIGHT TIME CLAIMS RELATE BACK TO THE ORIGINAL COMPLAINT AND THUS, ARE NOT BARRED BY THE STATUTE OF LIMITATIONS…………………………………………………………………10

C. SUITABILITY OR UNSUITABILITY FOR CLASS ACTION STATUS IS NOT A REASON TO DENY LEAVE TO AMEND THE COMPLAINT………………12

CONCLUSION.......................................................................................................................13

# TABLE OF AUTHORITIES

## Cases


Bank of America, FSB v. United States, 51 Fed.Cl. 500 (2002)……………………………………...….1

Carroll v. United States, 67 Fed.Cl. 82 (2005)……………………………………………………..9, 10

Christofferson v. United States, 67 Fed.Cl. 68 (2005)…………………………………………..……10

Davis v. Food Lion, 729 F.2d 1274 (4th Cir. 1986)…………………………………………………..3

Ewer v. United States, 63 Fed.Cl. 396 (2005)…………………………………………………......11

Foman v. Davis, 371 U.S. 178, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962)………………………………1

Gahagan v. United States, 19 Cl.Ct. 168 (1989)……………………………………………………..9

Hickman v. U.S, 43 Fed.Cl. 424,438-439 (1999)……………………………………………………1

Intrepid v. Pollock, 907 F.2d 1125 (Fed.Cir. 1990)………………………………………………...11

Jaynes v. United States, 68 Fed.Cl. 747 (2005)……………………………………………………...9

Senza-Gel Corp. v. Seiffhart, 803 F.2d 661 (Fed.Cir. 1986)…………………………………...2, 4

State of Alaska v. United States, 15 Cl.Ct. 276 (1988)…………………………………………....2, 4

St. Paul Fire and Marine Ins. Co. v. United States, 31 Fed.Cl. 151 (1994)………………………..2

Te-Moak Bands of Western Shoshone Indians of Nevada v. United States,
948 F.2d 1258 (Fed.Cir. 1991)………………………………………………………………….6, 7

United States v. Connolly, 716 F.2d 882 (Fed.Cir. 1983)……………………………………9, 10

Vann v. United States, 190 Ct.Cl. 546, 420 F.2d 968 (1970)…………………………………….11

Worthington v. United States, 168 F.3d 24 (Fed.Cir. 1999)………………………………….9, 10


## Codes, Statutes and Court Rules


Back Pay Act, 5 U.S.C. section 5596…………………………………………………………………8

Fair Labor Standards Act (FLSA)……………………………………………………………….....9

Pub.L. No. 93-259 (1974)…………………………………………………………………………9

Rule 15(a) of the Rules of the U.S. Court of Federal Claims……………………………………….1

Rule 15(c)(2) of the Rules of the U.S. Court of Federal Claims……………………………....11

Rule 23(b) of the Rules of the U.S. Court of Federal Claims…………………………………….12

Rule 23(c)(2) of the Rules of the U.S. Court of Federal Claims……………………………....13

5 C.F.R. 551.301(a)…………………………………………………………………………9, 10

5 C.F.R. 534.304(b) ………………………………………………………………………9, 10

5 C.F.R. 534.305(b) ………………………………………………………………………9, 10

5 C.F.R. part 551……………………………………………………………………….…10

5 U.S.C. 5304 ……………………………………………………………………….….9

13 U.S.C. section 23…………………………………………………………………………10

13 U.S.C. section 23(a)………………………………………………………………………10

29 U.S.C. section 204(f)……………………………………………………………………...9

29 U.S.C. section 216(b) ……………………………………………………………………13

# ARGUMENT

## I. DEFENDANT HAS FAILED TO MEET ITS BURDEN OF PROVING THAT IT WILL BE PREJUDICED IF PLAINTIFFS ARE ALLOWED TO FILE THEIR PROPOSED SECOND AMENDED COMPLAINT

Defendant has not met its burden of proving that it will be "severely disadvantaged or incapable of presenting facts or evidence" and therefore, failed to prove sufficient undue prejudice to justify denying plaintiffs' motion to amend. At most, defendant complains of inconvenience, not prejudice if the motion is granted.

