# In the United States Court of Federal Claims

No. 01-495C
(Filed: July 6, 2007)

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

KENT CHRISTOFFERSON, *et al.,*

    *Plaintiffs,*

v.

THE UNITED STATES,

    *Defendant.*

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

Motion for Leave to File Amended Complaint; Rule 15(a); Undue Delay and Prejudice

*Jack W. Lee*, San Francisco, CA, for plaintiffs.

*Steven J. Gillingham,* United States Department of Justice, Civil Division, Commercial Litigation Branch, Washington, DC, with whom were *Peter D. Keisler*, Assistant Attorney General, and *Jeanne E. Davidson*, Director, for defendant. *Rayna G. Eller*, Bureau of the Census, of counsel.

OPINION

BRUGGINK, *Judge*.

This is a federal employee pay case brought under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201-219 (2000) and the Federal Employee Pay Act ("FEPA"), 5 U.S.C. §§ 5541-5550a (2000). Plaintiffs initially sought compensation only for unpaid overtime worked during the 2000 Decennial Census. Pending now is plaintiffs' motion for leave to file their second amended complaint, which seeks to add a new cause of action for the payment of regular hours of work, or straight time, for which plaintiffs were not paid. The matter is fully briefed. Oral argument was held on June 26, 2007. For the reasons set out below, we deny plaintiffs' motion to amend their complaint.

BACKGROUND

While we assume general knowledge of the facts in this case as previously set out in *Christofferson v. United States*, 64 Fed. Cl. 316 (2005) ("*Christofferson I*"), *Christofferson v. United States*, 67 Fed. Cl. 68 (2005) ("*Christofferson II*"), and *Christofferson v. United States*, 72 Fed. Cl. 541 (2006) ("*Christofferson III*"), a summary of the procedural background is relevant to the subject motion.

In 2000, the United States Bureau of the Census ("Bureau") hired hundreds of thousands of temporary employees to conduct the Decennial Census. Plaintiffs are approximately 7,000 of these temporary employees. The Bureau employed plaintiffs in a variety of positions, including Field Operation Supervisors ("FOS"), Crew Leaders, and Enumerators. Plaintiffs brought this lawsuit in 2001 alleging that the Bureau violated the FLSA by failing to compensate them for overtime hours worked. Plaintiffs later amended their complaint to add a similar overtime claim under FEPA for plaintiffs who worked as FOS because the Bureau classified such employees as exempt from the requirements of the FLSA. Subsequently, plaintiffs sought to amend their complaint to add a FEPA claim for Crew Leaders and Enumerators as well, which defendant opposed. That motion was stayed pending the outcome of settlement discussions.

Due to the large number and dispersed locations of the plaintiffs throughout the country, the court directed the parties to concentrate discovery on only those plaintiffs who worked in the local census office of Concord, California ("Concord plaintiffs"). The parties thus engaged in extensive discovery with respect to the Concord plaintiffs for over a year, including the taking of more than fifty depositions. A trial on the claims of the Concord plaintiffs was initially scheduled for March 2004 following the close of discovery, but was postponed at the request of the parties because they asked to pursue an alternative resolution through settlement.

In August 2004, in the midst of ongoing settlement discussions, the court participated in a mediation session in San Francisco, California, to facilitate the development of a process for resolving the claims of the thousands of non-Concord plaintiffs. The ultimate result was a Memorandum of Understanding ("MOU"), finalized in February 2005, which primarily established an approach to resolving the claims of the non-Concord plaintiffs. The first step in the plan was to develop and deliver a questionnaire to the non-

Concord plaintiffs, which asked, among other things, whether they ever worked in excess of forty hours in one week, whether they believed their supervisors had knowledge that they worked overtime, and it requested an estimate of the amount of unpaid overtime worked each week. Agreement on the final language of the questionnaire took more than one year.

While the parties were negotiating the MOU and developing the questionnaire, several motions for summary judgment were brought before the court addressing significant legal issues. In *Christofferson I*, the court held that only overtime claims for hours of work in excess of forty in one week, and not eight in one day, were viable under the FLSA. Instead, overtime claims based on hours worked in excess of eight in one day could only be brought under FEPA, which requires that the overtime be ordered or approved in writing to be compensable. *See Christofferson I*, 64 Fed. Cl. 321-23. As a result, the court dismissed plaintiffs' FLSA claims for overtime worked in excess of eight hours a day. In *Christofferson II*, after a week-long trial, the court found that the Bureau had improperly classified FOS Concord plaintiffs as exempt from the requirements of the FLSA. Thus, those plaintiffs were entitled to pursue their claims for overtime compensation under the FLSA. *See Christofferson II*, 67 Fed. Cl. 75-82. In *Christofferson III*, the court denied plaintiffs' request to equitably toll FLSA's statute of limitations for two potential FOS claimants who had not joined the original lawsuit because, among other reasons, they did not expect it to be successful. *See Christofferson III*, 72 Fed. Cl. 543-44. Plaintiffs thought they were entitled to equitable tolling because they had been told, erroneously, by government employees that they were exempt from the requirements of the FLSA.

