# EXHIBIT 3

**U. S. Department of Justice**

Civil Division

PDK:JED:SJGillingham
DJ# 154-01-495

Telephone: (202) 616-2311
Facsimile: (202) 353-7988

*Washington, D.C. 20530*

May 25, 2007

By Email and FEDEX

Jack Lee, Esq.
Minami Tamaki LLP
360 Post St., 8th Floor
Union Square
San Francisco, CA. 94108-4903
(415)-788-9000

Re: Christofferson v. United States, No. 01-495C (Fed. Cl.)

Dear Mr. Lee:

I am gratified that we have finally agreed on a settlement for the bulk of the eligible Concord plaintiffs, i.e., those who attended a deposition. Once we have signed the formal settlement agreement, we will send it to the Judgment Fund administrators for payment. Here are my thoughts regarding the way ahead for the rest of the claims.

Remaining Eligible Concord Plaintiffs. It has been quite some time since I proposed our latest settlement for Judith Coe, Diane Dunn, Anthony Hewitt*, Dorothy Hunt*, Carrie Jackson*, Kathleen Lander*, Shari Lind, Paulette McCullough, Ken Owens, Sandra Tomlin , and Ronald Turner. These proposals followed vigorous negotiations and were summarized by supporting charts exchanged during our negotiations, and in my detailed October 2004 letter, which considered your arguments and prompted the settlement of several other claims. We have accomplished a lot in the interim; however, because I know you are often asked to respond quickly to these plaintiffs unexpectedly, I want to document where we are, should questions arise concerning the status of their claims. First, my proposal with respect to these plaintiffs remains, but none of these claims or proposals to settle involve interest; therefore, unless I am persuaded that the basis for my proposal is wrong, my proposals are frozen. In any event, as my previously-sent chart of February 7, 2007 reflects, there is nothing further for the Government to do or consider with respect to these claims. With respect to the claims that depend upon a favorable treatment of your motion to amend the complaint to include "straight time" claims, I agree they cannot be negotiated, until we receive guidance from the court. However, if the motion is denied, I will not be able to offer any settlement for claims based upon such a theory. Finally, the February 7 chart also indicates that we have completed our negotiations with respect to the overtime portion of the claims of those plaintiffs whose names are asterisked above; however,

because part of their claims depends upon the viability of the straight time theory, we have agreed to suspend further consideration of their claims, pending the court's decision.

Non-Eligible Concord Plaintiffs. Before I left for Germany in mid-March 2007, I sent a draft joint motion to dismiss the claims of those Concord plaintiffs who failed to attend their depositions. As we recently discussed, you agree with our motion. However, to complete it, I need you to confirm the list of affected plaintiffs. When we last discussed this, you wanted to concentrate on the settlement of eligibles first and I have done that. Please confirm when you can confirm my list or advise me if you would rather for us to proceed with a unilateral motion and I will do so.

Database. As I have discussed with you, we have reviewed the questionnaire database that you sent us. We understand it was compiled by your staff, based upon responses to the questionnaires, on the theory they were akin to interrogatories. However, the questionnaire is not an interrogatory; but it is a material element of our ADR agreement. Accordingly, strict adherence to the ADR is essential to our continuing efforts to resolve the non-Concord claims.

The difficulty we have with what you have provided in lieu of the questionnaire responses is that it inhibits our ability to evaluate the credibility of the claims, determine certainty groups, and stratify the claims. The final version of the questionnaire reflected a time-consuming, careful design involving our expert, and was aimed at allowing us to do all of those things. Throughout the design and negotiation process, we expected to receive verbatim transcripts of the responses to the questionnaires, minus only privileged communications, that is, questions or comments directed to plaintiffs' attorneys seeking legal advice. We also expected that we would receive a log of the communications withheld upon the grounds of privilege, so that we could determine whether objections were in order. This intent was reflected in our refusal to accede to a provision contained in an August 2004 draft of the Memorandum of Understanding, which provided that defendant would have access only to the questionnaires of those plaintiffs selected for deposition.

Contrary to our understanding and intent, the database includes only partial responses and your interpretation of the questionnaire responses that do not necessarily reflect the actual questions posed. For example, one originally-proposed question concerned the supervisor's knowledge of the alleged overtime. You objected to the question, and we reworked it, until it was acceptable to both sides. We continue to regard that question as important, inasmuch as the answer indicates whether there is a good faith basis for the claim. The question allowed the respondent to furnish a narrative of the circumstances surrounding the supervisor's knowledge, if the respondent claimed such knowledge. However, rather than furnish us the narrative, your database provides only a categorization of the response (you have identified eight categories). That categorization may well be helpful to both sides, but at this point, it is your categorization, not necessarily ours, and almost completely eliminates the question's usefulness to us. We cannot tell from those one-line categories, for example, at which point the supervisor became aware of the alleged overtime, a circumstance which would be important to the issue of liability; because, if the supervisor became aware of the overtime only after it had been worked, he would, arguably, have had no opportunity to prevent it. We also are concerned that other potentially

aware of the alleged overtime, a circumstance which would be important to the issue of liability; because, if the supervisor became aware of the overtime only after it had been worked, he would, arguably, have had no opportunity to prevent it. We also are concerned that other potentially relevant details have been omitted -- for example, that concerning the supervisor's response when he or she learned of the overtime. If the supervisor told the respondent that working the overtime violated the Bureau's policy and he or she should not have worked it, a reasonable employee would have stopped working the overtime. Of course, if the supervisor told the employer not to work overtime again, there would be no liability.

In the same fashion, the database reduces questions that seek a description of how plaintiffs who estimated their claims did so, to three conclusory categories. To evaluate the reliability of the estimates, we need access to the claimants' own description of this process.

There also is a field on your database for "regular time." We did not negotiate a question concerning "regular time," and are not certain to what it refers. Perhaps it was aimed at your investigation of "straight time" claims, and may be moot should the court deny your motion to amend the complaint to include such claims. In any event, it was not something we negotiated and, therefore, is of no significance to our agreement.

Please review the questionnaires and redact any information that is not responsive to the questions, but rather is a communication to you seeking legal advice. Then provide us the complete responses to the questions with such information redacted. I am more than happy to discuss with you the most expeditious way of producing these responses so we can proceed to the next step in resolving these claims.

Very truly yours,

Steven J. Gillingham
Assistant Director
Commercial Litigation Branch