Defendant cannot demonstrate prejudice because it learned of and had an opportunity to investigate plaintiffs' straight time claims as far back as 2000, and certainly by 2003, when defendant began deposing Concord, CA plaintiffs. Furthermore, because any new claims would be untimely, the proposed new straight time claim will only affect existing plaintiffs. Plaintiffs' proposed amendment will not open up this case to thousands of new plaintiffs.

### A. JUSTICE REQUIRES THAT PLAINTIFFS BE PERMITTED TO AMEND THEIR COMPLAINT TO ADD THE STRAIGHT TIME CLAIMS

Rule 15(a) of the Rules of the U.S. Court of Federal Claims requires that leave to amend "shall be freely given when justice so requires." This Court has held that, "In the absence of any apparent or declared reason–such as undue delay, bad faith or dilatory motive on the part of the movant, futility of the amendment–leave sought should be freely given." Hickman v. U.S, 43 Fed.Cl. 424,438-439 (1999) citing Foman v. Davis, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962). Leave to amend is to be freely given unless the opposing party makes a showing of undue prejudice, bad faith, undue delay or futility of amendment. Bank of America, FSB v. United States, 51 Fed.Cl. 500, 513 (2002).

Here, justice requires that plaintiffs be permitted to amend their complaint to include

their straight/regular time claims so that plaintiffs can seek to recover wages they earned through their hard work, often under difficult conditions, on a project of great importance to our government and its citizens. Most plaintiffs were individuals at the low end of the socio-economic scale, and therefore were among those who can least afford to be denied part of their hard-earned pay. Denying plaintiff's motion to amend would also encourage defendant during the upcoming 2010 Census to continue and perhaps expand its unlawful 2000 Census practice of denying payment to field workers for some of their straight time work hours.

**B. DEFENDANT PROVED ONLY INCONVENIENCE, NOT UNDUE PREJUDICE SUFFICIENT TO WARRANT DENYING MOTION FOR LEAVE TO AMEND**

The "crucial factor" in denying a motion to amend is a showing that the opposing party will be "severely disadvantaged or incapable of presenting facts or evidence.. . . . [A] showing of undue or substantial prejudice is an imperative to warrant the denial of a motion to amend a complaint." State of Alaska v. United States, 15 Cl.Ct. 276, 279 (1988). For courts "to avoid abusing their discretion . . . . leave to amend should be freely permitted absent sufficient explicit reasons indicating that it should be denied." Id.

"Mere annoyance and inconvenience . . . are insufficient bases to warrant a denial of a motion to amend." St. Paul Fire and Marine Ins. Co. v. United States, 31 Fed.Cl. 151, 153 (1994). The party opposing amendment bears the burden of showing undue prejudice. Senza-Gel Corp. v. Seiffhart, 803 F.2d 661, 667 (Fed.Cir. 1986).

Defendant will not be unduly prejudiced if the motion is granted. Plaintiffs' proposed amendment will not severely disadvantage defendant or make defendant unable to present facts or evidence. On the contrary, defendant still has ample opportunity to gather facts and evidence

regarding the straight time claims. Defendant has just begun to review in detail the claims of the non-Concord plaintiffs. Defendant has yet to identify which of the non-Concord plaintiffs it wants to depose and none of the depositions have been scheduled. See MOU, Ota Dec., Exh. 3 ¶ 8. Thus, if plaintiffs' motion to amend is granted, defendant will have ample time to gather its facts and evidence.

The specific examples of "prejudice" cited by defendant show at most, mere inconvenience, not that defendant will be "severely disadvantaged or incapable of presenting facts or evidence." For instance, defendant argues that if the motion is granted, it will have to examine each of the daily timesheets of plaintiffs, as opposed to summary of weekly hours. Defendant has not explained why it must evaluate daily timesheets when it has not done so for plaintiffs' overtime claims. However, even if true, having to examine daily timesheets shows mere inconvenience, not prejudice.

Defendant exaggerates when it argues that it will be nearly "impossible" to locate plaintiffs' supervisors to verify or challenge plaintiffs' accounts of how and why plaintiffs were not paid for all of their straight time work hours – because plaintiffs cannot recall the supervisors' names and because defendants did not retain organization charts showing who supervised whom. Defendant admittedly still has all of plaintiffs' timesheets which have the supervisors' signatures. With the supervisors' names and knowledge of which census office they worked in, it will not be difficult for defendant to locate supervisors through its own databases or widely available people search databases or services, such as the ones plaintiffs' counsel has used to locate plaintiffs.