The questionnaires were mailed to the non-Concord plaintiffs in September 2006. More than two thousand responses, or claim forms, were returned to plaintiffs' counsel during the subsequent months. Plaintiffs' counsel spent several months reviewing the responses to the questionnaires and sometimes contacted individual plaintiffs when clarifications were needed. Plaintiffs' counsel explains that it was only until he reviewed the individual claim forms and spoke with some of the plaintiffs that he "became aware that a majority of responding plaintiffs had claims for unpaid straight time as well as overtime." Pl.'s Mot. at 8-9. Plaintiffs' counsel insists that the parties discussed compensation for unpaid regular hours during settlement negotiations, and that defense counsel, in October 2006, informed him that the government would not agree to claims for regular hours of work. In December 2006, plaintiffs' counsel informally requested that defense counsel allow

plaintiffs to add a claim for regular hours of work to their complaint. Defense counsel did not agree. As a result, on February 13, 2007, plaintiffs filed the subject motion to amend their complaint by adding a cause of action for regular hours of work.

DISCUSSION

I.   Overview

Under Rule 15(a) of the Rules of the Court of Federal Claims ("RCFC"), "a party may amend that party's own pleading only by leave of court . . . and leave shall be freely given when justice so requires." While it is true that a "liberal, pro-amendment ethos dominates the intent and judicial construction of Rule 15(a)," 3 James Wm. Moore et al., Moore's Federal Practice § 15.14[1] (3d ed. 2000),[1] it is also "well established that the grant or denial of an opportunity to amend pleadings is within the discretion of the trial court." *Mitsui Foods, Inc. v. United States*, 867 F.2d 1401, 1403 (Fed. Cir. 1989).

Factors that may justify the denial of a motion for leave to amend include "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment." *Id.* (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)). "The existence of any one of these criteria is sufficient to deny a motion to amend, the theory being that the amendment would not be necessary to serve the interests of justice under such circumstances." *Spalding & Son, Inc. v. United States*, 22 Cl. Ct. 678, 680 (1991).

Defendant argues that plaintiffs unduly delayed in seeking to amend their complaint and that the delay would be prejudicial if the court granted leave. Defendant also opposes the request to amend because it does not believe the court would have jurisdiction over plaintiffs' new cause of action. Because we conclude below that the delay in bringing the claim for regular hours of work would be prejudicial to the government, we deny plaintiffs'

---

[1] The pertinent language of Rule 15(a) of the Federal Rules of Civil Procedure, the rule referred to, is identical to RCFC 15(a).

motion without resolving the question of jurisdiction.[2] *See Te-Moak Bands of W. Shoshone Indians of Nev. v. United States*, 948 F.2d 1258, 1260 (Fed. Cir. 1991) ("courts have not hesitated to deny motions to amend that have been filed after significant delay").

II.   Amendment is the Result of Undue Delay and would be Prejudicial to the Government

Plaintiffs argue that justice requires that they be allowed to amend their complaint so that they can "recover all wages that were unfairly denied, not just some of their unpaid wages." Pl.'s Mot. at 9 (emphasis in original). Plaintiffs explain that their delay in bringing the claim for regular hours of work was justified because once they received claim forms from the numerous non-Concord plaintiffs, it became "apparent that straight time claims are much more prevalent among plaintiffs as a whole than they were among the Concord

---

[2]We have misgivings on the jurisdictional issue, however. Plaintiffs failed to supply a specific statutory provision which would grant the court jurisdiction over their new claims, although they did cite 5 C.F.R. § 551.301(a), the implementing regulation of FLSA's minimum wage requirement, 29 U.S.C. § 206. Section 551.301(a) provides that an "agency shall pay each of its employees wages . . . for all hours of work . . . ." The FLSA is a money-mandating statute that provides jurisdiction in this court under the Tucker Act. *See El-Sheikh v. United States*, 177 F.3d 1321, 1323 (Fed. Cir. 1999). Defendant argues, however, that the FLSA, at most, requires that the plaintiffs receive the federal minimum wage averaged on a workweek basis. And, since plaintiffs earned approximately three to five times the minimum wage on an hourly basis, their claims based on a violation of 29 U.S.C. § 206 would be considerably, if not entirely, reduced. In other words, so long as total pay at the end of the week divided by the number of hours worked is no less than the minimum wage rate, section 206 has not been violated. At the very least, defendant argues that plaintiffs would only be entitled to the minimum wage for those regular hours they might successfully claim, which is far less than their hourly rate. We are aware that other circuits, when interpreting section 206, have traditionally upheld the "workweek" compliance approach in lieu of an "hour-by-hour" compliance, *see, e.g.*, *Dove v. Coupe*, 759 F.2d 167 (D.C. Cir. 1985), *Monahan v. County of Chesterfield, Va.*, 95 F.3d 1263 (4th Cir. 1996). Plaintiffs were unable to offer any other jurisdictional basis for their claim for regular hours of work.

plaintiffs." *Id*. at 9-10. More than fifty percent of the non-Concord plaintiffs have claims for regular hours of work, whereas approximately one quarter of the Concord plaintiffs – the subject of extensive discovery for several years – have such claims.