Furthermore, because supervisor knowledge of overtime work is an essential element of

plaintiffs' *overtime* claims (Davis v. Food Lion, 729 F.2d 1274, 1276 (4th Cir. 1986)), defendant has as much interest in locating the supervisors for the overtime claims as for the straight time claims. Defendant is no worse off in finding the supervisors to challenge or verify the straight time claims than it is with regard to the existing overtime claims. Granting the motion for leave to amend will not put defendant in a worse position than if the motion is denied. Thus, there is no prejudice to defendant.

Defendant seems to argue that it is prejudiced with regards to the MOU (Exh. 3), but it is not clear how defendant is prejudiced, as opposed to being inconvenienced. If the motion is granted, defendant can freely choose, under the MOU, to depose every plaintiff who has a straight time claim, or just a sampling of them – as it has agreed to do with plaintiffs' overtime claims. Alternatively, defendant could propose modifications to the MOU concerning the straight time claims. While this may be inconvenient, it hardly constitutes undue prejudice sufficient to justify denying plaintiffs leave to amend their Complaint. Since the proposed amendment will affect only existing plaintiffs and not any new plaintiffs, the MOU remains viable.

**C. THE DELAY IN BRINGING THE MOTION FOR LEAVE TO AMEND WAS NOT IN BAD FAITH AND HAS NOT UNDULY PREJUDICED DEFENDANT**

Other than showing severe disadvantage or inability to present facts or evidence, defendant can also establish prejudice by showing that the delay in amending the complaint caused it to have to conduct extensive research shortly before trial due to the introduction of new evidence or legal theories; or by showing that the moving party engaged in excessive, intentional or bad faith delay. State of Alaska, 15 Cl.Ct. at 279-280. The "mere fact that an amendment is

offered late in the case is . . . not enough to bar it; amendments may be offered at trial, or even after reversal and remand." Senza-Gel Corp., 803 F.2d at 667.

Plaintiffs' motion to amend does not come on the eve of trial, thus, defendant is not prejudiced by having to conduct extensive research shortly before trial. Since there is no trial date set in this action, Defendant will not be prejudiced by a lack of time to conduct research that may be necessitated by the proposed amendment to the Complaint. See Ota Dec., Exh. 1, Proposed Second Amended Complaint; Exh. 3, MOU.

Moreover, plaintiffs did not intentionally or in bad faith delay in moving to amend the complaint. On the contrary, plaintiff moved diligently to amend the Complaint once it became evident that defendant would not otherwise agree to pay plaintiffs' straight time claims.

During the phase of the case in which the parties concentrated on the Concord, CA local census office, less than 27 percent of plaintiffs had claims for unpaid straight time hours, and those who did mostly had claims involving a small number of hours. Ota Dec. ¶ 2. Until the Court's ruling on February 28, 2005, many of these straight time claims were reasonably thought to be overtime claims because they involved hours worked in excess of eight hours per day. Ota Dec. ¶ 2. During negotiations on the Concord plaintiffs' claims, counsel for plaintiffs and defendant discussed settlement of the incidental straight time claims, but it was not until October 31, 2006 that defendant made it clear that it would not negotiate payment of straight time claims. Ota Dec. ¶ 3.

Meanwhile, claim forms were mailed to the non-Concord plaintiffs in about September 2006 and plaintiffs' counsel began contacting plaintiffs and processing the 2,768 forms that were returned, a process that is continuing, but near completion. Ota Dec. ¶ 4. Only during this

process did it become clear that the majority of non-Concord plaintiffs had straight time claims. Ota Dec. ¶ 4.

Soon after learning that defendant would not agree to pay straight time claims and also learning the extent of straight time claims among the non-Concord plaintiffs, plaintiffs' counsel asked defense counsel on December 21, 2006 if he would stipulate to amending the Complaint to add a cause of action for straight time claims. Ota Dec. ¶ 5. Defense counsel did not agree to such a stipulation and cited legal authority and arguments against such an amendment as recently as January 17, 2007. Ota Dec. ¶ 5. Finally, before a motion to amend could be made, plaintiffs' counsel needed to research the legal grounds for a cause of action for unpaid straight time wages, and also collected declarations from plaintiffs to use as evidence that unpaid straight time wages was a significant issue for the non-Concord plaintiffs. Ota Dec. ¶ 5.