Additionally, plaintiffs attempt to justify their delay in bringing a claim for regular hours of work based on the court's ruling in *Christofferson I*, which limited overtime claims under the FLSA to hours worked in excess of forty in one week. Plaintiffs insist that they inadvertently characterized hours worked in excess of eight in one day as overtime hours under the FLSA when, in light of *Christofferson I*, they should have characterized them as regular hours of work.

Plaintiffs believe none of the justifications for denying leave to amend are present. They argue that defendant is not prejudiced because adding the claim for regular hours of work will not affect defendant's ability to present facts or evidence in its defense. Plaintiffs make much of the fact that defendant has not yet deposed any of the non-Concord plaintiffs. At oral argument, plaintiffs noted that they would not seek to add any additional plaintiffs to the lawsuit. Plaintiffs also argue that amending the complaint does not prejudice defendant because it does not come on the eve of trial.

Defendant argues, on the other hand, that amending the complaint at this late stage in the case would be prejudicial. Defendant notes that, from the outset of the case, all of its efforts during ongoing discovery, the mediation with the court, negotiations with respect to the MOU, and the drafting of the questionnaire were made with the understanding that the only claims against the Bureau were those for overtime compensation.[3] Additionally, defendant argues that plaintiffs knew or should have known the basis for their claims many years ago. Defendant insists that plaintiffs' delay of more than five years was undue and on that basis alone leave to amend should be denied.

Perhaps most significantly, defendant believes the addition of the new cause of action at this late stage would be prejudicial because it necessarily relies on increasingly unreliable or unavailable evidence. As with the existing claims for overtime, plaintiffs believe the written time sheets of the individual

---

[3]The decision to negotiate a process for truncated discovery and a means for calculating settlements were predicated on the original claims.

6

plaintiffs are incorrect because their supervisors refused to credit certain hours of actual work on the sheets. Plaintiffs' case thus relies almost exclusively on oral testimony of the individual plaintiffs with respect to what hours each supervisor did or did not allow. Defendant expresses concern over the ability of plaintiffs to recall essential facts, such as the name of their supervisors. *See*, *e.g.*, Pl.'s Proposed 2d Am. Compl., Decl. of Maria Lopez-Kallis, ¶ 1 ("My supervisor during the Census was also employed as a deacon at a local church; his assistant was a Polish woman, whose name I cannot remember"); Decl. of Jacqueline Cage ¶ 1 ("I do not remember my supervisors' names"). Defendant believes, therefore, that the passage of time further erodes the memory of the numerous plaintiffs.

Plaintiffs have the burden of justifying a significant delay based on the facts and circumstances of the individual case. *See Cupey Bajo Nursing Home, Inc. v. United States*, 36 Fed. Cl. 122, 132 (1996) ("[T]he Federal Circuit has adopted the rule that a party seeking to amend its complaint after significant delay bears the burden of justifying the delay."); *Alfa Laval Separation, Inc. v. United States*, 47 Fed. Cl. 305, 314 (2000) ("Merely proving that other cases allowed longer delays or delays until appeal or thereafter does not suffice to demonstrate entitlement to amendment. Delay must be justified."). Plaintiffs are unable to carry this burden.

We believe granting plaintiffs' motion to amend their complaint nearly six years after the filing of the original complaint would be prejudicial to the government and thus not be in the best interests of justice. By plaintiffs' counsel's own admission, plaintiffs told the Bureau about being denied payment for regular hours of work "back in 2000," Pl.'s Reply at 7, indicating that plaintiffs have known of their claims for more than six years. Indeed, plaintiffs' counsel acknowledges that he was aware of the claims for regular hours of work among the Concord plaintiffs, but did not realize the "extent" of the claims, or that a "majority" of the non-Concord plaintiffs had such claims until he examined the returned claim forms. *Id.* at 6. In other words, the failure to bring the claim for regular hours of work sooner was only based on a judgment about how much the new claim was worth rather than confusion about whether it existed at all. The facts and circumstances relating to the substance – not the potential value – of the new claim were apparently known from the beginning. Under these circumstances, we find no reasonable

explanation for the delay.[4] *See, e.g.*, *Spalding & Son, Inc.*, 22 Cl. Ct. at 680 (plaintiff's "damage calculation theory should have been plainly obvious to Spalding at the time of the alleged injury, and that it should have been pled along with the actual damage theory from the very beginning").