Thus, plaintiffs' Motion to Amend was brought within a reasonably short period of time after the necessity for bringing such a motion became clear, and there was no intentional or bad faith delay in bringing the motion.

Defendant's reliance on Te-Moak Bands of Western Shoshone Indians of Nevada v. United States, 948 F.2d 1258 (Fed.Cir. 1991) is misplaced, as that case is not comparable to the case here. Te-Moak concerned a 40-year long litigation of claims by plaintiffs seeking relief for the uncompensated taking of lands and for an accounting of U.S. trust fund accounts for plaintiffs, established by an 1863 treaty. Id. at 1259, 1263. The Te-Moak court found an eight year delay in seeking amendment unreasonable in significant part because "only one party was . . . responsible for the delay," namely, plaintiff and its counsel. Id. at 1263.

Here, plaintiffs delayed in part because they had a reasonable, but mistaken view that

some of the straight time hours were overtime hours – a view that was corrected by the Court. Ota Dec. ¶ 2. Plaintiffs then acted reasonably in attempting to settle the straight time claims with defendant. Ota Dec. ¶ 3. Had defendant not given clear indications that it was willing to agree to reasonable settlements of the straight time claims, the delay in seeking to amend would not have been as extensive. Ota Reply Dec. ¶ 3. As soon as it became clear that settlement of the straight time claims was not possible, plaintiffs moved diligently to seek leave to amend. Thus, leave to amend is appropriate here because the delay here was reasonable, whereas in Te-Moak the delay was not reasonable.

Contrary to the impression defendant tries to convey, defendant is no stranger to the straight time claims. There is no "bait and switch" here. Defendant was just as aware of the facts underlying the straight time claims as were plaintiffs when the facts occurred in 2000. Defendant knew about the straight time claims in 2000 not only because defendant's officials were the ones who refused or failed to pay plaintiffs for all of their straight time hours, but also because *back in 2000*, plaintiffs told them about being denied both straight time and overtime pay.

For instance, on July 12, 2000, Concord plaintiff Maria Paz-Rubenstein wrote to the Seattle Regional Office detailing how many overtime and regular time hours she had not been paid for. Exh. 4. On page 4 of her letter, Ms. Paz-Rubenstein stated that for the week of June 4, 2000, "I am owed 16 hours regular." Exh. 4, p. 4. On August 21, 2000, Chris Landers wrote his supervisor detailing 81.5 hours of overtime and straight time pay he was owed. Exh. 8. Landers' entries for the week of April 16 shows that he worked 48 hours, but was paid for only 32 hours, meaning he was owed for 8 hours of straight time plus 8 hours of overtime pay. Exh.

8, p. 2.

Defense counsel also learned of the straight time claims at least four years ago when defendant began deposing the Concord plaintiffs, starting in about June 2003. At least 14 of the 50 or so Concord plaintiffs had straight time claims in addition to their overtime claims. Ota Reply Dec., ¶ _. For instance, Elizabeth Walton described in her deposition how her supervisor refused to let her submit her last nine hours of straight time work. Exh. 5, pp. 35-36. Sandra Tomlin said she told her supervisor that she was recording only one-third the number of hours she was actually working. Exh. 6, p. 46. Bettye Harrison told how on many occasions, she would spend eight hours out in the field, but only get to charge three hours. Exh. 7, p. 47.

Similar to the non-Concord plaintiffs who submitted declarations[1] (Exh. 2), many Concord plaintiffs described that they were held to a quota system in which the amount of time they could record on their timesheets depended on how many census forms they completed. Concord Crew Leader Doris Lum said she was told to and did in fact fire several Enumerators who failed to meet the quota of 1.4 forms per hour. Exh. 9, pp. 41-42, 46. Anthony Hewitt said he personally saw Enumerators being let go because they did not meet the quota. Exh. 10, p. 43. Brummel Yansane said there were "[m]any occasions" when he worked more than 8 hours, but recorded fewer than 8 hours on his timesheet, due to the quotas. Exh. 10, pp. 12-13.