Defendant has invested nearly six years of time and resources defending and negotiating a very large and complex overtime case. The parties expended significant effort negotiating an agreeable approach to identifying and settling thousands of individuals overtime claims. The parties spent more than one year drafting the precise language of the questionnaire that would be used to identify the overtime claims of thousands of non-Concord plaintiffs. During this process, the parties settled or resolved nearly all of the overtime claims of the Concord plaintiffs.

The focus on the FLSA overtime claims in this case is only those weeks in which an individual plaintiff alleges that he worked more than forty hours in a week, but was denied payment for those excess hours. Plaintiffs' counsel explained during oral argument that roughly three hundred of the plaintiffs responding to the questionnaire did not have any weeks in which they worked more than forty hours, and more than two thousand of the responding plaintiffs had some weeks in which they worked more then forty hours and other weeks where they did not. Allowing the amendment would expand the litigation to include all three hundred plaintiffs who would otherwise have no valid claims under the FLSA, and expand the claims of the other plaintiffs to include those weeks in which they worked less than forty hours. Additionally, the focus of litigation would narrow from weekly claims to individual daily claims, multiplying the number of claims for each of the thousands of claimants.

In that regard, we are concerned about the availability of evidence necessary for plaintiffs to successfully claim work hours on a daily basis. The evidentiary effort involved in prosecuting and defending weekly overtime claims is difficult. Plaintiffs are, for the most part, relying on oral testimony

---

[4]Plaintiffs argue that their delay in bringing the new claims was due in part to an understanding that defendant was willing to settle those claims early on in the litigation. This argument has no merit. Even if plaintiffs believed in good faith that defendant was willing to negotiate claims for regular hours of work, the government had no obligation to negotiate those claims. Plaintiffs should have preserved those claims by timely filing them.

and their own memory of which weeks they worked overtime and how many hours were unpaid. Allowing claims for regular hours of work would compound the challenge dramatically. Each plaintiff would have to recollect by individual day the number of hours of actual work in excess of those recorded on the time sheets and compensated. As defendant explained, the Bureau does not have an organizational chart reflecting which individuals supervised each plaintiff. Many of the supervisors themselves were temporary employees. The supervisor of any single plaintiff could change from week to week. In short, the government would have to locate the temporary supervisors involved for each daily pay claim per plaintiff, locating them using contact information that is more than six years old and hope those individuals could recollect each day in which they allegedly denied compensation to a plaintiff for regular hours of work.

We note also that the statute of limitations has run on plaintiffs' new cause of action. To the extent plaintiffs' new cause of action is based on a violation of 29 U.S.C. § 206, the statute of limitations period is only two or three years.[5] *See* 29 U.S.C. § 255. Otherwise, the limitations period for claims in this court is six years. *See* 28 U.S.C. § 2501. The Supreme Court has long held that statutes of limitations are:

> founded upon the general experience of mankind that claims, which are valid, are not usually allowed to remain neglected. The lapse of years without any attempt to enforce a demand creates, therefore, a presumption against its original validity. [They] protect[] parties from the prosecution of stale claims, when, by loss of evidence from death of some witnesses, and the imperfect recollection of others, or the destruction of documents, it might be impossible to establish the truth. The policy of these statutes is to encourage promptitude in the prosecution of remedies.

*Riddlesbarger v. Hartford Ins. Co.*, 74 U.S. 386, 390 (1869). Although plaintiffs' new claim would still be timely for statute of limitations purposes because the amended complaint relates back to the date of the original

---

[5] The limitations period is generally two years for a violation of the FLSA, but three years if the violation was willful.

complaint, *see* RCFC 15(c)(2),[6] relation back does not undo the damage with respect to the reliability of evidence after the passage of significant time.

Moreover, allowing the amendment would require another round of potentially lengthy negotiations to resolve the expanded individual claims. The parties would need to renegotiate a questionnaire that included questions relating to regular hours of work, mail it to plaintiffs, and analyze the returned forms. Additionally, the early agreement to focus exclusively on the Concord plaintiffs as a "test" sample of the plaintiffs as a whole would be undermined. Depositions of all of the Concord plaintiffs have already been taken with the understanding that the only claim in this case is one for unpaid overtime, not regular hours of pay on individual days.

## CONCLUSION

For the foregoing reasons, we deny plaintiffs' motion for leave to file their second amended complaint.

s/ Eric G. Bruggink
ERIC G. BRUGGINK
Judge

---

[6]Rule 15(c)(2) allows an amended pleading to relate back to the original filing date when the "claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading." We disagree with defendant's argument that the relation back test is not met.