Thus, defendant had adequate notice of the straight time claims going back to 2000. Defendant is no stranger to these claims and will not be prejudiced if plaintiffs are granted leave to file the proposed Second Amended Complaint adding a claim for straight time pay.

---

[1] The following non-Concord plaintiffs submitted declarations found at Exh. 2 stating that they were told that they could record only a certain amount of time on their timesheets for each census form their completed: Cage, Jones, Lopez-Kallis, McCowan, Mitchell, Romero, Sciaca,

Because defendant is not unduly prejudiced and because there was no intentional or bad faith delay in bringing the motion to amend, the motion to amend the First Amended Complaint to add a cause of action for unpaid straight time wages should be granted.

## II. PLAINTIFFS' PROPOSED AMENDED COMPLAINT IS NOT FUTILE

### A. THIS COURT HAS JURISDICTION OVER PLAINTIFFS' STRAIGHT TIME CLAIMS

Contrary to defendant, this Court has clear jurisdiction over plaintiffs' straight time claims. A claim based on the Back Pay Act, 5 U.S.C. section 5596, confers jurisdiction on this Court "when a plaintiff identifies an 'applicable law, rule, regulation, or collective bargaining agreement' which has been violated." Carroll v. United States, 67 Fed.Cl. 82, 85 (2005). See also Worthington v. United States, 168 F.3d 24, 26 (Fed.Cir. 1999); Gahagan v. United States, 19 Cl.Ct. 168 (1989); United States v. Connolly, 716 F.2d 882, 887 (Fed.Cir. 1983); Jaynes v. United States, 68 Fed.Cl. 747, 751-752 (2005).

In Worthington, the Federal Circuit ruled that the U.S. Court of Federal Claims had jurisdiction over a federal employee's claim that he was owed compensation for having been required to work a compressed work schedule in violation of the law. 168 F.3d at 27. In Gahagan, this Court found it had jurisdiction over claims by employees of the National Weather Service for unpaid holiday and night differential premium pay. 19 Cl.Ct. at 172.

Here, plaintiffs' straight time claims are based on violations of the Fair Labor Standards Act (FLSA) and Office of Personnel Management (OPM) regulations pertaining to federal employees, including, but not necessarily limited to the following: 5 C.F.R. 551.301(a), which states that, "an agency shall pay each of its employees wages at rates not less than the minimum

---

Sevilla, Walker, Waters and Zabala.

wage specified in section 6(1)(1) of the Act for all hours of work"; 5 C.F.R. 534.304(b), which states, "Employees in staff and other non-executive level positions of temporary organizations must be paid locality payments in addition to basic pay in the same manner as employees covered by 5 U.S.C. 5304"; and 5 C.F.R. 534.305(b), which states, "Employees of temporary organizations must receive basic pay on an hourly basis."

The FLSA minimum wage regulation (5 C.F.R. 551.301(a)) applies to plaintiffs, just as does the FLSA overtime provisions. In 1974, Congress extended the coverage of the FLSA to most federal, state and local government employees. Pub.L. No. 93-259 (1974). The Office of Personnel Management (OPM) is authorized to administer the FLSA in the federal sector. 29 U.S.C. § 204(f). OPM's regulations administering the FLSA in regards to federal employees are found at 5 C.F.R. part 551.

OPM regulations governing temporary employees, including 5 C.F.R. 534.304(b) and 534.305(b), applied to plaintiffs because they were employees of temporary organizations. That plaintiffs worked in temporary organizations is a settled legal issue in this case. In Christofferson v. United States, 67 Fed.Cl. 68, 69 (2005), this Court concluded, after a trial, that "Plaintiffs are among these former *temporary employees* of the Census Bureau hired to collect information for the 2000 census. *The organizational structure put in place to collect data during each decennial census is also temporary*." (Emphasis added.)

Defendant's assertion that 13 U.S.C. section 23 governs the Census Bureau's employment of plaintiffs as temporary employees to work on the decennial census does not change the analysis because 13 U.S.C. section 23(a) provides that employment of such temporary employees shall be "in conformity with the civil service laws and rules." Thus,

defendant's hiring of employees of its temporary organizations must conform with the three referenced OPM regulations.

Because the language of these three regulations -- 5 C.F.R. 551.301(a), 5 C.F.R. 534.304(b) and 5 C.F.R. 534.305(b) -- is mandatory, not discretionary, this Court has jurisdiction over plaintiffs' straight time claims founded on these regulations in conjunction with the Back Pay Act. Carroll, 67 Fed.Cl. at 85; Worthington, 168 F.3d at 26; Connolly, 716 F.2d at 887.

### B. PLAINTIFFS' STRAIGHT TIME CLAIMS RELATE BACK TO THE ORIGINAL COMPLAINT AND THUS, ARE NOT BARRED BY THE STATUTE OF LIMITATIONS

Because plaintiffs' straight time claims arose out of the same conduct, transaction and occurrence set forth in the original Complaint – defendant's failure to pay plaintiffs for *all* of their work time in violation of federal employee pay regulations , the straight time claims are timely because they relate back to the date the original Complaint was filed.

Under the Rule 15(c)(2) of the Rules of the U.S. Court of Federal Claims, "an amendment of a pleading relates back to the date of the original pleading when the claim or defense asserted in the amended pleading arose out of the conduct, transaction or occurrence set forth or attempted to be set forth in the original pleading." Ewer v. United States, 63 Fed.Cl. 396, 400 (2005).

Plaintiffs' original Complaint described how plaintiffs were enticed, required or permitted by their supervisors to work "extra time," "extra hours" or "excess hours," often on the promise that they would be paid at a later date for the excess hours, but in violation of FLSA and OPM statutes and regulations, defendant failed to pay them at the appropriate rate for all of their work hours. See, e.g., Complaint, ¶ ¶ 13, 15, 19, 20, 23, 25.

Defendant's reliance on Intrepid v. Pollock, 907 F.2d 1125 (Fed.Cir. 1990) and Vann v. United States, 190 Ct.Cl. 546, 420 F.2d 968 (1970), for the notion that plaintiffs' straight time claims do not relate back because the original Complaint did not give defendant notice of the new claims – is misplaced. Both Intrepid and Vann state that the test for whether a claim will relate back "will focus on the notice given by the *general fact situation* set forth in the original pleading." Intrepid, 907 F.2d at 1130 (emphasis added); Vann, 420 F.2d at 974.

Since plaintiff's proposed new straight time claims fall within the general fact situation described in plaintiffs' original Complaint – namely, that they were denied pay for all of their work in violation of federal employee pay statutes – the straight time claims relate back to the date the original Complaint was filed. Because the relation back doctrine applies here, plaintiffs' straight time claims are timely and not barred by the statute of limitations.

### C. SUITABILITY OR UNSUITABILITY FOR CLASS ACTION STATUS IS NOT A REASON TO DENY LEAVE TO AMEND THE COMPLAINT

Since plaintiffs have been proceeding for several years in this action without a Court order certifying a class, whether the proposed straight time claims are suitable for class action treatment, is rather moot and hardly a sound basis to deny plaintiffs leave to amend their Complaint.

Although plaintiffs' original Complaint and proposed Second Amended Complaint contain class allegations, plaintiffs have been proceeding as a *collective action* under 29 U.S.C. section 216(b), that is, an action in which each plaintiff has affirmatively opted in by signing papers that were filed with the Court requesting to be a plaintiff in the lawsuit.

A collective action under 29 U.S.C. section 216(b) is different from a Rules of the U.S. Court of Federal Claims (RCFC) 23(b) class action, which, if certified, includes all individuals

within the class definition accepted by the court – except that class members must be given notice and an opportunity to opt out of the class. RCFC 23(c)(2).

If the Court grants plaintiffs leave to file their proposed Second Amended Complaint, plaintiffs' action will remain viable as a collective action under 29 U.S.C. section 216(b). Thus, defendant's contention that the proposed amended Complaint is futile – is simply baseless.

**CONCLUSION**

For the above-stated reasons, plaintiffs respectfully request that the Court issue an Order granting plaintiffs leave to file their Proposed Second Amended Complaint, which includes a new cause of action for unpaid straight time wages.

DATED: April 16, 2007

Respectfully submitted,

MINAMI TAMAKI LLP

s/______________________________

JACK W. LEE
360 Post St. 8th Floor
San Francisco, CA 94108-4903
Telephone: (415) 788-9000
Fax: (415) 398-3887

Attorney for Plaintiffs