# EXHIBIT A

# In the United States Court of Federal Claims

No. 01-495C
(Filed: July 1, 2008)

* * * * * * * * * * * * * * * * * * * * * * *
KENT CHRISTOFFERSON, *et al.*

*Plaintiffs*,

v.

THE UNITED STATES,

*Defendant.*
* * * * * * * * * * * * * * * * * * * * * * *

ORDER

Pursuant to the telephonic status conference held June 17, 2008, the parties are directed to file simultaneous briefing regarding the two issues set out in defendant's status report of June 6, 2008:

1. Whether the notes written by plaintiffs' counsel regarding their conversations with claimants and relating to changes plaintiffs' counsel made to information supplied by plaintiffs on the questionnaire responses, or information that was added or deleted by plaintiffs' counsel on the questionnaire responses, are protected from disclosure by applicable privileges or the Court's prior orders.

2. Whether questionnaire responses may be amended by plaintiffs' counsel with plaintiffs' consent subsequent to their execution under penalty of perjury.

The briefing schedule is set out as follows: The parties shall file simultaneous briefs on July 15, 2008. The parties shall file their simultaneous responses on July 29, 2008. The parties shall also serve each other and the

court with copies of their briefs and responses via email. The parties may use the following email address for the court: Jeremy_Kehr@ao.uscourts.gov.

s/ Eric G. Bruggink
ERIC G. BRUGGINK
Judge

# EXHIBIT B

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| KENT CHRISTOFFERSON, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 01-495C |
| | ) | (Judge Bruggink) |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OF UNDERSTANDING FOR SETTLEMENT

1. Pursuant to the parties' confidentiality agreement, the parties memorialize their efforts to resolve this case as follows.

2. From August 24-26, 2004, the parties in this case met with their mediator, Senior Judge Eric Bruggink, to design a procedure for resolving the claims of the non-Concord, California plaintiffs in this case. Participating in the meetings were Judge Eric Bruggink and Chris Danley (Judge S. Braden's law clerk), Jack W. Lee and John Ota for the plaintiffs, Steve Gillingham (DOJ), and Rayna Eller (Department of Commerce, Office of General Counsel) for the defendant. They were joined on August 25, 2004, by statisticians Dr. Richard Drogin, for the plaintiffs, and Dr. Pat Cantwell, for the defendant. Since then, the parties have had additional discussions.

3. The parties' negotiators have reached agreement upon settlement amounts for 20 out of 53 Concord plaintiff claims (one plaintiff has a FOS and non-FOS claim). All or part of 14 of the remaining 33 will be subject to motions for summary judgment, as explained further below. The parties will discuss the remaining 19 with an eye towards settling them as soon as possible. <u>See</u> Attachment (Summary of Settlement Negotiations as of October 4, 2004).

4. The parties agree to make their best efforts to resolve the remaining 7500+ claims through the process described below. The parties will advise the court of the outline of this procedure to obtain the time necessary to execute this plan, and may seek court approval of particular portions if they determine that doing so will aid the process. In general, the process will include four general phases: first, completion of a questionnaire to elicit information about plaintiffs' claims and to advise plaintiffs of this process and of their obligations; second, depositions of some plaintiffs; third, the negotiation of the claims of the deponents; and fourth, the application of the deposition results to the claims of non-deposed plaintiffs. The process is detailed below.

5. Step One: Obtaining Plaintiffs' Work Data. In order to provide plaintiffs' work data, the Census Bureau must have plaintiffs' SSNs in electronic form. Plaintiffs' counsel will provide the SSNs for the majority of the plaintiffs, but the parties will cooperate to obtain the SSNs of those plaintiffs whose current SSNs are unknown.

6. Step Two: Questionnaires. The parties agree that the questionnaires will be sent by plaintiffs' counsel. The questionnaire format remains a matter of discussion between the parties. The intent of the questionnaire is to provide more detail concerning the plaintiffs' claims. Plaintiffs will be furnished Census payroll data that will identify the work weeks at issue, the hours submitted for payment, and the total hours paid by week to assist them in completing the questionnaire. Plaintiffs will be asked to provide information, to the best of their recollection, asking for each day they worked overtime and how much overtime they worked.

7. Step Three: Processing of Questionnaires. The questionnaires will be returned to the Plaintiffs' counsel. Upon their return, plaintiffs' counsel will provide them to a third party administrator ("TPA") to be hired by plaintiff. The role of the TPA will be to assist plaintiffs' counsel to: (a) create a database identifying plaintiffs, their filing dates, and questionnaire return dates; (b) compile a listing of those who have not responded by the deadline; (c) respond to questions of plaintiffs and refer them to legal counsel; and (d) create a database that will record all relevant information contained in the questionnaire. Communications between plaintiffs and the TPA will not be considered a waiver of any applicable attorney-client or work product privilege.

8. Step Four: Identification of Deponents Subject To Further Discovery. After the questionnaires are returned and the data compiled, the parties will examine the data for the purpose of dividing the returns into groups and identifying specific groups (strata) for further discovery, including deposition. The first group, the "certainty" group, will consist of plaintiffs nominated by each side. All members of the certainty group will be deposed. The members of the certainty group cannot be identified until questionnaires are returned. Following depositions, the certainty group's claims will be negotiated on an individual basis. Any adjustment to their claims shall not affect the claims or the adjustments of any other plaintiffs.

9. Once the certainty group has been determined, the remaining plaintiffs will be divided into strata designed to combine like plaintiffs. The parties have discussed useful stratifying factors such as job position, size of claim, and other characteristics. Once the stratification has been agreed upon, the parties will randomly select a sub group in each stratum for depositions. Nothing in this Memorandum of Understanding prevents the parties from deposing a smaller pilot group of the above sample and relying upon the pilot group for extrapolations if both parties agree. The purpose of the sampling is: (1) to measure the inverse ratio (reciprocal) of the amount of overtime claimed to the amount of overtime negotiated after deposition, based on a sampling of plaintiffs, not to estimate the overall amount of overtime; and (2) to estimate the variability of this sample ratio. The parties agree that, whenever possible, they should plan the depositions in a way that minimizes any burden on plaintiffs, including limiting travel distance

and commute time. Ideas discussed included holding depositions in major urban centers and using telephone depositions.

10. Step Five: Negotiation. Following the depositions, the parties will negotiate amounts to be paid individual deponents. Then, as previously agreed, within each stratum, the parties will compute the ratio of the sum of the negotiated Overtime amounts to the sum of the claimed Overtime amounts ("Ratio"). For each non-deponent in the stratum, the Ratio will be applied to the amount of Overtime he or she has claimed, which will provide an estimated amount of overtime that would have been negotiated, had that person been deposed. This estimated amount will be the amount to be paid such non-deponents.

11. Dispute Resolution Going Forward. The parties agree that the participation of a mediator and/or the court for resolution of issues related to their negotiated process and, potentially, the negotiation of individual pay amounts, is indispensable.

12. Legal Issues That Require Resolution. The resolution of certain legal issues will impact the negotiations in this matter. Thus, the parties have presented the following issues to the Court for resolution by summary judgment:

1. Whether the Concord Field Operations Supervisors are barred from receiving overtime pay under FLSA because they are exempt as executive employees.[1]

2. Whether the Concord Field Operations Supervisors are barred from claiming overtime under FEPA because they cannot show that their overtime work was "ordered and approved" in writing.

3. Whether plaintiffs may claim back pay under the FLSA for days in which they worked more than 8 hours per day, in weeks in which they did not work more than 40 hours.

4. Whether the claims of certain plaintiffs are time-barred either fully or partially by the FLSA's three-year statute of limitations.

13. The parties have filed cross motions for summary judgment on these issues and oral argument was held in February 3, 2005. During the time the motion is pending, the parties intend to pursue the resolution process to the extent possible.

[1] It is conceivable that the resolution of the issue of the exempt status of FOS, with respect to their duties, would not be finally resolved by way of summary judgment.

14. The parties agree to use their best efforts to resolve this case by March, 2006 [this now sounds unrealistic, as the original suppositions about processing did not materialize and we concentrated on the MSJs (and now a trial) instead].

15. Unaddressed/Unresolved Issues. In addition to any such issues noted above, the following issues were not resolved, but will be discussed at a later date.

a. Identifying claimants whose questionnaires demonstrate that, on their face, they are not claiming or entitled to payment. Prior to the mediation, the parties acknowledge that certain responses like "I have no interest in pursuing any overtime claim" may be a basis for elimination from the lawsuit, but the parties must agree on how to interpret ambiguous or contradictory responses.

b. Dismissal or severance of claims by those who were not employed as decennial field staff.

c. Size and choice of the certainty group.

d. Determination of other strata of respondents, and number of deponents in these strata.

e. Resolving complaints presented by plaintiffs who do not agree with their negotiated amounts.

[signature]
Jack W. Lee
Attorney for Plaintiffs

Date: 2/18/05

[signature]
Steven Gillingham
Attorney for Defendant

Date: 2/17/05

VERSION: February 8, 2005

# EXHIBIT C

# In the United States Court of Federal Claims

No. 01-495C
(Filed: October 25, 2007)

* * * * * * * * * * * * * * * * * * * * * *

KENT CHRISTOFFERSON, *et al.*,

*Plaintiffs*,

v.

THE UNITED STATES,

*Defendant*.

* * * * * * * * * * * * * * * * * * * * * *

Motion for Protective Order; RCFC 26(b)(1); Attorney-Client Privilege; Work Product Doctrine.

*Jack W. Lee*, San Francisco, CA, for plaintiffs.

*Steven J. Gillingham*, United States Department of Justice, Civil Division, Commercial Litigation Branch, Washington, DC, with whom were *Peter D. Keisler*, Assistant Attorney General, and *Jeanne E. Davidson*, Director, for defendant. *Rayna G. Eller*, Bureau of the Census, of counsel.

---

OPINION

---

BRUGGINK, *Judge*.

This is a pay case brought under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201-219 (2000), and the Federal Employee Pay Act, 5 U.S.C. §§ 5541-5550a (2000), by thousands of former employees of the United States Bureau of the Census ("Bureau") for unpaid overtime hours worked during the 2000 Decennial Census. Pending now is plaintiffs' motion for a protective order. Plaintiffs seek protection, primarily based on an asserted attorney-client privilege, from discovery of questionnaires mailed to individual plaintiffs, completed, and returned to plaintiffs' counsel. The matter is fully briefed. Oral argument was heard on October 19, 2007. We

denied plaintiffs' motion on the record and by order dated October 19, 2007. We now issue this memorandum detailing the reasons for the denial of plaintiffs' motion for a protective order.

BACKGROUND

During the lengthy course of this litigation, the court has resolved a number of procedural and substantive issues. *See Christofferson v. United States*, 64 Fed. Cl. 316 (2005) ("*Christofferson I*") (dismissing plaintiffs' FLSA claims for hours in excess of eight per day and denying plaintiffs' request for equitable tolling of the FLSA's limitations period); *Christofferson v. United States*, 67 Fed. Cl. 68 (2005) ("*Christofferson II*") (holding that Field Operations Supervisors were not FLSA exempt); *Christofferson v. United States*, 72 Fed. Cl. 541 (2006) ("*Christofferson III*") (denying plaintiffs' request for equitable tolling of the limitations period as applied to two specific Field Operations Supervisors); *Christofferson v. United States*, 77 Fed. Cl. 361 (2007) ("*Christofferson IV*") (denying plaintiffs' motion to amend the complaint five years later to include claims for unpaid regular hours). Familiarity with the background facts is assumed.

In February 2005, the parties agreed to a Memorandum of Understanding ("MOU"), which expressed their desire to resolve the claims of thousands of plaintiffs not yet deposed through settlement. In short, the MOU established a plan whereby certain plaintiffs would be selected and deposed and, depending on the evidence obtained, the parties would attempt to settle, reduce, or eliminate the claims of numerous other similarly situated plaintiffs in like manner. To ascertain the nature of each plaintiff's claims, the MOU called for the creation of a mutually agreeable questionnaire that would be used to gather key information from the thousands of plaintiffs. The parties spent more than one year negotiating the language of the questionnaire.

The final questionnaire, entitled "claim form," asked for a variety of factual information, including each claimant's name, address, social security number, and other contact information, whether the claimant ever worked more than forty hours in one week while employed by the Bureau, which weeks the claimant estimated he or she worked overtime, the number of overtime hours that went unpaid, and whether the claimant believed his or her supervisor had reason to know that the claimant would work overtime prior to working the overtime. While most questions required only a short one-word answer, two questions called for a narrative response. Question #14 asked

claimants to explain how they arrived at their estimates of overtime hours worked if the hours claimed were based on estimates.[1] Question #17 required claimants to explain why they believed their supervisors knew or had reason to know that the claimant would work overtime. At the end of the questionnaire, there is a certification requirement calling for the date, signature, and printed name of each claimant. The certification language above the signature line reads: "Certification: I swear or affirm under penalty of perjury that the above statements are true to the best of my knowledge and belief." Pl.'s Mot., Ex. 2.

Plaintiffs' counsel mailed the questionnaires to more than 7,000 plaintiffs on August 1, 2006. At the top of a cover letter accompanying the questionnaires, plaintiffs' counsel included the language "**CONFIDENTIAL ATTORNEY-CLIENT COMMUNICATION**." *Id.* The letter explained to the recipients that the "United States Government has agreed to a process of evaluating all claims of unpaid overtime that have been filed in this case." *Id.* Plaintiffs' counsel also included a document entitled "notice of claims procedure" with the questionnaire, which provided basic information about how various claims would be processed, evaluated, and possibly settled. The notice instructed the recipients that they should "not call the Court, the U.S. Census Bureau or any Department of Justice attorneys for assistance. As your attorneys, our conversations with you are confidential and protected by the attorney-client privilege. However, any communications you have with persons outside this law firm about your claim are not confidential." *Id.* The final step on the Notice of Claims Procedure informed the claimants that, "[*t*]*he Department of Justice and this law firm will attempt to agree on appropriate compensation based upon the Claim Form responses and the sworn oral statements of some claimants.*" *Id.* (emphasis supplied). Plaintiffs' counsel received more than 2,000 completed or partially completed questionnaires over the subsequent months. While reviewing the questionnaires, plaintiffs' counsel and several law clerks in the firm contacted individual claimants when information in his or her questionnaire was unclear

---

[1]Included with each questionnaire was a separate payroll summary provided by the Bureau. The questionnaire instructed claimants to enter estimated hours of overtime directly on the payroll summaries. References to "completed questionnaires" or "returned questionnaires" throughout this opinion include completed and returned payroll summaries.

or incomplete. Plaintiffs' counsel and law clerks often took notes from those conversations directly onto the returned questionnaires.

With considerable effort, plaintiffs' counsel compiled the raw data from the thousands of returned questionnaires and converted it into an electronic database. The conversion of the data to electronic format was fairly straightforward for those questions that required either a "yes" or "no" answer. The data from questions that required a narrative response, however, was converted by selecting one of several of the more common answers. Thus, responses to Question #17, which asked how the claimant knew that his or her supervisor was aware that he or she worked overtime, were reduced to one of the following choices in the database: (1) I told or complained to my supervisor that I worked overtime; (2) I saw others denied overtime so I did not claim any myself; (3) my supervisor asked me to work overtime; (4) my supervisor told me to work until the job was complete; (5) my supervisor rejected my time-sheet that included overtime; (6) my supervisor told me to roll-over my overtime hours to another week; (7) my supervisor worked along-side me; (8) my supervisor saw me early in the morning and late at night; or (9) my supervisor denied my travel time. *See* Pl.'s Mot., Ex. 5. Likewise, responses to Question #14, which asked for a description of how the claimant estimated the overtime hours claimed, were reduced to one of three choices: (1) memory, (2) contemporaneous documents or records, or (3) added lunch breaks and/or travel time. *Id.*

On February 21, 2007, plaintiffs' counsel transmitted a copy of the electronic database to defense counsel. In accordance with the next step laid out in the MOU, the parties were to "examine the data for the purpose of dividing the returns into groups and identifying specific groups (strata) for further discovery, including deposition." Pl.'s Mot., Ex. 1, ¶ 8. The different groups or strata of individual plaintiffs were important because once the parties agreed to settle the claims of one plaintiff in a particular strata after more extensive and focused discovery, they would then settle the claims of all the remaining plaintiffs in that same strata without such additional discovery. Thus, the joint effort of analyzing and grouping the plaintiffs based on their responses to the questionnaires is central to the agreed approach toward expeditiously resolving this litigation.

After receiving the electronic database, defense counsel requested copies of the original returned questionnaires. Plaintiffs' counsel objected on grounds that the returned questionnaires constituted privileged

Case 1:01-cv-00495-EGB Document 297 Filed 10/25/2007 Page 5 of 14

communications between the attorney and his clients. Plaintiffs' counsel also believed the questionnaire, and the responses thereto, were more akin to interrogatories and a first draft of an answer a client might provide to his attorney. In a letter to plaintiffs' counsel on May 25, 2007, defense counsel explained that the original questionnaires were a "material element of our ADR agreement" and that "we expected to receive verbatim transcripts of the responses to the questionnaires, minus only privileged communications." Pl.'s Mot., Ex. 3. Moreover, defense counsel explained that the electronic database "provides only a categorization of the response" to the narrative questions, which "eliminates the question's usefulness." *Id.*

On June 11, 2007, plaintiffs' counsel responded to the May 25 letter from defense counsel, informing the government that he declined the request for copies of the questionnaires. Immediately following oral argument in *Christofferson IV*, 77 Fed. Cl. 361, heard June 25, 2007, the parties notified the court of their impasse with respect to the production of the questionnaires, and plaintiffs' counsel indicated that he would seek a protective order. We thus directed plaintiffs to file the subject motion.

## DISCUSSION

Pursuant to Rule 26(c) of the Rules of the Court of Federal Claims ("RCFC"), plaintiffs seek a protective order for "good cause shown" in response to defendant's attempted discovery of the completed questionnaire forms, including a verbatim transcript. Plaintiffs insist that the electronic database provided to defendant accurately and completely captures the pertinent data in the complete questionnaires and, therefore, there is no need for defendant to attain actual copies of the completed questionnaires. Plaintiffs present three grounds that they believe justify the imposition of a protective order: (1) defendant's request violates the terms of the MOU; (2) the completed questionnaires are privileged; and (3) defendant's request will cause an undue burden. We address each argument in turn.

### I. Defendant's Request is Not Inconsistent with the MOU

One of plaintiffs' arguments is that the MOU is an enforceable contract, and, because defendant's request violates the terms of that "contract," a protective order is necessary. Specifically, plaintiffs believe the MOU does not allow for defendant's receipt of copies of the returned questionnaires.

Plaintiffs point to the language of "step three" of the five-step process laid out in the MOU for resolving the remaining claims:

> Step Three: Processing of Questionnaires. The questionnaires will be returned to the Plaintiffs' counsel. Upon their return, plaintiffs' counsel will provide them to a third party administrator ("TPA") to be hired by plaintiff. The role of the TPA will be to assist plaintiffs' counsel to: (a) create a database identifying plaintiffs, their filing dates, and questionnaire return dates; (b) compile a listing of those who have not responded by the deadline; (c) respond to questions of plaintiffs and refer them to legal counsel; and (d) create a database that will record all relevant information contained in the questionnaire.

Pl.'s Mot., Ex. 1. Plaintiffs insist that the MOU "says nothing about the TPA providing either a copy of the questionnaire or the raw data contained therein to Defendant." Pl.'s Mot. at 9.

Plaintiffs believe the MOU is an enforceable contract because "it was negotiated, agreed to and executed by the parties for the purpose of resolving the disputed claims in this action." *Id.* at 7. Plaintiffs also argue that the MOU is an enforceable contract because plaintiffs' counsel has "substantially performed in accordance with the express terms of the contract and has, therefore, already provided the bargained-for consideration contemplated by the agreement." *Id.* Plaintiffs cite the Federal Circuit's decision in *Silicon Image v. Genesis Microchip Inc.*, 395 F.3d 1358 (Fed. Cir. 2005), for the proposition that "settlement agreements are contracts." *Id.* at 1363.

Even if the MOU is an enforceable contract, we are not convinced defendant's request would violate its terms. At most, step three explains that the relevant data collected from the returned questionnaires will be compiled and converted into an electronic database. The MOU says nothing, as plaintiffs readily admit, about whether defendant is entitled to receive copies of the returned questionnaires. We take the reference to the recording of "relevant data" to mean preserving, to the extent possible, the answers to all

of the questions. Therefore, defendant's request does not contradict any explicit terms of the MOU.[2]

II. The Completed Questionnaires Are Not Privileged

1. Attorney-Client Privilege

Plaintiffs insist that the information provided by individual claimants in the returned questionnaires, and any notes taken by plaintiffs' counsel, are protected by the attorney-client privilege. Plaintiffs argue that individual claimants telephoned plaintiffs' counsel and asked for "legal assistance in filling out their Claim Forms and Payroll Summaries," Pl.'s Mot. at 17, and "openly discussed with counsel details about their work with the Census Bureau." *Id.* at 18. Because the information and advice provided to individual claimants by counsel over the telephone was then used by the claimants to complete their claim forms, plaintiffs assert that a verbatim transcript or copy of the returned forms constitutes privileged communications between attorney and client. Additionally, plaintiffs argue that the privilege was invoked prior to mailing the questionnaires to the claimants. Plaintiffs point to language in the MOU that explains that communications between individual claimants and a third-party administrator (who would review the forms and compile the data into electronic form) will not be considered a waiver of any privilege. Plaintiffs further argue that the cover letter included a conspicuous warning that the subject communication was privileged, and that language in the notice accompanying the questionnaire reminded claimants that conversations with plaintiffs' counsel would be protected by the attorney-client privilege.

---

[2]We also disagree with plaintiffs' argument that, had the parties intended for defendant to receive copies of the questionnaires, "there would have been no need for the Plaintiffs' Counsel to have processed and compiled the data." Pl.'s Mot. at 11. While we do not know the parties' particular motives at the time they agreed to the MOU, we believe an electronic database containing basic information about the thousands of outstanding claims against defendant serves a very useful purpose. The database not only assists defendant in knowing the nature and extent of the claims it intends to negotiate and settle, but it also benefits plaintiffs' counsel by organizing thousands of claims into a single, searchable database.

Plaintiffs primarily rely on two cases to support their argument that the completed questionnaires are subject to the attorney-client privilege. In *Upjohn Co. v. United States*, 449 U.S. 383 (1981), the Supreme Court explained that completed questionnaires and notes from interviews with employees by company counsel were privileged communications when the in-house counsel obtained such information as part of an internal investigation. In *EEOC v. Int'l Profit Assocs., Inc.*, 206 F.R.D. 215 (N.D. Ill. 2002), defendant, not satisfied with the provided factual summaries, moved to compel production of notes taken by plaintiffs' counsel during interviews of class action members. The court denied defendant's motion on the grounds that the interviews were protected by the attorney-client privilege and the work product doctrine. *Id.* at 222.

Generally, a party may obtain discovery of any matter that (1) is "not privileged" and (2) "is relevant to the claim or defense of any party." RCFC 26(b)(1). The attorney-client privilege "protects the confidentiality of communications between attorney and client made for the purpose of obtaining legal advice." *Genentech, Inc. v. U.S. Int'l Trade Comm'n*, 122 F.3d 1409, 1415 (Fed. Cir. 1997). Therefore, "[t]he attorney-client privilege pertains to legal advice. . . . [I]t does not protect either factual information or business advice." *Energy Capital Corp. v. United States*, 45 Fed. Cl. 481, 485 (2000). Communications from clients seeking legal advice are privileged "to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." *Upjohn Co.*, 449 U.S. at 389. The privilege is "founded upon the necessity, in the interest and administration of justice, of the aid of persons having knowledge of the law and skilled in its practice, which assistance can only be safely and readily availed of when free from the consequences or the apprehension of disclosure." *Hunt v. Blackburn*, 128 U.S. 464, 470 (1888). Ultimately, "[t]he privilege is that of the client, not that of the attorney." *American Standard, Inc. v. Pfizer Inc.*, 828 F.2d 734, 745 (Fed. Cir. 1987). Moreover, the "assertion of privileges is strictly construed because privileges impede full and free discovery of the truth." *Energy Capital Corp.*, 45 Fed. Cl. at 484 (citing *Eureka Fin. Corp. v. Hartford Accident & Indem. Co.*, 136 F.R.D. 179, 183 (E.D. Cal. 1991)). The party claiming the privilege bears the burden of establishing it. *See id.*

We believe plaintiffs have failed to carry their burden that the original, completed questionnaires presumptively should be protected based on attorney-client privilege. To a large extent, the privilege, if it existed, is

waived insofar as the written responses to the questionnaires have already been provided to defendant in the form of an electronic database. In this respect, the asserted privilege is limited to the complete narrative answers to questions #14 and #17, the two questions in which plaintiffs' counsel summarized the written responses in lieu of providing a verbatim copy. We are not convinced that the complete, verbatim answers are privileged.

As a principal matter, the written answers do not seek legal advice. The questions call for purely factual information that would identify the nature and basis of each plaintiff's claim. Such information is discoverable through formal means, such as interrogatories or depositions. A written narrative explaining the calculation of estimated overtime and whether the supervisor knew or had reason to know that the claimant would work overtime does not require or seek legal advice.

The questions themselves, moreover, comprised a central component of a joint effort to reach a settlement. As described in the MOU, defendant agreed to a process that it believed would expeditiously resolve the thousands of remaining claims. Essentially, defendant agreed to pay these claims on a representative basis, without the benefit of individual depositions or other focused discovery for most of the plaintiffs, based solely on the information contained in the returned questionnaires. The purpose of the questionnaire was, therefore, to lead to the settlement of all remaining claims. Before defendant would pay any claims based on the formula set out in the MOU, defendant needed the answers to questions defense counsel co-authored and approved. In this regard, individual claimants should have understood that they were providing answers to defendant even though the completed questionnaires were returned to plaintiffs' counsel.

The questionnaire itself is somewhat different from a typical questionnaire used by attorneys to discover information about the claims of their existing or putative clients. Unlike *Upjohn* and *EEOC*, the questionnaire here was jointly developed in the specific context of ADR for the sole purpose of expedient settlement of claims. In those cited cases, the attorney-client privilege was found with respect to communications between client and counsel in which counsel took notes of interviews with its clients. Those communications were private and were solely for the benefit of counsel. They were not part of a joint effort.

We disagree with plaintiffs' argument that individual claimants believed their written answers to the questions would be kept confidential. Not only were claimants informed that the Department of Justice would review the responses to the questionnaires as a necessary part of the agreed upon ADR process,[3] they also signed and certified the questionnaire under the penalty of perjury. Such a certification would be without consequence if the questionnaires remained in the hands of their lawyers. The certification requirement suggests to the claimants that someone other than their lawyer would read their responses. Thus, claimants could not have reasonably expected that their returned questionnaires would remain confidential.[4]

We also disagree with the assertion that the warning of attorney-client privilege on the top of the questionnaire cover letter is sufficient to trigger protection. At most, the privileged "communication" is the letter itself, not a communication (i.e., the completed and returned questionnaire) that will occur in the future. Nothing on the questionnaire states that the answers provided would be privileged. Additionally, plaintiffs' counsel insists that he informed his clients that the questionnaire responses would be privileged based on the statement that "our conversations with you are confidential and protected by the attorney-client privilege." Pl.'s Mot., Ex. 2. We find this warning inapplicable. This statement appeared under the heading, "What If I Have Questions?", and, in context, clearly refers to situations in which individual clients had questions or concerns about the lawsuit, and decided to contact someone for assistance. Indeed, unlike *Upjohn* and *EEOC*, defendant does not seek counsel's notes from conversations with clients, communications defendant recognizes as privileged. Rather, defendant seeks the answers to a jointly drafted questionnaire.

Equity favors the production of the questionnaires. Defendant agreed to settle claims based solely on the individual claimant's sworn answers in the questionnaire. It is entirely reasonable for defendant to request copies of the

---

[3]The notice accompanying the questionnaires informed claimants that the "Department of Justice and this law firm will attempt to agree on appropriate compensation based upon the Claim Form responses . . . ." Pl.'s Mot., Ex. 2.

[4]To the extent an individual plaintiff sought legal advice by including communications outside of the questions posed in the questionnaire, then those communications, even if recorded on the questionnaires, are likely privileged.

completed questionnaires if it is to pay those claims without additional discovery. While we have no reason to doubt the veracity and accuracy of plaintiffs' database (particularly its summary of questions #14 and #17), the electronic data is less detailed than the complete answers in the returned questionnaires. Plaintiffs' attempt to categorize and summarize the various narrative responses leaves the government with something less than what it reasonably expected to learn. By agreeing to the settlement procedure in the MOU and thereby forgoing additional discovery, defendant is entitled to at least know how each claimant responded to the jointly drafted questions.[5]

To summarize, we decline to issue a protective order because the attorney-client privilege is not present. The questionnaires were not used to promote informed, effective representation. Rather, they were intended to solicit information to expeditiously and efficiently settle the individual claims. Their sole purpose, in other words, was to obtain factual information, which could have been discovered by more burdensome and lengthy interrogatories and depositions. Notes from conversations between counsel and individual claimants may be privileged to the extent they go beyond factual information necessary to complete the questionnaire. Plaintiffs' counsel may assert the privilege, if appropriate, to redact any such notes and impressions from the completed questionnaires before providing copies to defendant. If plaintiffs do assert privilege in this manner, a log should be furnished to defendant.

2. Work Product Doctrine

Plaintiffs also argue that the completed questionnaires should be protected because they are privileged under the work product doctrine. Plaintiffs argue that the completed questionnaires "were created during and as a result of litigation between parties" and that the completed questionnaires are "inextricably intertwined with work product" due to the "direct communications" between individual claimants and counsel. Pl.'s Mot. at 20.

---

[5]While we are sympathetic with plaintiffs' argument that the returned questionnaires are analogous to a client's first draft of answers to interrogatories provided to his lawyer — a document that generally would not be discoverable—the circumstances here are different. The completed questionnaires are more accurately described as signed and certified "claim forms," which contain basic information about the nature of the claim against defendant for purposes of settling the claim.

Plaintiffs thus believe that the completed questionnaires are privileged because they include the work product of their counsel.

Documents prepared by an attorney in advance of litigation are privileged as the work product of the attorney. *See AAB Joint Venture v. United States*, 75 Fed. Cl. 432, 444 (2007). The work product doctrine "encourages attorneys to write down their thoughts and opinions with the knowledge that their opponents will not rob them of the fruits of their labor." *In re EchoStar Commc'ns Corp.*, 448 F.3d 1294, 1301 (Fed. Cir. 2006) (citing *Hickman v. Taylor*, 329 U.S. 495, 511 (1947)). "Unlike the attorney-client privilege, which protects all communication whether written or oral, work-product immunity protects documents and tangible things, such as memorandums, letters, and e-mails." *Id.*

While the privilege might attach to notes written on the questionnaires by counsel or law clerks, the work product doctrine does not extend to the written answers to the questions. Plaintiffs' counsel probably learned much about his clients' claims based on their responses to the questionnaires, and such information is useful for the preparation of the case. That result does not, however, transform the completed questionnaires into protected work product. As previously explained, the questionnaires were prepared jointly in a larger ADR process. In this special context, the purpose of work product immunity does not apply:

> In performing his various duties, however, it is essential that a lawyer work with a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel. Proper preparation of a client's case demands that he assemble information, sift what he considers to be the relevant from the irrelevant facts, prepare his legal theories and plan his strategy without undue and needless interference. That is the historical and the necessary way in which lawyers act within the framework of our system of jurisprudence to promote justice and to protect their clients' interests. This work is reflected, of course, in interviews, statements, memoranda, correspondence, briefs, mental impressions, personal beliefs, and countless other tangible and intangible ways--aptly though roughly termed by the Circuit Court of Appeals in this case as the "Work product of the lawyer."

*Hickman,* 329 U.S. at 510-11. The questionnaires and the answers provided are not (and were not intended to be) private. Therefore, they are not privileged under the work product doctrine. On the other hand, notes, mental impressions, and other personal beliefs transcribed on the returned questionnaires, may be privileged.

III. Production of Completed Questionnaires is Not an Undue Burden

Finally, plaintiffs argue that production of the completed questionnaires will cause an undue burden on plaintiffs' counsel. Plaintiffs explain that the subject documents contain approximately 27,000 to 30,000 pages. Plaintiffs argue that it would be "extremely burdensome, expensive and unreasonable" to review these documents, redact privileged communications, and create a privilege log. Pl.'s Mot. at 24. Plaintiffs also believe such an effort is unnecessary because the "end result would be to hand over the same database information [that has already been] produced to the Defendant." *Id.* We disagree.

While we acknowledge that the effort required to review and redact the completed questionnaires is burdensome, it is not undue, especially in light of the corresponding benefit to defendant. Although defendant may already possess most of the information contained in the completed questionnaires, production of those documents would serve several additional purposes. First, defendant would be able to read the original narrative answers to questions #14 and #17, information not fully included in the database. Second, defendant would be able to confirm the accuracy of the electronic database. Third, defendant would possess the signed and sworn "claim forms" against which it may pay the claims. Given their purpose, defendant's request is not unreasonable.

CONCLUSION

For the foregoing reasons, plaintiffs' motion is denied. As stated during oral argument, counsel are encouraged to engage in an expedited production of the completed claim forms in a way that preserves plaintiffs' right to assert specific instances of privilege. A telephonic status conference will be held on November 6, 2007, at 2:00 pm EST to discuss progress toward implementing this order.

s/ Eric G. Bruggink
ERIC G. BRUGGINK
Judge

# EXHIBIT D

MINAMI TAMAKI LLP
Attorneys at Law

Jack W. Lee
Partner
Phone: 415-788-9000 x130
Email: jlee@minamitamaki.com

February 13, 2008

**VIA E-MAIL**

Steven J. Gillingham, Esq.
Commercial Litigation Branch
Civil Division
U.S. Department of Justice
Attn: Classification Unit
2nd Floor, Todd Building
Washington D.C. 20005

RE: *Christofferson v. U.S. Department of Commerce*, U.S. Court of Federal Claims, No. 01-495C

Dear Mr. Gillingham:

Enclosed as Exhibit A is a privilege log of all clients with whom Plaintiffs' counsel spoke to regarding their claims in the time period from August 2, 2006-February 20, 2007. We contend that each of these conversations fall under the attorney-client communications privilege as well as the work product privilege. This log is our effort to capture all client communications during the specific period of time when claim forms were being completed.

Plaintiffs' counsel mailed the Claim Packets to plaintiffs on August 1, 2006 and began receiving telephone calls from plaintiffs with questions the next day. I instructed all attorneys and staff to log all calls into a document known as the "Call Log." Plaintiffs' counsel also contacted claimants regarding blank, unclear or incomplete answers to the questions posed in the Claim Form. These calls were also logged into the Call Log. The Call Log contains notes reflecting conversations with our clients, which we believe are protected by the attorney-client privilege and the work product doctrine.

On February 20, 2007, Plaintiffs' counsel twice attempted to e-mail Defense counsel a Microsoft Excel database containing data for 1,995 plaintiffs who completed and returned Claim Forms. As these attempts were unsuccessful, Plaintiff's counsel sent a CD containing the database file to defense counsel by Federal Express on February 21, 2007. Thus, the attached Privilege Log encompasses all conversations held between Plaintiffs' counsel and plaintiffs from August 2, 2006, the day after Plaintiffs' counsel mailed out the Claim Packets, to February 20, 2007, the day the database was virtually complete and Plaintiffs attempted to send it to Defense counsel.

The attached log lists 3,915 names on 77 pages. Some of these names are repeated, as Plaintiffs' counsel spoke to the individual in question multiple times or left multiple messages. However, even if a name is only listed once, Plaintiffs' counsel possibly spoke to the claimant more than once. If, for example, multiple calls occurred on the same day, Plaintiffs' counsel would often record information from all the calls in a single entry on the Call Log.

Not all of the individuals listed opted in or remain in the lawsuit. Plaintiffs' counsel received calls from former Census field employees who opted into the lawsuit too late. Others may have opted in, but may not have returned a Claim Form or declined to continue participation in the lawsuit for some reason. Still others may have been ineligible for further participation based on the court's rulings.

Should you have any questions about this privilege log, please contact me.

Sincerely,

Jack W. Lee
Attorney for Plaintiffs

Enclosure

**Exhibit A: Privilege Log of Attorney-Client Notes and Work Product**

*August 2, 2006 - February 20, 2007*

| Last Name | First Name |
|---|---|
| (plaintiff has no last name) | Stefen |
| (plaintiff has no last name) | Stefen |
| Abernathy | Judith |
| Abernathy | Judith |
| Abernathy | Suzanne |
| Accola | Judy |
| Accola | Judy |
| Acosta | Bernett |
| Acosta | Emma |
| Adams | Annie |
| Adams | Karen |
| Adams | Karen |
| Adams | Karen |
| Adams | Karen |
| Addo | Prince |
| Adedimeji | Adewale |
| Afek | Dina |
| Agellon | Susan |
| Agron | Brad |
| Aguero | Emilio |
| Aguilar | Esther |
| Aguirre | Alvaro |
| Akins | Janice |
| Akins | Janice |
| Akins | Janice |
| Akins | Janice |
| Aldridge | Freda |
| Aleem | Saleem |
| Aleem | Saleem |
| Aleem | Saleem |
| Alexander | Victor |
| Alfano | Pamela |
| Ali | Saleema |
| Allen | Angenetta |
| Allen | Angenetta |
| Allen | Nettie |
| Allen | Robert |
| Altamarano | Arnola |
| Altamirano | Arnold |
| Altamirano | Arnold |
| Altamirano | Arnold |
| Alvarado | Rod |
| Alvarado | Rod |
| Alvarado | Rod |
| Alvarado | Rod |
| Alvarez | Christine |
| Alvarez | Josefina |
| Alvarez | Josephina |
| Alverson | Susan |
| Amaro | Brenda |
| Amaya | Lois |

**In the interests of efficiency and economy, Plaintiffs do not attach the full privilege log, as it is 77-pages long, and is not the subject of the Court's July 1, 2008 Order.**

# EXHIBIT E

RECEIVED

MAR 25 2008

U. S. Department of Justice

Civil Division

JSB:JED:SJGillingham
154-01-495

Telephone: (202) 616-2311
Facsimile: (202) 353-7988

*Washington, D.C. 20530*

March ~~21~~ 24, 2008

By FEDEX

Jack Lee, Esq.
Miami Tamaki LLP
360 Post St., 8th Floor
Union Square
San Francisco, CA. 94108-4903
(415)-788-9000

Re: Christofferson v. United States, No. 01-495C (Fed. Cl.)

Dear Mr. Lee:

We do not believe that your 77-page list of 3,915 names, under cover of your letter dated February 13, 2008, constitutes a proper privilege log, and I am concerned it will only delay the resolution of this lawsuit.

We are now in the midst of attempting to establish -- upon the basis of your clients' questionnaires -- whether it is possible to settle some or all of approximately 1800 claims.[1] The

---

[1] As the Court's October 19, 2007 explained the process:

> The questions themselves, moreover, comprised a central component of a joint effort to reach a settlement. As described in the MOU, defendant agreed to a process that it believed would expeditiously resolve the thousands of remaining claims. Essentially, defendant agreed to pay these claims on a representative basis, without the benefit of individual depositions or other focused discovery for most of the plaintiffs, based solely on the information contained in the returned questionnaires. The purpose of the questionnaire was, therefore, to lead to the settlement of all remaining claims. Before defendant would pay

questionnaire was painstakingly crafted by the parties with the Court's assistance and was designed to provide us an unvarnished window on the nature and facts of those claims. You resisted production of those questionnaires, but the Court's October 19, 2007 decision (Decision), which was, in part, informed by an *in camera* review of documents you selected, required their production.

In a related status conference, the Court noted that the information you sought to withhold was precisely the information the Government should be reviewing, in order to settle these claims. Nonetheless, the Court permitted redaction of work product, although it expected such redactions to be incidental. See also Decision at 11 ("To summarize, we decline to issue a protective order because the attorney-client privilege is not present. . . . Notes from conversations between counsel and individual claimants may be privileged to the extent they go beyond factual information necessary to complete the questionnaire. Plaintiffs' counsel may assert the privilege, if appropriate, to redact any such notes and impressions from the completed questionnaires before providing copies to defendant."); 12-13 ("The questionnaires and the answers provided are not (and were not intended to be) private. Therefore, they are not privileged under the work product doctrine. On the other hand, notes, mental impressions, and other personal beliefs transcribed on the returned questionnaires, may be privileged.").

Nonetheless, when the questionnaires were produced, we found matters missing – including those replaced by the notation "See telephone log." Those missing elements were among the topics of our January 16, 2008 telephonic status conference with the Court. There, you asserted that the missing information was privileged, and the Court directed again that plaintiffs produce a privilege log.

Your response was the February 13 letter, which attached a list of 3, 915 names, said to be your privilege log. According to the letter, at some point between August 2, 2006 and February 20, 2007, attorneys in your office had at least one conversation with every person on that list and in some instances more than one conversation. That list, however, is not a proper privilege log, nor does it meet our need to obtain first-hand, credible information concerning the few relevant facts we need to ascertain before settling a plaintiff's claim.

Specifically, the list does not enable us to assess the applicability of a privilege. See

---

> any claims based on the formula set out in the MOU, defendant needed the answers to questions defense counsel co-authored and approved. In this regard, individual claimants should have understood that they were providing answers to defendant even though the completed questionnaires were returned to plaintiffs' counsel.

Decision at 9.

RCFC 26(b)(5)(A) ("When a party withholds information . . .by claiming that it is privileged . . ., the party shall make the claim expressly and shall describe the nature of the documents, communications, or things not produced or disclosed *in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the applicability of the privilege or protection).* Emphasis added.

Moreover, your approach unnecessarily burdens our review effort, because the number of plaintiff conversations the list reports far exceeds the number of plaintiffs whose questionnaires we are reviewing, and does not identify either what has been withheld or for which plaintiff. In particular, the list does not indicate what has been withheld in cases where your attorneys inserted answers and/or entered the notation "See telephone log."

Thus, in addition to being legally objectionable, your approach interferes with the settlement procedure itself, because it casts doubt upon the value of every questionnaire – the essential element of our agreed-upon resolution procedure. See Dec. at 9. At some point, each of the active plaintiffs signed a questionnaire under penalty of perjury. Now, we are confronted with having to determine what their certified responses were; but, presented with information of uncertain origin and time, and an undocumented claim of privilege, we are being deprived of the very information that the parties agreed would be the foundation of the case's resolution. As the Court noted, our ability to verify the truth asserted is at the heart of this process. See, e.g., Decision at 13 ("First, defendant would be able to read the original narrative answers to questions #14 and #17, information not fully included in the database. Second, defendant would be able to confirm the accuracy of the electronic database.). Obviously, we can offer no settlement for these individuals under these circumstances.

Please call me as soon as possible so we can discuss how best to proceed.

Very truly yours,

STEVEN J. GILLINGHAM
Assistant Director
Commercial Litigation Branch

# EXHIBIT F

U.S. Department of Justice

Civil Division

RECEIVED
APR 16 2008

JSB:JED:SJGillingham
154-01-495

Telephone: (202) 616-2311
Facsimile: (202) 353-7988

*Washington, D.C. 20530*

April 14, 2008

By FEDEX

Jack Lee, Esq.
Minami Tamaki, LLP
360 Post St. 8th Floor
Union Square
San Francisco, CA 94108-4903
(415) 788-9000

Re: Christofferson v. United States, No. 01-495C (Fed. Cl.)

Dear Mr. Lee:

As you know, we are currently reviewing copies of the 1,828 questionnaire responses provided by your office. This concerns several developments that we believe are unduly delaying the resolution of these claims.

First, as outlined in our February 28, 2008 letter, we agreed to identify, on a regular basis, claims about which we have reached conclusions based upon the evidence before us. We proposed providing you with a list of such plaintiffs on a biweekly basis in exchange for obtaining a response from you within one month of your receipt of this information. On February 28, we provided you with the names of 42 plaintiffs whose claims we maintain should be dismissed based upon the response to the questionnaire and the reasons for our position.

Under this procedure, as we to review and evaluate claims, we note those claims for which we can make a determination without further information and performing an immediate second review of them so that we may identify them for you as we continue our review. Since February 28, we have discovered an additional 120 plaintiffs whose claims should be dismissed for reasons similar to those specified in our February 28th letter. We plan to send you this list of names and explanations of our evaluations once we receive your reply to our February 28 letter. If you find this additional step helpful in expediting the resolution of these claims, we are certainly willing to continue providing you this information. If, however, you are no longer interested in this arrangement, please let us know so we can dispense with the immediate second review.

In any event, we would like to have your response to those we believe should be dismissed as soon as possible and would like to establish a protocol concerning these cases of early identification, before I leave the country for the April 26, 2008 to May 25, 2008 military duty I have mentioned to you. I expect we would meet to review the balance after my return in June.

Concerning your privilege claims, as explained in our March 24 letter, we do not believe the list you have provided is legally sufficient and is delaying our resolution of these claims, because it deprives us of the first-hand information needed to ascertain basic facts about the claims. You replied in an April 3rd email that the March 24 letter was unclear and requested examples of information that we believe is missing from the claim forms and database.

I explained in my email of April 8, 2008, that the instances in which information is missing from claim forms are numerous, but would be happy to supply examples, if that would assist you in understanding the problem we face. The examples below are for that purpose, but are only a few of the many we have encountered.

Many of the claim forms that concern us are those in which additional overtime hours have been added to the claim form by a member of your staff who has noted the addition to the form with a reference to a telephone log. For instance, on the claim form belonging to Plaintiff Shunell Kiper, the notation "per phone conversation" appears next to a column of hours recorded by your office, adjacent to those initially-supplied by the plaintiff. No explanation of the basis for the changed hours is provided. Further, Plaintiff Kiper indicated that the hours claimed were not based on estimates, yet someone from your office noted "yes, see phone log." The basis for this change also is undisclosed.

There also are claim forms on which plaintiffs do not specify, under penalty of perjury, the number of hours of overtime claimed, yet someone from your office filled in the hours based on a phone conversation. For instance, the only overtime claimed on Plaintiff Carol Siemons' claims form is described as "hours filled in by Molly based on phone conversation." There is no indication of how these hours were determined, despite the fact that the claim form itself asks plaintiffs to explain how they arrived at their estimated hours. Another example is the form for Plaintiff Steven Graham, who did not specify the number of hours claimed. Instead, there is a notation made by someone in your office indicating that the claimed hours were entered based upon a phone conversation. Again, there is no explanation or documentation provided for the hours claimed.

In addition to the number of overtime hours claimed, your office also has inserted answers to other questions on the claim form. For example, it appears that Plaintiff Doris McAfee failed to answer Question No. 16, which asked whether her supervisor knew or had reason to know whether she worked overtime prior to her performing it. However, the answer "yes" has been circled with the note "per phone conf w/Molly D 11/9/06." There is no explanation provided for plaintiff's failure to respond to this question under penalty of perjury

nor any basis for the affirmative response provided by your staff. Furthermore, Plaintiff McAfee did not explain the basis for her estimates of overtime hours worked. We do not know whether this too is included in the telephone log. Likewise, Plaintiff Deborah Stallworth-Williams failed to answer Question 16, yet the answer was marked "yes" by "Molly D per phone conversation." This plaintiff also failed to explain the basis for her estimates and it is unclear whether this information is included in the telephone log.

Similar instances are those in which a plaintiff's answer clearly has been changed and the only explanation provided is "see phone log." The original responses were signed under penalty of perjury by plaintiffs, while the changed responses provided and entered by your staff offer no such certification. For example, Plaintiff Carla Smith marked that her supervisor did not know about the overtime claimed prior to working the overtime. Her response was changed by your office from "no" to "yes," with a notation "per phone conversation." There is no further explanation for the change. Similarly, Plaintiff Ashley Smart also marked that her supervisor did not know about the overtime and her response was changed with a notation "per phone conversation." Again, no further explanation is provided for the changed answer.

There also are questions raised when plaintiffs' answers have not been changed. For example, Plaintiff Robert Maxwell marked that the numbers he provided on the payroll summary were not based on estimates, yet "see phone log" is written next to the question. No further information is provided as to what the phone log explains.

There is at least one instance where the plaintiff indicated he was no longer interested in pursuing his claim, yet your office changed that answer. Plaintiff Richard Lawler marked on his claim form that he did not wish to continue with his claim for unpaid overtime. However, the form includes a note from your office stating "does want to continue per phone." The majority of the claim form was left blank by the plaintiff clearly supporting his intention to withdraw his claim.

Your "database" (actually, a spreadsheet), to which you often refer us when we discuss these matters, is equally problematic because we have found numerous inconsistencies between the questionnaire responses and the spreadsheet. For example, Plaintiff Tamber Simonson provided no narrative answers on the claim form and stated that the hours claimed were not based upon estimates. However, your spreadsheet shows that the numbers of hours furnished on her claims form are an estimate, based upon memory. The spreadsheet also represents that Plaintiff's supervisor asked Plaintiff to work overtime, although that is not what the claim form states. Plaintiff Sybil Singletary stated that the overtime hours provided on her form were not estimates and that her supervisor was aware she worked the uncompensated overtime, but provided no explanation. However, the spreadsheet represents that claim is based on estimates, based upon memory. The spreadsheet also reflects several explanations for supervisor knowledge, none of which are supported by the claim form. Plaintiff Jeffrey Smrz claimed that the overtime hours he provided on the form were estimates and that his supervisor had knowledge of the uncompensated overtime, but he failed to provide the requested explanations

for his answers. Nonetheless, your spreadsheet reflects that the estimate were based on memory and that his supervisor told him to roll over hours.

Similarly, Plaintiff Cindy Leung indicated that her supervisor was not aware of her working overtime prior to her working the overtime. Yet, the spreadsheet indicates that Ms. Leung believed her supervisor knew, because her supervisor rejected her time sheets with overtime even though her claim form provides no support for this explanation. Likewise, Plaintiff Rachel Muhammad did not check either box for question 13 nor did she provide any response for question 17. Yet the spreadsheet states that the answers to Questions 16 and 16f are "True," which according to your key, means that her supervisor told her to work overtime and told her to roll over hours. Her claims form, signed by Ms. Muhammad under penalty of perjury, contains no such information.

We also have discovered spreadsheet entries that incorrectly record Plaintiffs' claims. Some examples include the claim of Plaintiff Jeffrey Smith, who appears to be claiming exactly the same hours for which he already received overtime pay. Plaintiff Smith was paid for 54 hours, 49.5 hours and 56.5 hours and is claiming 14, 9, 5, and 16.5 hours of overtime. Yet the spreadsheet shows claims of 7, 4.75, and 8.25 hours of overtime, which is exactly half of the amount that Plaintiff claims. Plaintiff Maureen Worrell claims 12 overtime hours for the week of May 27, but the spreadsheet reflects a 14-hour claim for that week. Plaintiff Edmond Slatus claims only rollover hours on his claim form, but the spreadsheet reflects some overtime hours claimed. Finally, Plaintiff Carmen Worden claimed zero overtime hours for the week of April 29, but the spreadsheet reflects a claim of five hours of overtime.

These matters are discouraging and suggest we will be spending needless amounts of time and effort unrelated to the merits of these claims, thereby increasing the costs of this lawsuit. I would hope that you do not expect the Government to entertain claims for attorney fees for such actions.

Please contact me at your earliest convenience to discuss how best to proceed and, if necessary, to schedule a conference with the Court to help us resolve this matter.

Very truly yours,

STEVEN J. GILLINGHAM
Assistant Director
Commercial Litigation Branch

# EXHIBIT G

MINAMI TAMAKI LLP
Attorneys at Law

Bethany Caracuzzo
Associate
Phone: 415-788-9000 x126
Email: bcaracuzzo@MinamiTamaki.com

April 22, 2008

VIA E-MAIL and FEDERAL EXPRESS

Steven J. Gillingham, Esq.
Commercial Litigation Branch
Civil Division
U.S. Department of Justice
Attn: Classification Unit
2nd Floor, Todd Building
Washington D.C. 20005

RE: *Christofferson v. U.S. Department of Commerce*, U.S. Court of Federal Claims, No. 01-495C

Dear Mr. Gillingham:

I am working with Jack Lee on the above-entitled matter. This letter serves to respond to your correspondence of March 24, 2008 wherein you request our attorneys' notes on conversations we have had with our clients over the telephone ("telephone call logs"). This also responds to your April 14, 2008 letter where you clarified the issues you had with our production and gave examples. However, we decline to provide these notes on the basis of attorney-client privilege and work product privilege for the reasons set forth below.

The Court agrees that the attorney notes of telephone calls are privileged:

Under California law, once it is determined that a communication was made in "the course of the lawyer-client" relationship, "the communication is presumed to have been made in confidence..." (*Barton*, *infra*, at 1110.) Here, telephone calls between Plaintiffs and their counsel, wherein plaintiffs' claims were discussed, clearly constitute a communication made in the course of the attorney-client relationship.

The Court agrees. In its October 19, 2007 Opinion, the Court expressly noted that Plaintiffs' counsel's notes from telephone conversations would be privileged and not discoverable:

> "[D]efendant does not seek counsel's notes from conversations with clients, communications defendant recognizes as privileged. Rather, defendant seeks the answers to a jointly drafted questionnaire." Opinion at 10 (emphasis added). See also Opinion at 12.

The Court based its decision to release the questionnaires to Defendants solely because, in the Court's opinion, the plaintiffs understood when they were completing the questionnaire that the questionnaire would be shared with defense for purposes of settlement. Opinion at 9.

No such argument can be made about conversations a client has with his or her attorney, or for the attorney's notes of that conversation. Judge Bruggink expressly noted that "[c]ommunications from clients seeking legal advice are privileged "to encourage frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and the administration of justice." Opinion at 8, citing to *Upjohn Co. v. United States*. (1981) 449 US 383, 389.

<u>The Work Product Privilege applies:</u>

Any notes that attorneys and law clerks made of those communications, or of their analyses, is also clearly protected as work product. An "attorney's memory, notes and impressions of oral statements of witnesses interviewed in the course of preparing for litigation are . . . opinion work product which merits special protection. (*Sparton Corp. v. United States*, 44 Fed.Cl. 557, 564 (1999) citing *Upjohn*, 449 U.S. at 400-01). The work product doctrine protects materials that reveal an attorney's inferences drawn from interviews. (FRCP 26(b)(3); *Hickman v. Taylor* (1947) 329 U.S. 495, 511.) Here, the information in the call notes and database are not verbatim quotes of what Plaintiffs said to Plaintiffs' attorneys and law school graduates.[1] The phone calls were not recorded and no transcripts were prepared. Instead, the attorneys and law school graduates asked appropriate analytical questions, and applied their own analysis, based upon their experience and expertise within the legal field, and this case, in writing the information down into the call notes and database.

---

[1] Judge Bruggink held that the "complete, verbatim answers" to the questionnaires were not privileged. It follows that he understands that attorneys' notes that do not reflect verbatim responses are privileged and, therefore, not discoverable.

Most importantly, Defendant already has ALL of this information:

Rule 26(b)(3) of the Court of Federal Claims does provide an exception and allows discovery of some work product only if the party seeking discovery can show substantial need and cannot, without undue hardship, obtain the substantial equivalent of the materials by other means. Here, Defendant has been provided with all of this information by other means. As such, Defendant cannot show undue hardship and is not entitled to discover privileged communication.

In your letter, you claim that when Defendant was provided with copies of the questionnaires, you found "matters missing – including those replaced by the notations 'See telephone log.'" (Letter at 2.) After obtaining the original questionnaires and the database, Defendant now claims that it needs to know what information was gleaned from telephone conversations between plaintiffs and their counsel. All facts pertaining to the questionnaires are in the in the database, *including factual information obtained via attorney-client conversations.* As such, Defendant has this information. If Defendant wants to determine what factual information was divulged during these conversations, Defendant merely needs to note what information is in the database that is not included in the questionnaire. No necessary information is missing.

Defendant has not been denied any factual information, and has not suffered any undue hardship. Set forth below are the procedures we used in order to clarify for you that nothing factual necessary to any plaintiff's claim have been kept from Defendant.

- The Process

As Plaintiffs have previously explained, hundreds of plaintiffs called Minami Tamaki for assistance with completing their questionnaires. When a plaintiff called for assistance in completing the questionnaire (as they were encouraged to do within the questionnaire), or if my firm called a plaintiff regarding incomplete or unclear questionnaires, the attorney would take notes during the conversation in our telephone call log. These notes included the questions the attorneys asked Plaintiffs and the Plaintiffs' answers. Although clients discussed factual information regarding their claims, Minami Tamaki did not record, verbatim, any plaintiff's answers. You set forth in your April 14, 2008 letter that, "there is no explanation provided for plaintiff's failure to respond [on the questionnaire] under penalty of perjury." (At p. 2) Please understand, as simple as *you* may think the form was, numerous clients experienced difficulty in completing their questionnaires and needed to discuss their claims with their attorney. You can imagine the difficulty clients had with remembering exact minutes that they worked during a 6-month period over 7 years

ago. Furthermore, clients got confused or discouraged when they had to attest to something under oath without first speaking to their attorneys about it. Discussing their responses with their attorneys is something they are entitled to do under the law, and something the questionnaire itself contemplated and encouraged. Defendant has set forth no authority otherwise.

Furthermore, the answers they provided were not always concise. Their answers to our questions were often long and almost always not entirely to the point. In some situations Plaintiffs would complain about the long hours they worked while they were employed by the Census, how they were denied overtime pay, and about the personnel shortage because so many employees quit their jobs during the 2000 Census. Plaintiffs' counsel would have to then follow-up and question the client appropriately to gain an understanding of what the client was trying to communicate.

For example, your letter discussed Ms. Carol Siemons' claim form. (Letter at 2). Ms. Siemons is a typical example of someone who was confused by the process and overwhelmed at having to explain her hours without assistance of counsel. She expressed her confusion and the difficulty she was having in an attachment to her completed claim form, both of which were provided to Defendant. Ms. Siemons sent this document to her attorneys, hoping that her lengthy response would clarify her responses to the questionnaire. Upon receiving this addendum, Minami Tamaki attorneys or law school graduates spoke to Ms. Siemons to help her understand the question and clarify her response. Your letter states "there is no indication of how these hours were determined," but Ms. Siemons' own attachment shows how these hours were determined.

Re. Ms. Shunell Kiper, our attorneys/law school graduates had a very long conversation with Ms. Kiper. In our database we expressly noted that she came up with her estimates by adding lunch breaks and/or travel times. It is clear that Ms. Kiper did not fully understand the question, or needed attorney assistance in interpreting it and helping her understand how she was to estimate her time.

The scenario was very similar for Mr. Steve Graham, Ms. McAfee and Mr. Robert Maxwell. These people had specific memories of events, but did not always understand how to place them as single word answers or even to select a multiple choice answer. These clients, like most people, had never had to fill out a questionnaire before that had legal consequences, and so to err on the side of caution, would leave information blank until they spoke with their attorneys.

Ms. Siemons' claim is an examplar of many claim forms that we received and completed. However, all of the necessary information gleaned from our interviews is indicated in the database.

- The Database:

When a questionnaire arrived at our office, we would review it and any attachments, such as D-308 Daily Pay and Work Records or D-444 Earning Statements. The database already contained the plaintiff's name and social security number, as well as the Local Census Office Code and Name, plaintiff's position, and regular, training, overtime, and total hours paid for every recorded week worked. This information was obtained from the Census Bureau itself. The following from the questionnaire was entered into the database:

1. Whether the plaintiff declined to continue pursuing his claim. If this was the case, data entry stopped at this point.
2. Answer to Question 16, whether the class member's supervisor knew that the employee was working overtime prior to his working overtime.
3. Answer to Question 17, explanation of answer to Question 16:
   (16a) I told/complained to my Supervisor that I worked OT;
   (16b) I saw others denied OT so did not claim myself;
   (16c) Supervisor asked me to work overtime;
   (16d) Supervisor told me to work until job complete;
   (16e) Supervisor rejected my timesheet with OT;
   (16f) Supervisor told me to rollover OT hrs;
   (16g) Supervisor worked alongside me;
   (16h) Supervisor saw me early am and late at night; and
   (16i) Supervisor denied travel time.
4. Plaintiff's claim for the given week:
   Regular Hours Claimed;
   Rollover Hours Claimed; and/or
   Overtime Hours Claimed.
5. Question 13, whether the claim was an estimate.
   (13a) Whether the claim was based on memory.
   (13b) Whether the claim was based on contemporary records or documents.
   (13c) Whether the claim was based on added lunch breaks, breaks, and/or travel time; and/or
   (13d) Whether documents supporting the claim were attached.
6. Whether the Claim Form was signed under penalty of perjury.

Every question in the Claim Form has a corresponding field in the database for every week any given plaintiff worked for the Census Bureau in 2000.

Any factual information submitted on behalf of the plaintiff was either (1) written by the plaintiff on his questionnaire and then entered into the database or (2) directly entered into the database by the attorney or Law Clerk processing the questionnaire, including factual information relevant to the questionnaire gleaned from attorney-client communications. Any information that is "missing" from a plaintiff's questionnaire is in his or her database entry, as contemplated by the MOU: the main purpose of the database was to "record all relevant information contained in the questionnaire." MOU, at ¶ 6.

Given all of the above, our internal processes, and the information contained on the database, it is unclear what you consider to be missing. Plaintiffs only entered claims with complete factual information. Defendant has been provided with copies of the questionnaires, the database, and our privilege log.

<u>Defendant can obtain the alleged "missing" information from depositions and avoid delay:</u>

Defendant's unfounded objections are causing unnecessary delay. As set forth above, Rule 26(b)(3) provides an exception to the privilege only if you can show that you cannot obtain the substantial equivalent of the information by other means. The MOU contemplated a process by which you could the needed information, if you felt you had not already received it, via a deposition of that responding Plaintiff. See MOU at ¶ 8. Should you feel you do not have information given any individual plaintiff's claim, you can depose him or her. Defendant has failed to exhaust these "other means," e.g. depositions.

<u>It is not improper for a Plaintiff to amend or add to his/her answer after the questionnaire was first submitted:</u>

In your April 14th letter you take issue with the fact that a plaintiff first submitted a questionnaire that may have lacked information, but provided more information later, as if that was legally improper or improper under the MOU. It is not, and you have cited no authority otherwise. Judge Bruggink did not find that a Plaintiff could not add information after submitting their questionnaire to their attorney. Just because they signed the original questionnaire "under penalty of perjury" when they submitted it does not mean they cannot ever change, or add to, their responses, especially if their original response was given under confusion. This is similar to complaints, answers to interrogatories, and even deposition testimony. People frequently add information later, or, upon clarification of the questions, change or amend their answers. There is nothing unlawful or improper about that.

These are laypeople doing the best job they can to answer a questionnaire with legal conclusions framed by and for lawyers.

Plaintiffs anticipate communications with their counsel are protected and did not waive their privileges:

The Court, in permitting the discovery of the Plaintiffs' original questionnaires noted that the questionnaires were intended to be prepared for settlement and it was anticipated by the plaintiffs that their questionnaires would be viewed by the Defense. In fact, in *Barton v. U.S. Dist. Court for Central Dist. of Cal.* (2005) 410 F.3d 1004, the Court did not permit the discovery of the claimant questionnaires on the basis of attorney-client privilege, even though the questionnaires were merely an intake form for potential cases arising out of the ingestion of Paxil. The *Barton* Court focused on the expectations of the clients when they made the communications: "[m]ore important than what the law firm intended is what the clients thought." (Id. at 1107.) "It is their privilege, not any right of the lawyers, that is at stake." (Id. at 1110; see also *Gates v. Rohm & Haas Co.* 2006 WL 3420591: questionnaires held to be privileged; *Bauman v. Jacobs Suchard, Inc.* 136 F.R.D. 460 (N.D. Ill 1990): EEOC letter and questionnaire held to be privileged; *Connelly v. Dun & Bradstreet*, 96 FRD 339 (D. Mass 1982): information gathered from customers by an attorney appointed to protect their legal interests in a bankruptcy proceeding was deemed privileged because the customers regarded the representative as their lawyer. At 342.)

In fact, the MOU did not indicate to either Plaintiffs or their counsel that the questionnaires would be shared with Defendant. (MOU at 6). While I understand the Court has determined that the questionnaires are discoverable here, and we have turned them over, Plaintiffs did not, in any way, waive their claims of privilege or work product in their attorney-client telephone calls or attorney notes: the MOU expressly states that "communications between plaintiffs and the TPA will not be considered a waiver of any applicable attorney-client privilege or work product privilege." (Id.) While Plaintiffs did not end up using a third party administrator ("TPA"), they had clearly demonstrated that they did not intend to waive their privileges in any way. Since no third party was used, and Plaintiffs merely communicated with their counsel, there is no basis to claim that Plaintiffs' counsel never asserted the privilege, or that any of the Plaintiffs themselves ever waived it.

Producing the call logs would be burdensome and would not provide any new information:

Not only is requesting our telephone call logs antithetical to attorney-client privilege and the work product doctrine, the logs would not give Defendant any new information. Instead, it would only require us to review over a thousand pages of

attorney notes to redact confidential attorney notes, even though you already have all the factual information necessary for evaluating the claims.

I will address the other issues raised in your April 14, 2008 correspondence in a separate letter.

I would like to discuss the matters set forth in this letter with you, but should we not reach an agreement regarding the telephone logs, I suggest we schedule a status conference with the Court to resolve this issue. I understand that you will be unavailable for a period of time due to military service, but perhaps we can schedule one during your leave? Please contact Mr. Lee upon your receipt of this letter.

Sincerely,

Bethany Caracuzzo
Attorney for Plaintiffs

# EXHIBIT H

| EMPLOYEE NAME | PP END DATE OF HOURS | DECLINE | 13 IS CLAIM ESTIMATE | 13a Memory | 13b Contemp records/DOCS | 13c Added lunch/breaks and/or travel time | HRLY RATE | OT HRS CLAIMED | ROLLOVER HRS CLAIMED | SSN | REG Hrs CLAIM |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Siemons,Carol A. | 4/29/2000 | FALSE | TRUE | TRUE | FALSE | FALSE | | | | 162423596 | |
| Siemons,Carol A. | 5/6/2000 | FALSE | FALSE | FALSE | FALSE | FALSE | | | | 162423596 | |
| Siemons,Carol A. | 5/13/2000 | FALSE | FALSE | FALSE | FALSE | FALSE | | 10 | | 162423596 | |
| Siemons,Carol A. | 5/20/2000 | FALSE | FALSE | FALSE | FALSE | FALSE | | 10 | | 162423596 | |
| Siemons,Carol A. | 5/27/2000 | FALSE | FALSE | FALSE | FALSE | FALSE | | 10 | | 162423596 | |
| Siemons,Carol A. | 6/3/2000 | FALSE | FALSE | FALSE | FALSE | FALSE | | 10 | | 162423596 | |
| Siemons,Carol A. | 6/10/2000 | FALSE | FALSE | FALSE | FALSE | FALSE | | 10 | | 162423596 | |
| Siemons,Carol A. | 6/17/2000 | FALSE | FALSE | FALSE | FALSE | FALSE | | 10 | | 162423596 | |
| | | | | | | | | | | | |
| McAfee,Doris M | 4/29/2000 | FALSE | TRUE | FALSE | FALSE | FALSE | | | | 473487123 | |
| McAfee,Doris M | 5/6/2000 | FALSE | FALSE | FALSE | FALSE | FALSE | | 8 | | 473487123 | |
| McAfee,Doris M | 5/13/2000 | FALSE | FALSE | FALSE | FALSE | FALSE | | | | 473487123 | 6 |
| McAfee,Doris M | 5/20/2000 | FALSE | FALSE | FALSE | FALSE | FALSE | | | | 473487123 | |
| McAfee,Doris M | 5/27/2000 | FALSE | FALSE | FALSE | FALSE | FALSE | | 6.5 | | 473487123 | 1 |
| McAfee,Doris M | 6/3/2000 | FALSE | FALSE | FALSE | FALSE | FALSE | | | | 473487123 | 6 |
| McAfee,Doris M | 6/10/2000 | FALSE | FALSE | FALSE | FALSE | FALSE | | 8 | | 473487123 | |
| McAfee,Doris M | 6/17/2000 | FALSE | FALSE | FALSE | FALSE | FALSE | | | | 473487123 | |
| McAfee,Doris M | 7/15/2000 | FALSE | FALSE | FALSE | FALSE | FALSE | | | | 473487123 | |
| McAfee,Doris M | 7/22/2000 | FALSE | FALSE | FALSE | FALSE | FALSE | | 3 | | 473487123 | 4 |
| McAfee,Doris M | 8/5/2000 | FALSE | FALSE | FALSE | FALSE | FALSE | | 3 | | 473487123 | 5.5 |
| | | | | | | | | | | | |
| Kiper,Shunell | 4/29/2000 | FALSE | TRUE | TRUE | FALSE | TRUE | | 15 | | 547492011 | 1 |
| Kiper,Shunell | 5/6/2000 | FALSE | FALSE | FALSE | FALSE | FALSE | | 15 | | 547492011 | 2.5 |
| Kiper,Shunell | 5/13/2000 | FALSE | FALSE | FALSE | FALSE | FALSE | | 15 | | 547492011 | |
| Kiper,Shunell | 5/20/2000 | FALSE | FALSE | FALSE | FALSE | FALSE | | 15 | | 547492011 | 1 |
| Kiper,Shunell | 5/27/2000 | FALSE | FALSE | FALSE | FALSE | FALSE | | 15 | | 547492011 | 2.5 |
| Kiper,Shunell | 6/3/2000 | FALSE | FALSE | FALSE | FALSE | FALSE | | 15 | | 547492011 | |
| Kiper,Shunell | 6/10/2000 | FALSE | FALSE | FALSE | FALSE | FALSE | | 15 | | 547492011 | 9.5 |
| Kiper,Shunell | 7/1/2000 | FALSE | FALSE | FALSE | FALSE | FALSE | | 15 | | 547492011 | 15 |
| Kiper,Shunell | 7/8/2000 | FALSE | FALSE | FALSE | FALSE | FALSE | | 25 | | 547492011 | |

| EMPLOYEE NAME | LCO CODE | LCO NAME | POSITION | 16a I told/complained to my Supe that I worked OT | 16b I saw others denied OT so did not claim myself | 16c Supe asked me to work OT | 16d Supe told me to work until job complete | 16e Supe rejected my timesheet with OT | 16f Supe told me to ROLLOVER OT hrs | 16g Supe worked alongside me | 16h Supe saw me early am and late at night |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Siemons,Carol A. | 2714 | Davis | Enumerator | FALSE | FALSE | FALSE | TRUE | FALSE | FALSE | TRUE | FALSE |
| Siemons,Carol A. | 2714 | Davis | Enumerator | FALSE | FALSE | FALSE | FALSE | FALSE | FALSE | FALSE | FALSE |
| Siemons,Carol A. | 2714 | Davis | Enumerator | FALSE | FALSE | FALSE | FALSE | FALSE | FALSE | FALSE | FALSE |
| Siemons,Carol A. | 2714 | Davis | Enumerator | FALSE | FALSE | FALSE | FALSE | FALSE | FALSE | FALSE | FALSE |
| Siemons,Carol A. | 2714 | Davis | Enumerator | FALSE | FALSE | FALSE | FALSE | FALSE | FALSE | FALSE | FALSE |
| Siemons,Carol A. | 2714 | Davis | Enumerator | FALSE | FALSE | FALSE | FALSE | FALSE | FALSE | FALSE | FALSE |
| Siemons,Carol A. | 2714 | Davis | Enumerator | FALSE | FALSE | FALSE | FALSE | FALSE | FALSE | FALSE | FALSE |
| Siemons,Carol A. | 2714 | Davis | Enumerator | FALSE | FALSE | FALSE | FALSE | FALSE | FALSE | FALSE | FALSE |
| | | | | | | | | | | | |
| McAfee,Doris M | 2714 | Davis | Enumerator | FALSE | FALSE | FALSE | FALSE | FALSE | FALSE | FALSE | TRUE |
| McAfee,Doris M | 2714 | Davis | Enumerator | FALSE | FALSE | FALSE | FALSE | FALSE | FALSE | FALSE | FALSE |
| McAfee,Doris M | 2714 | Davis | Enumerator | FALSE | FALSE | FALSE | FALSE | FALSE | FALSE | FALSE | FALSE |
| McAfee,Doris M | 2714 | Davis | Enumerator | FALSE | FALSE | FALSE | FALSE | FALSE | FALSE | FALSE | FALSE |
| McAfee,Doris M | 2714 | Davis | Enumerator | FALSE | FALSE | FALSE | FALSE | FALSE | FALSE | FALSE | FALSE |
| McAfee,Doris M | 2714 | Davis | Enumerator | FALSE | FALSE | FALSE | FALSE | FALSE | FALSE | FALSE | FALSE |
| McAfee,Doris M | 2714 | Davis | Enumerator | FALSE | FALSE | FALSE | FALSE | FALSE | FALSE | FALSE | FALSE |
| McAfee,Doris M | 2714 | Davis | Enumerator | FALSE | FALSE | FALSE | FALSE | FALSE | FALSE | FALSE | FALSE |
| McAfee,Doris M | 2714 | Davis | Enumerator | FALSE | FALSE | FALSE | FALSE | FALSE | FALSE | FALSE | FALSE |
| McAfee,Doris M | 2714 | Davis | Enumerator | FALSE | FALSE | FALSE | FALSE | FALSE | FALSE | FALSE | FALSE |
| McAfee,Doris M | 2714 | Davis | Enumerator | FALSE | FALSE | FALSE | FALSE | FALSE | FALSE | FALSE | FALSE |
| | | | | | | | | | | | |
| Kiper,Shunell | 3215 | Compton | Enumerator | TRUE | FALSE | FALSE | FALSE | FALSE | FALSE | FALSE | FALSE |
| Kiper,Shunell | 3215 | Compton | Enumerator | FALSE | FALSE | FALSE | FALSE | FALSE | FALSE | FALSE | FALSE |
| Kiper,Shunell | 3215 | Compton | Enumerator | FALSE | FALSE | FALSE | FALSE | FALSE | FALSE | FALSE | FALSE |
| Kiper,Shunell | 3215 | Compton | Enumerator | FALSE | FALSE | FALSE | FALSE | FALSE | FALSE | FALSE | FALSE |
| Kiper,Shunell | 3215 | Compton | Enumerator | FALSE | FALSE | FALSE | FALSE | FALSE | FALSE | FALSE | FALSE |
| Kiper,Shunell | 3215 | Compton | Enumerator | FALSE | FALSE | FALSE | FALSE | FALSE | FALSE | FALSE | FALSE |
| Kiper,Shunell | 3215 | Compton | Enumerator | FALSE | FALSE | FALSE | FALSE | FALSE | FALSE | FALSE | FALSE |
| Kiper,Shunell | 3215 | Compton | Enumerator | FALSE | FALSE | FALSE | FALSE | FALSE | FALSE | FALSE | FALSE |
| Kiper,Shunell | 3215 | Compton | Enumerator | FALSE | FALSE | FALSE | FALSE | FALSE | FALSE | FALSE | FALSE |

| EMPLOYEE NAME | 16i Supe denied travel time | TOTAL HRS (paid) | REG HRS (paid) | TRN HRS (paid) | . OT HRS (paid) | OT PAID | 16 Supe Knowledge | cf SIGNED UNDER PENALTY OF PERJURY |
|---|---|---|---|---|---|---|---|---|
| Siemons,Carol A. | FALSE | 40 | 16 | 24 | 0 | FALSE | TRUE | TRUE |
| Siemons,Carol A. | FALSE | 39.75 | 39.75 | 0 | 0 | FALSE | FALSE | FALSE |
| Siemons,Carol A. | FALSE | 40 | 40 | 0 | 0 | FALSE | FALSE | FALSE |
| Siemons,Carol A. | FALSE | 40 | 40 | 0 | 0 | FALSE | FALSE | FALSE |
| Siemons,Carol A. | FALSE | 56.5 | 40 | 0 | 16.5 | TRUE | FALSE | FALSE |
| Siemons,Carol A. | FALSE | 59 | 40 | 0 | 19 | TRUE | FALSE | FALSE |
| Siemons,Carol A. | FALSE | 58.75 | 39.5 | 0 | 19.25 | TRUE | FALSE | FALSE |
| Siemons,Carol A. | FALSE | 48 | 40 | 0 | 8 | TRUE | FALSE | FALSE |
| | | | | | | | | |
| McAfee,Doris M | FALSE | 40 | 20 | 20 | 0 | FALSE | TRUE | TRUE |
| McAfee,Doris M | FALSE | 40 | 40 | 0 | 0 | FALSE | FALSE | FALSE |
| McAfee,Doris M | FALSE | 28 | 28 | 0 | 0 | FALSE | FALSE | FALSE |
| McAfee,Doris M | FALSE | 16 | 16 | 0 | 0 | FALSE | FALSE | FALSE |
| McAfee,Doris M | FALSE | 39 | 37 | 0 | 2 | TRUE | FALSE | FALSE |
| McAfee,Doris M | FALSE | 20 | 19 | 0 | 1 | TRUE | FALSE | FALSE |
| McAfee,Doris M | FALSE | 56.5 | 40 | 0 | 16.5 | TRUE | FALSE | FALSE |
| McAfee,Doris M | FALSE | 29 | 27 | 0 | 2 | TRUE | FALSE | FALSE |
| McAfee,Doris M | FALSE | 30.5 | 26.5 | 4 | 0 | FALSE | FALSE | FALSE |
| McAfee,Doris M | FALSE | 36 | 36 | 0 | 0 | FALSE | FALSE | FALSE |
| McAfee,Doris M | FALSE | 34.5 | 26.5 | 8 | 0 | FALSE | FALSE | FALSE |
| | | | | | | | | |
| Kiper,Shunell | FALSE | 39 | 16 | 23 | 0 | FALSE | TRUE | TRUE |
| Kiper,Shunell | FALSE | 37.5 | 37.5 | 0 | 0 | FALSE | FALSE | FALSE |
| Kiper,Shunell | FALSE | 40 | 40 | 0 | 0 | FALSE | FALSE | FALSE |
| Kiper,Shunell | FALSE | 39 | 39 | 0 | 0 | FALSE | FALSE | FALSE |
| Kiper,Shunell | FALSE | 37.5 | 37.5 | 0 | 0 | FALSE | FALSE | FALSE |
| Kiper,Shunell | FALSE | 40 | 40 | 0 | 0 | FALSE | FALSE | FALSE |
| Kiper,Shunell | FALSE | 30.5 | 30.5 | 0 | 0 | FALSE | FALSE | FALSE |
| Kiper,Shunell | FALSE | 25 | 16 | 9 | 0 | FALSE | FALSE | FALSE |
| Kiper,Shunell | FALSE | 40 | 40 | 0 | 0 | FALSE | FALSE | FALSE |

| | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Kiper,Shunell | 7/15/2000 | FALSE | FALSE | FALSE | FALSE | FALSE | | | | 547492011 | |
| | | | | | | | | | | | |
| Graham,Steven | 2/19/2000 | FALSE | TRUE | TRUE | FALSE | FALSE | | | | 570243753 | |
| Graham,Steven | 2/26/2000 | FALSE | FALSE | FALSE | FALSE | FALSE | | 8 | | 570243753 | |
| Graham,Steven | 3/4/2000 | FALSE | FALSE | FALSE | FALSE | FALSE | | 8 | | 570243753 | |
| Graham,Steven | 3/11/2000 | FALSE | FALSE | FALSE | FALSE | FALSE | | 8 | | 570243753 | |
| Graham,Steven | 3/25/2000 | FALSE | FALSE | FALSE | FALSE | FALSE | | | | 570243753 | |
| | | | | | | | | | | | |
| Maxwell,Robert W | 4/29/2000 | FALSE | TRUE | TRUE | FALSE | FALSE | | | | 043367365 | |
| Maxwell,Robert W | 5/6/2000 | FALSE | FALSE | FALSE | FALSE | FALSE | | | 9 | 043367365 | |
| Maxwell,Robert W | 5/13/2000 | FALSE | FALSE | FALSE | FALSE | FALSE | | | | 043367365 | |
| Maxwell,Robert W | 5/20/2000 | FALSE | FALSE | FALSE | FALSE | FALSE | | | | 043367365 | |
| Maxwell,Robert W | 5/27/2000 | FALSE | FALSE | FALSE | FALSE | FALSE | | | | 043367365 | |
| Maxwell,Robert W | 6/3/2000 | FALSE | FALSE | FALSE | FALSE | FALSE | | | | 043367365 | |

| | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Kiper,Shunell | 3215 | Compton | Enumerator | FALSE | FALSE | FALSE | FALSE | FALSE | FALSE | FALSE | FALSE |
| | | | | | | | | | | | |
| Graham,Steven | 3227 | Culver City | Enumerator | FALSE | FALSE | FALSE | FALSE | FALSE | FALSE | TRUE | TRUE |
| Graham,Steven | 3227 | Culver City | Enumerator | FALSE | FALSE | FALSE | FALSE | FALSE | FALSE | FALSE | FALSE |
| Graham,Steven | 3227 | Culver City | Enumerator | FALSE | FALSE | FALSE | FALSE | FALSE | FALSE | FALSE | FALSE |
| Graham,Steven | 3227 | Culver City | Enumerator | FALSE | FALSE | FALSE | FALSE | FALSE | FALSE | FALSE | FALSE |
| Graham,Steven | 3227 | Culver City | Enumerator | FALSE | FALSE | FALSE | FALSE | FALSE | FALSE | FALSE | FALSE |
| | | | | | | | | | | | |
| Maxwell,Robert W | 3111 | Flagstaff | Enumerator | FALSE | FALSE | FALSE | FALSE | FALSE | TRUE | FALSE | FALSE |
| Maxwell,Robert W | 3111 | Flagstaff | Enumerator | FALSE | FALSE | FALSE | FALSE | FALSE | FALSE | FALSE | FALSE |
| Maxwell,Robert W | 3111 | Flagstaff | Enumerator | FALSE | FALSE | FALSE | FALSE | FALSE | FALSE | FALSE | FALSE |
| Maxwell,Robert W | 3111 | Flagstaff | Enumerator | FALSE | FALSE | FALSE | FALSE | FALSE | FALSE | FALSE | FALSE |
| Maxwell,Robert W | 3111 | Flagstaff | Enumerator | FALSE | FALSE | FALSE | FALSE | FALSE | FALSE | FALSE | FALSE |
| Maxwell,Robert W | 3111 | Flagstaff | Enumerator | FALSE | FALSE | FALSE | FALSE | FALSE | FALSE | FALSE | FALSE |

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Kiper,Shunell | FALSE | 22 | 22 | 0 | 0 | FALSE | FALSE | FALSE |
| | | | | | | | | |
| Graham,Steven | FALSE | 24 | 0 | 24 | 0 | FALSE | TRUE | TRUE |
| Graham,Steven | FALSE | 40 | 40 | 0 | 0 | FALSE | FALSE | FALSE |
| Graham,Steven | FALSE | 40 | 40 | 0 | 0 | FALSE | FALSE | FALSE |
| Graham,Steven | FALSE | 40 | 40 | 0 | 0 | FALSE | FALSE | FALSE |
| Graham,Steven | FALSE | 4 | 4 | 0 | 0 | FALSE | FALSE | FALSE |
| | | | | | | | | |
| Maxwell,Robert W | FALSE | 40 | 16 | 24 | 0 | FALSE | TRUE | TRUE |
| Maxwell,Robert W | FALSE | 29 | 29 | 0 | 0 | FALSE | FALSE | FALSE |
| Maxwell,Robert W | FALSE | 18.5 | 18.5 | 0 | 0 | FALSE | FALSE | FALSE |
| Maxwell,Robert W | FALSE | 36.5 | 36.5 | 0 | 0 | FALSE | FALSE | FALSE |
| Maxwell,Robert W | FALSE | 28 | 28 | 0 | 0 | FALSE | FALSE | FALSE |
| Maxwell,Robert W | FALSE | 9.5 | 9.5 | 0 | 0 | FALSE | FALSE | FALSE |

# EXHIBIT I

Siemons, Carol

OCT 1 1 2006

# CLAIM FORM

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**
**WASHINGTON D.C.**
**KENT CHRISTOFFERSON, et al., vs. THE UNITED STATES (No. 01-495C)**

Please print clearly in dark ink.

1. Carol A Siemons — Name (First, Middle, Last)
   [redacted]3596 — Social Security Number

2. 417 Kingsbrook Dr — Street Address
   Apartment Number

   McDonald — City
   PA — State
   15057 — Zip Code

3. Do you wish to continue with your claim against the federal government for unpaid overtime?

   X YES ___NO

   If "Yes," please complete this Claim Form and provide estimates of your overtime on the Payroll Summary. If "No," you do not need to complete the rest of this Claim Form. Please return this form and the Payroll Summary to our offices at the address provided. A "No" means you no longer wish to be a participant in this lawsuit.

4. Kitsock@aol.com — E-mail Address (if any)

5. ______ Work Phone Number
   ______ Best Times to Call

6. 412-220-0374 — Home Phone Number
   A.m. -> 8-10 or Aft 830pm — Best Times to Call

7. 609-602-8257 — Cell Phone Number
   ANY — Best Times to Call

8. ______ Phone Number of Relative or Other Contacts (Optional)

9. Please list any other names used while employed by the U.S. Census Bureau in the year 2000.

   N/A



Q015312

10. While working for the Census Bureau in 2000, did you ever work more than 40 hours in a work week (Sunday through Saturday)? You should include as work time the time you spent traveling to and from your home, time spent on work-related activities at your home, and lunch or dinner breaks if you worked during those breaks.
X Yes ___ No

11. Review the Payroll Summary produced from the Census Bureau payroll records which show the days you worked and hours you submitted in 2000. What is your best estimate of which weeks you worked MORE THAN 40 hours (40+) per work week, and how many hours of overtime you worked each of those 40+ hour weeks?

There are spaces on the right hand side of the Payroll Summary where you should indicate how much overtime you believe you worked. Please include on the Payroll Summary overtime hours that you claim to have worked in the following decennial field positions only: Enumerator, Crew Leader Assistant, Crew Leader, Field Operations Supervisor Assistant, Field Operations Supervisor, and Special Places Operation Supervisor.

**Example:** Assume you worked 50 hours in the first week of May and 20 hours in the second week of May. Because you were not permitted to record more than 40 hours in a week, you only recorded 40 hours for the first week of May and did not submit any overtime worked. Therefore, you would indicate your estimate of overtime as follows:

| PAY PERIOD END DATE | TYPE | SUN | MON | TUE | WED | THU | FRI | SAT | TOTAL | ESTIMATE UNPAID OVERTIME* |
|---|---|---|---|---|---|---|---|---|---|---|
| | | PAYROLL DATA | | | | | | | | |
| 05-06-2000 | REG | 0.00 | 8.00 | 8.00 | 8.00 | 8.00 | 8.00 | 0.00 | 40.00 | |
| 05-06-2000 | TRAIN | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | |
| 05-06-2000 | OT | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | |
| 05-06-2000 | TOTAL | 0.00 | 8.00 | 8.00 | 8.00 | 8.00 | 8.00 | 0.00 | 40.00 | 10 HRS |
| 05-13-2000 | REG | 4.00 | 8.00 | 8.00 | 0.00 | 0.00 | 0.00 | 0.00 | 20.00 | |
| 05-13-2000 | TRAIN | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | |
| 05-13-2000 | OT | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | |
| 05-13-2000 | TOTAL | 4.00 | 8.00 | 8.00 | 0.00 | 0.00 | 0.00 | 0.00 | 20.00 | ______ |

12. If you "banked," "rolled," or "carried over" any overtime you worked, add those also to the Payroll Summary, in the space indicated. "Rolled-over," "banked" or "carried-over" hours refer to overtime hours you worked in one week, but were not able to record because doing so would exceed 40 hours in one week. Some census employees were told to "roll" or "carry" over their overtime hours to later weeks in which they worked less than 40 hours and therefore were already partially paid for their overtime. You may be entitled to some recovery even if you rolled over your overtime hours.

13. Are any of the numbers you wrote on the Payroll Summary based on an estimate?
___ Yes ___ No

14. If any of your numbers are based on estimates, please identify on the Payroll Summary, where indicated, which numbers are estimates and describe how you arrived at those estimates.

15. If you have any documents, which existed in 2000, that may tend to show that you worked the overtime claimed (e.g. datebooks, calendar entries), attach copies of the documents to this claim form. If you provide documents, send copies only. No originals should be provided as your documents will not be returned to you. *Note that documentary proof is not required to make a claim.*

16. Do you believe your supervisor knew or had reason to know that you worked overtime prior to your working the overtime?
X Yes ___ No

17. If you answered yes to Question 16, explain why you believe your supervisor knew or had reason to know that you worked overtime prior to your working the overtime. (Please refer to pages 2 and 3, **"What is Overtime?"** for examples of how your supervisor knew or should have known about your working overtime.)
SEE Attached sheet

If you need additional space to respond to any of the above questions, use a separate sheet of paper. Clearly print your name and SSN at the top of each additional page, and indicate the question number.

Certification: I swear or affirm under penalty of perjury that the above statements are true to the best of my knowledge and belief.

Date: 10/1/06

Signature: Carol Siemons

Print Name: Carol Siemons

**You Must Complete, Sign and Return this Claim Form and the enclosed Payroll Summary by mail postmarked no later than SEPTEMBER 29, 2006.**

If you wish to confirm our receipt of this form, we strongly recommend that you send it via Registered Mail/Return Receipt requested. To obtain a Registered Mail/Return Receipt form, please visit your local post office or go to: www.usps.com.
**You must keep a copy of completed forms for your records.**

Received 1st PaKeT with wrong Address.

ID: 9351

Carol A. Siemons
417 Kingsbrook Dr.
McDonald, PA 15057

SSN : [redacted]3596 **PAYROLL SUMMARY** 

NAME : Siemons,Carol A.

Hours filled in by Molly based on phone conv. 11/10/06

| CHANGEDATE | LOCAL CENSUS OFFICE NAME | POSITION |
|---|---|---|
| 04-24-2000 | Davis | Enumerator |

Hours Worked During 1/1/2000 - 11/30/2000

* Overtime can only be claimed if you worked more than 40 hours total during a work week (Sunday through Saturday). "Work time" includes travel time to and from your home, time you spent at home making work-related calls or on other work activities, and time you worked during a lunch or dinner break.

PAYROLL DATA

| PAY PERIOD END DATE | TYPE | SUN | MON | TUE | WED | THU | FRI | SAT | TOTAL | ESTIMATE OVERTIME WORKED* |
|---|---|---|---|---|---|---|---|---|---|---|
| 04-29-2000 | REG | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 8.00 | 8.00 | 16.00 | |
| 04-29-2000 | TRAIN | 0.00 | 8.00 | 8.00 | 8.00 | 0.00 | 0.00 | 0.00 | 24.00 | |
| 04-29-2000 | OT | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | |
| 04-29-2000 | TOTAL | 0.00 | 8.00 | 8.00 | 8.00 | 0.00 | 8.00 | 8.00 | 40.00 | -Ø- |
| 05-06-2000 | REG | 6.50 | 8.00 | 8.00 | 8.00 | 0.00 | 3.00 | 6.25 | 39.75 | |
| 05-06-2000 | TRAIN | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | |
| 05-06-2000 | OT | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | |
| 05-06-2000 | TOTAL | 6.50 | 8.00 | 8.00 | 8.00 | 0.00 | 3.00 | 6.25 | 39.75 | |
| 05-13-2000 | REG | 2.00 | 6.00 | 8.00 | 8.00 | 8.00 | 8.00 | 0.00 | 40.00 | |
| 05-13-2000 | TRAIN | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | |
| 05-13-2000 | OT | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | |
| 05-13-2000 | TOTAL | 2.00 | 6.00 | 8.00 | 8.00 | 8.00 | 8.00 | 0.00 | 40.00 | 10 |
| 05-20-2000 | REG | 4.00 | 8.00 | 8.00 | 8.00 | 5.75 | 6.25 | 0.00 | 40.00 | |
| 05-20-2000 | TRAIN | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | |
| 05-20-2000 | OT | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | |
| 05-20-2000 | TOTAL | 4.00 | 8.00 | 8.00 | 8.00 | 5.75 | 6.25 | 0.00 | 40.00 | 10 |
| 05-27-2000 | REG | 8.00 | 8.00 | 8.00 | 6.25 | 8.00 | 1.75 | 0.00 | 40.00 | |
| 05-27-2000 | TRAIN | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | |
| 05-27-2000 | OT | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 9.50 | 7.00 | 16.50 | |
| 05-27-2000 | TOTAL | 8.00 | 8.00 | 8.00 | 6.25 | 8.00 | 11.25 | 7.00 | 56.50 | 10 |
| 06-03-2000 | REG | 8.00 | 0.00 | 8.00 | 8.00 | 0.00 | 8.00 | 8.00 | 40.00 | |
| 06-03-2000 | TRAIN | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | |
| 06-03-2000 | OT | 3.50 | 5.00 | 0.75 | 1.75 | 8.00 | 0.00 | 0.00 | 19.00 | |
| 06-03-2000 | TOTAL | 11.50 | 5.00 | 8.75 | 9.75 | 8.00 | 8.00 | 8.00 | 59.00 | 10 |
| 06-10-2000 | REG | 8.00 | 7.50 | 8.00 | 8.00 | 8.00 | 0.00 | 0.00 | 39.50 | |
| 06-10-2000 | TRAIN | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | |
| 06-10-2000 | OT | 3.25 | 0.00 | 8.00 | 0.00 | 8.00 | 0.00 | 0.00 | 19.25 | |
| 06-10-2000 | TOTAL | 11.25 | 7.50 | 16.00 | 8.00 | 16.00 | 0.00 | 0.00 | 58.75 | 10. |
| 06-17-2000 | REG | 8.00 | 8.00 | 8.00 | 8.00 | 8.00 | 0.00 | 0.00 | 40.00 | |
| 06-17-2000 | TRAIN | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | |
| 06-17-2000 | OT | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 8.00 | 0.00 | 8.00 | |
| 06-17-2000 | TOTAL | 8.00 | 8.00 | 8.00 | 8.00 | 8.00 | 8.00 | 0.00 | 48.00 | 10. |

SEE ATTAched Sheet

ROLLED-OVER OVERTIME HOURS:
"Rolled," "banked" or "carried over" hours refer to overtime hours that you worked in one week, but were not able to record on the day that you actually worked them, and, therefore, you recorded them on a later date. Some census employees were told to "roll" or "carry" over their overtime hours to later weeks in which they worked less than 40 hours and therefore were already partially paid for their overtime.

If you DID NOT roll over any overtime hours, leave this section blank.

If you "banked," "rolled" or "carried over" any of the overtime you have claimed above, in the spaces below, give your best estimate of the dates on which you actually worked those hours and also the dates on which you recorded those hours on your pay form.

Example: Assume you worked 50 hours in the first week of May. Because you were not permitted to record more than 40 hours in a week, you recorded only 40 for that week and then kept track of the 10 additional hours. Assume you worked only 20 hours in the second week of May. Instead of recording 20 hours for that week, you recorded 30 (the 20 actually worked that week, plus the 10 carried over from the first week). In that example, your answer to this Question would be: "Rolled 10 hours from the first week of May to the second week of May."

If you are not sure of exact dates, you may estimate. For example, "Rolled about 20 hours in May to June."

1a. Week/Date Overtime Worked: ________________

1b. Number of Overtime Hours Not Recorded: ________________

1c. Week/Date in which Overtime was recorded: ________________

---

2a. Week/Date Overtime Worked: ________________

2b. Number of Overtime Hours Not Recorded: ________________

2c. Week/Date in which Overtime was recorded: ________________

---

3a. Week/Date Overtime Worked: ________________

3b. Number of Overtime Hours Not Recorded: ________________

3c. Week/Date in which Overtime was recorded: ________________

---

(Continue on another sheet of paper as necessary.)

If any of the numbers you give for Overtime or Rolled-Over Hours are based on estimates, please write out below, to the best of your knowledge, which dates and numbers are estimates, and describe how you arrived at those estimates. Please use the back of the Payroll Summary for your description. If you need additional space, use a separate sheet of paper clearly labeled with your name and SSN at the top of each additional page.

Carol A. Siemons
417 Kingsbrook Dr.
McDonald, Pa 15057
Phone:
Home: 412-220-0374
Cell:609-602-8257
SS 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

Guessing at the amount of overtime is impossible. My crew leader, Leroy Adams lived in Fairfield Ca. at 52 Belaire Ct. The crew he was over was in Vacaville, Ca. He chose myself,and Col. Earl Heal to become the assistant crew-leaders. This was done for his convenience since he lived out of town, (Fairfield .Ca.) Half of the enumerators were split between Earl and Myself. It was my duty to have all of my enumerators drop off their completed work and log off in their books. I edited the work. I was in charge of perhaps 6-8 enumerators. I do not recall the exact amount of overtime, but it was substantial. They came to my home whenever they completed the work for that evening. I attended the meetings each day, besides going out to enumerate and each day, after the meetings, Mr. Adams would come to my home to spend more time doing the job he was supposed to be doing. I was doing double the workload. Not only doing my work , checking the enumertors work and then meeting with him also. There were weeks when we were told no OT allowed. The last 2 weeks we were told, just get the job done no matter what it takes. Mr. Tranquallino was the man over Leroy.

Carol Siemons

Carol Siemons ED 9357

# EXHIBIT J

Kiper, Shunell

# CLAIM FORM

OCT 2 6 2005
BY:

## IN THE UNITED STATES COURT OF FEDERAL CLAIMS
## WASHINGTON D.C.
**KENT CHRISTOFFERSON, et al., vs. THE UNITED STATES (No. 01-495C)**

Please print clearly in dark ink.

1. Shunell S. Kiper — Name (First, Middle, Last)
   [redacted]2011 — Social Security Number

2. 5745 S. Manhattan Pl. — Street Address — Apartment Number
   LA — City; Ca — State; 90062 — Zip Code

3. Do you wish to continue with your claim against the federal government for unpaid overtime?
   ✓ YES ___NO

   If "Yes," please complete this Claim Form and provide estimates of your overtime on the Payroll Summary. If "No," you do not need to complete the rest of this Claim Form. Please return this form and the Payroll Summary to our offices at the address provided. A "No" means you no longer wish to be a participant in this lawsuit.

4. ________ E-mail Address (if any)

5. 310)219 3955 — Work Phone Number; anytime — Best Times to Call

6. 323)293 8698 — Home Phone Number; anytime — Best Times to Call

7. 310)774 4930 — Cell Phone Number; anytime — Best Times to Call

8. Mom-(323)293 8698 — Phone Number of Relative or Other Contacts (Optional)

9. Please list any other names used while employed by the U.S. Census Bureau in the year 2000.
   n/a

10. While working for the Census Bureau in 2000, did you ever work more than 40 hours in a work week (Sunday through Saturday)? You should include as work time the time you spent traveling to and from your home, time spent on work-related activities at your home, and lunch or dinner breaks if you worked during those breaks.
✓ Yes ___ No

11. Review the Payroll Summary produced from the Census Bureau payroll records which show the days you worked and hours you submitted in 2000. What is your best estimate of which weeks you worked MORE THAN 40 hours (40+) per work week, and how many hours of overtime you worked each of those 40+ hour weeks?

There are spaces on the right hand side of the Payroll Summary where you should indicate how much overtime you believe you worked. Please include on the Payroll Summary overtime hours that you claim to have worked in the following decennial field positions only: Enumerator, Crew Leader Assistant, Crew Leader, Field Operations Supervisor Assistant, Field Operations Supervisor, and Special Places Operation Supervisor.

**Example:** Assume you worked 50 hours in the first week of May and 20 hours in the second week of May. Because you were not permitted to record more than 40 hours in a week, you only recorded 40 hours for the first week of May and did not submit any overtime worked. Therefore, you would indicate your estimate of overtime as follows:

| PAY PERIOD END DATE | TYPE | SUN | MON | TUE | WED | THU | FRI | SAT | TOTAL | ESTIMATE UNPAID OVERTIME* |
|---|---|---|---|---|---|---|---|---|---|---|
| 05-06-2000 | REG | 0.00 | 8.00 | 8.00 | 8.00 | 8.00 | 8.00 | 0.00 | 40.00 | |
| 05-06-2000 | TRAIN | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | |
| 05-06-2000 | OT | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | |
| 05-06-2000 | TOTAL | 0.00 | 8.00 | 8.00 | 8.00 | 8.00 | 8.00 | 0.00 | 40.00 | 10 HRS |
| 05-13-2000 | REG | 4.00 | 8.00 | 8.00 | 0.00 | 0.00 | 0.00 | 0.00 | 20.00 | |
| 05-13-2000 | TRAIN | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | |
| 05-13-2000 | OT | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | |
| 05-13-2000 | TOTAL | 4.00 | 8.00 | 8.00 | 0.00 | 0.00 | 0.00 | 0.00 | 20.00 | ________ |

12. If you "banked," "rolled," or "carried over" any overtime you worked, add those also to the Payroll Summary, in the space indicated. "Rolled-over," "banked" or "carried-over" hours refer to overtime hours you worked in one week, but were not able to record because doing so would exceed 40 hours in one week. Some census employees were told to "roll" or "carry" over their overtime hours to later weeks in which they worked less than 40 hours and therefore were already partially paid for their overtime. You may be entitled to some recovery even if you rolled over your overtime hours.

13. Are any of the numbers you wrote on the Payroll Summary based on an estimate?
___ Yes ✓ No ← yes, see phone log

14. If any of your numbers are based on estimates, please identify on the Payroll Summary, where indicated, which numbers are estimates and describe how you arrived at those estimates.

15. If you have any documents, which existed in 2000, that may tend to show that you worked the overtime claimed (e.g. datebooks, calendar entries), attach copies of the documents to this claim form. If you provide documents, send copies only. No originals should be provided as your documents will not be returned to you. *Note that documentary proof is not required to make a claim.*

16. Do you believe your supervisor knew or had reason to know that you worked overtime prior to your working the overtime?
V Yes ___ No

17. If you answered yes to Question 16, explain why you believe your supervisor knew or had reason to know that you worked overtime prior to your working the overtime. (Please refer to pages 2 and 3, **"What is Overtime?"** for examples of how your supervisor knew or should have known about your working overtime.)
Because I asked her if they was paying us O.T as she said nothing over 40 hrs wkly. an O.T is any ~~hrs~~ time you work 8hrs or more.

If you need additional space to respond to any of the above questions, use a separate sheet of paper. Clearly print your name and SSN at the top of each additional page, and indicate the question number.

Certification: I swear or affirm under penalty of perjury that the above statements are true to the best of my knowledge and belief.

Date: 10/20/06

Signature: Shunell Kiper

Print Name: Shunell Kiper

**You Must Complete, Sign and Return this Claim Form and the enclosed Payroll Summary by mail postmarked no later than SEPTEMBER 29, 2006.**

If you wish to confirm our receipt of this form, we strongly recommend that you send it via Registered Mail/Return Receipt requested. To obtain a Registered Mail/Return Receipt form, please visit your local post office or go to: www.usps.com.
**You must keep a copy of completed forms for your records.**

ID: 10333

Shunell Kiper
5745 S. Manhattan Place
Los Angeles, CA 90062-

SSN : [redacted]2011 **PAYROLL SUMMARY** **Page 1 of 3**

NAME : Kiper,Shunell

| CHANGEDATE | LOCAL CENSUS OFFICE NAME | POSITION |
|---|---|---|
| 04-24-2000 | Compton | Enumerator |

Hours Worked During 1/1/2000 - 11/30/2000

* Overtime can only be claimed if you worked more than 40 hours total during a work week (Sunday through Saturday). "Work time" includes travel time to and from your home, time you spent at home making work-related calls or on other work activities, and time you worked during a lunch or dinner break.

| PAY PERIOD END DATE | TYPE | SUN | MON | TUE | WED | THU | FRI | SAT | TOTAL | ESTIMATE OVERTIME WORKED* | per phone conversation |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 04-29-2000 | REG | 0.00 | 0.00 | 0.00 | 0.00 | 4.00 | 4.00 | 8.00 | 16.00 | | |
| 04-29-2000 | TRAIN | 0.00 | 8.00 | 8.00 | 7.00 | 0.00 | 0.00 | 0.00 | 23.00 | Ø | 1 reg |
| 04-29-2000 | OT | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | | 15 OT |
| 04-29-2000 | TOTAL | 0.00 | 8.00 | 8.00 | 7.00 | 4.00 | 4.00 | 8.00 | 39.00 | | |
| 05-06-2000 | REG | 0.00 | 8.00 | 7.50 | 8.00 | 4.00 | 4.00 | 6.00 | 37.50 | | 2.5 reg |
| 05-06-2000 | TRAIN | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | Ø 8k | 15 OT |
| 05-06-2000 | OT | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | | |
| 05-06-2000 | TOTAL | 0.00 | 8.00 | 7.50 | 8.00 | 4.00 | 4.00 | 6.00 | 37.50 | | |
| 05-13-2000 | REG | 0.00 | 8.00 | 6.00 | 8.00 | 5.00 | 5.00 | 8.00 | 40.00 | | |
| 05-13-2000 | TRAIN | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 8k 15 | 15 OT |
| 05-13-2000 | OT | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | | |
| 05-13-2000 | TOTAL | 0.00 | 8.00 | 6.00 | 8.00 | 5.00 | 5.00 | 8.00 | 40.00 | | |
| 05-20-2000 | REG | 0.00 | 4.00 | 8.00 | 8.00 | 3.00 | 8.00 | 8.00 | 39.00 | | 1 reg |
| 05-20-2000 | TRAIN | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 10 8k | 15 OT |
| 05-20-2000 | OT | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | | |
| 05-20-2000 | TOTAL | 0.00 | 4.00 | 8.00 | 8.00 | 3.00 | 8.00 | 8.00 | 39.00 | | |
| 05-27-2000 | REG | 0.00 | 6.00 | 3.50 | 8.00 | 4.00 | 8.00 | 8.00 | 37.50 | | 2.5 reg |
| 05-27-2000 | TRAIN | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 10 8k | 15 OT |
| 05-27-2000 | OT | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | | |
| 05-27-2000 | TOTAL | 0.00 | 6.00 | 3.50 | 8.00 | 4.00 | 8.00 | 8.00 | 37.50 | | |
| 06-03-2000 | REG | 3.00 | 4.00 | 7.50 | 8.00 | 8.00 | 5.00 | 4.50 | 40.00 | | |
| 06-03-2000 | TRAIN | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 15 | 15 OT |
| 06-03-2000 | OT | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | | |
| 06-03-2000 | TOTAL | 3.00 | 4.00 | 7.50 | 8.00 | 8.00 | 5.00 | 4.50 | 40.00 | | |
| 06-10-2000 | REG | 0.00 | 8.00 | 3.00 | 7.50 | 8.00 | 4.00 | 0.00 | 30.50 | | 9.5 reg |
| 06-10-2000 | TRAIN | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 10 8k | 15 OT |
| 06-10-2000 | OT | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | | |
| 06-10-2000 | TOTAL | 0.00 | 8.00 | 3.00 | 7.50 | 8.00 | 4.00 | 0.00 | 30.50 | | |
| 07-01-2000 | REG | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 8.00 | 8.00 | 16.00 | | |
| 07-01-2000 | TRAIN | 0.00 | 0.00 | 0.00 | 4.50 | 4.50 | 0.00 | 0.00 | 9.00 | 10 8k | 15 reg |
| 07-01-2000 | OT | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | | 15 OT |
| 07-01-2000 | TOTAL | 0.00 | 0.00 | 0.00 | 4.50 | 4.50 | 8.00 | 8.00 | 25.00 | | |

SSN : [redacted]2011 PAYROLL SUMMARY 

PAYROLL DATA

| PAY PERIOD END DATE | TYPE | SUN | MON | TUE | WED | THU | FRI | SAT | TOTAL | ESTIMATE OVERTIME WORKED* |
|---|---|---|---|---|---|---|---|---|---|---|
| 07-08-2000 | REG | 8.00 | 8.00 | 0.00 | 8.00 | 4.50 | 7.50 | 4.00 | 40.00 | 8k |
| 07-08-2000 | TRAIN | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | |
| 07-08-2000 | OT | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | |
| 07-08-2000 | TOTAL | 8.00 | 8.00 | 0.00 | 8.00 | 4.50 | 7.50 | 4.00 | 40.00 | 20-25 traveling |
| 07-15-2000 | REG | 4.00 | 6.00 | 8.00 | 4.00 | 0.00 | 0.00 | 0.00 | 22.00 | |
| 07-15-2000 | TRAIN | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | |
| 07-15-2000 | OT | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | |
| 07-15-2000 | TOTAL | 4.00 | 6.00 | 8.00 | 4.00 | 0.00 | 0.00 | 0.00 | 22.00 | 15 8k |

ROLLED-OVER OVERTIME HOURS:
"Rolled," "banked" or "carried over" hours refer to overtime hours that you worked in one week, but were not able to record on the day that you actually worked them, and, therefore, you recorded them on a later date. Some census employees were told to "roll" or "carry" over their overtime hours to later weeks in which they worked less than 40 hours and therefore were already partially paid for their overtime.

If you DID NOT roll over any overtime hours, leave this section blank.

If you "banked," "rolled" or "carried over" any of the overtime you have claimed above, in the spaces below, give your best estimate of the dates on which you actually worked those hours and also the dates on which you recorded those hours on your pay form.

Example: Assume you worked 50 hours in the first week of May. Because you were not permitted to record more than 40 hours in a week, you recorded only 40 for that week and then kept track of the 10 additional hours. Assume you worked only 20 hours in the second week of May. Instead of recording 20 hours for that week, you recorded 30 (the 20 actually worked that week, plus the 10 carried over from the first week). In that example, your answer to this Question would be: "Rolled 10 hours from the first week of May to the second week of May."

If you are not sure of exact dates, you may estimate. For example, "Rolled about 20 hours in May to June."

1a. Week/Date Overtime Worked: daily

1b. Number of Overtime Hours Not Recorded: none

1c. Week/Date in which Overtime was recorded: none

---

2a. Week/Date Overtime Worked: ____________

2b. Number of Overtime Hours Not Recorded: alot

2c. Week/Date in which Overtime was recorded: n/A

---

3a. Week/Date Overtime Worked: ____________

3b. Number of Overtime Hours Not Recorded: ____________

SSN : [redacted]2011 PAYROLL SUMMARY Page 3 of 3

3c. Week/Date in which Overtime was recorded: ____________________

------------------------------------------------------------------------

(Continue on another sheet of paper as necessary.)

If any of the numbers you give for Overtime or Rolled-Over Hours are based on estimates, please write out below, to the best of your knowledge, which dates and numbers are estimates, and describe how you arrived at those estimates. Please use the back of the Payroll Summary for your description. If you need additional space, use a separate sheet of paper clearly labeled with your name and SSN at the top of each additional page.

I'm not sure how the estimated these hours but I know that i was working my ass off 40hrs wkly no overtime time or mileage they say that people was taking advantage. Each day there was a morning meeting to give out assignments that was at least 45mins-1hr, there was a evening meeting eachday at 4:30 pm or 5:00 pm that was at least 2hrs, our team had only 2 supervisors to at least 10-15 people that they had to spend time with each individual to make sure work was complete an or if you had to get more infomation, plus when I went home i had to still make phone calls to see if some client where availiable for the next date an time an some said that i could come at that time because he or she would not be available on the next day so sometimes I would go but I could only record the hours that I've work'd, they didnt pay us per travel, I lived in Hawthorne at the time an towards the end when went to help out Gardena, LA, Compton with no mileage pay but they still said no OT.

McAfee, Doris

# CLAIM FORM

OCT 1 4 2006

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**
**WASHINGTON D.C.**
**KENT CHRISTOFFERSON, et al., vs. THE UNITED STATES (No. 01-495C)**

Please print clearly in dark ink.

1. Doris M. McAfee — Name (First, Middle, Last)
   [redacted]7123 — Social Security Number

2. 2060 Quail Ct. — Street Address; Apartment Number
   Yuba City — City; CA — State; 95993 — Zip Code

3. Do you wish to continue with your claim against the federal government for unpaid overtime?
   ✓ YES ___ NO

   If "Yes," please complete this Claim Form and provide estimates of your overtime on the Payroll Summary. If "No," you do not need to complete the rest of this Claim Form. Please return this form and the Payroll Summary to our offices at the address provided. A "No" means you no longer wish to be a participant in this lawsuit.

4. ______________________ E-mail Address (if any)

5. ______________________ Work Phone Number ______________________ Best Times to Call

6. 530-671-6555 — Home Phone Number; 6:00 – 8:30 pm — Best Times to Call

7. ______________________ Cell Phone Number ______________________ Best Times to Call

8. ______________________ Phone Number of Relative or Other Contacts (Optional)

9. Please list any other names used while employed by the U.S. Census Bureau in the year 2000.

   ______________________ ______________________



Q010523

10. While working for the Census Bureau in 2000, did you ever work more than 40 hours in a work week (Sunday through Saturday)? You should include as work time the time you spent traveling to and from your home, time spent on work-related activities at your home, and lunch or dinner breaks if you worked during those breaks.
___ Yes ___ No

11. Review the Payroll Summary produced from the Census Bureau payroll records which show the days you worked and hours you submitted in 2000. What is your best estimate of which weeks you worked MORE THAN 40 hours (40+) per work week, and how many hours of overtime you worked each of those 40+ hour weeks?

There are spaces on the right hand side of the Payroll Summary where you should indicate how much overtime you believe you worked. Please include on the Payroll Summary overtime hours that you claim to have worked in the following decennial field positions only: Enumerator, Crew Leader Assistant, Crew Leader, Field Operations Supervisor Assistant, Field Operations Supervisor, and Special Places Operation Supervisor.

**Example:** Assume you worked 50 hours in the first week of May and 20 hours in the second week of May. Because you were not permitted to record more than 40 hours in a week, you only recorded 40 hours for the first week of May and did not submit any overtime worked. Therefore, you would indicate your estimate of overtime as follows:

| PAY PERIOD END DATE | TYPE | PAYROLL DATA SUN | MON | TUE | WED | THU | FRI | SAT | TOTAL | ESTIMATE UNPAID OVERTIME* |
|---|---|---|---|---|---|---|---|---|---|---|
| 05-06-2000 | REG | 0.00 | 8.00 | 8.00 | 8.00 | 8.00 | 8.00 | 0.00 | 40.00 | |
| 05-06-2000 | TRAIN | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | |
| 05-06-2000 | OT | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | |
| 05-06-2000 | TOTAL | 0.00 | 8.00 | 8.00 | 8.00 | 8.00 | 8.00 | 0.00 | 40.00 | 10 HRS |
| 05-13-2000 | REG | 4.00 | 8.00 | 8.00 | 0.00 | 0.00 | 0.00 | 0.00 | 20.00 | |
| 05-13-2000 | TRAIN | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | |
| 05-13-2000 | OT | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | |
| 05-13-2000 | TOTAL | 4.00 | 8.00 | 8.00 | 0.00 | 0.00 | 0.00 | 0.00 | 20.00 | ________ |

12. If you "banked," "rolled," or "carried over" any overtime you worked, add those also to the Payroll Summary, in the space indicated. "Rolled-over," "banked" or "carried-over" hours refer to overtime hours you worked in one week, but were not able to record because doing so would exceed 40 hours in one week. Some census employees were told to "roll" or "carry" over their overtime hours to later weeks in which they worked less than 40 hours and therefore were already partially paid for their overtime. You may be entitled to some recovery even if you rolled over your overtime hours.

13. Are any of the numbers you wrote on the Payroll Summary based on an estimate?
✓ Yes ___ No

14. If any of your numbers are based on estimates, please identify on the Payroll Summary, where indicated, which numbers are estimates and describe how you arrived at those estimates.

15. If you have any documents, which existed in 2000, that may tend to show that you worked the overtime claimed (e.g. datebooks, calendar entries), attach copies of the documents to this claim form. If you provide documents, send copies only. No originals should be provided as your documents will not be returned to you. *Note that documentary proof is not required to make a claim.*

16. Do you believe your supervisor knew or had reason to know that you worked overtime prior to your working the overtime?
X Yes ___No per phone conf w/ molly D 11/9/06

17. If you answered yes to Question 16, explain why you believe your supervisor knew or had reason to know that you worked overtime prior to your working the overtime. (Please refer to pages 2 and 3, **"What is Overtime?"** for examples of how your supervisor knew or should have known about your working overtime.)

If you need additional space to respond to any of the above questions, use a separate sheet of paper. Clearly print your name and SSN at the top of each additional page, and indicate the question number.

Certification: I swear or affirm under penalty of perjury that the above statements are true to the best of my knowledge and belief.

Date: 10-13-06 Signature: Doris Mcafee
Print Name: Doris McAfee

**You Must Complete, Sign and Return this Claim Form and the enclosed Payroll Summary by mail postmarked no later than SEPTEMBER 29, 2006.**

If you wish to confirm our receipt of this form, we strongly recommend that you send it via Registered Mail/Return Receipt requested. To obtain a Registered Mail/Return Receipt form, please visit your local post office or go to: www.usps.com.
**You must keep a copy of completed forms for your records.**

ID: 4282

Doris M McAfee
2060 QUAIL CT
YUBA CITY, CA 95993-1177

SSN : [redacted]7123 **PAYROLL SUMMARY** 

NAME : McAfee,Doris M

| CHANGEDATE | LOCAL CENSUS OFFICE NAME | POSITION |
|---|---|---|
| 04-24-2000 | Davis | Enumerator |

Hours Worked During 1/1/2000 - 11/30/2000

* Overtime can only be claimed if you worked more than 40 hours total during a work week (Sunday through Saturday). "Work time" includes travel time to and from your home, time you spent at home making work-related calls or on other work activities, and time you worked during a lunch or dinner break.

| PAY PERIOD END DATE | TYPE | SUN | MON | TUE | WED | THU | FRI | SAT | TOTAL | ESTIMATE OVERTIME WORKED* |
|---|---|---|---|---|---|---|---|---|---|---|
| 04-29-2000 | REG | 0.00 | 0.00 | 0.00 | 4.00 | 8.00 | 8.00 | 0.00 | 20.00 | |
| 04-29-2000 | TRAIN | 0.00 | 8.00 | 8.00 | 4.00 | 0.00 | 0.00 | 0.00 | 20.00 | |
| 04-29-2000 | OT | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | |
| 04-29-2000 | TOTAL | 0.00 | 8.00 | 8.00 | 8.00 | 8.00 | 8.00 | 0.00 | 40.00 | |
| 05-06-2000 | REG | 0.00 | 8.00 | 8.00 | 8.00 | 8.00 | 8.00 | 0.00 | 40.00 | 14 miles |
| 05-06-2000 | TRAIN | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | |
| 05-06-2000 | OT | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | |
| 05-06-2000 | TOTAL | 0.00 | 8.00 | 8.00 | 8.00 | 8.00 | 8.00 | 0.00 | 40.00 | 8 hrs OT |
| 05-13-2000 | REG | 0.00 | 0.00 | 8.00 | 8.00 | 8.00 | 0.00 | 4.00 | 28.00 | 15 mi. |
| 05-13-2000 | TRAIN | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | |
| 05-13-2000 | OT | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | |
| 05-13-2000 | TOTAL | 0.00 | 0.00 | 8.00 | 8.00 | 8.00 | 0.00 | 4.00 | 28.00 | 6 hrs reg |
| 05-20-2000 | REG | 0.00 | 3.50 | 0.00 | 8.00 | 0.00 | 0.00 | 4.50 | 16.00 | |
| 05-20-2000 | TRAIN | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | |
| 05-20-2000 | OT | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | |
| 05-20-2000 | TOTAL | 0.00 | 3.50 | 0.00 | 8.00 | 0.00 | 0.00 | 4.50 | 16.00 | |
| 05-27-2000 | REG | 0.00 | 8.00 | 8.00 | 8.00 | 0.00 | 5.00 | 8.00 | 37.00 | 39 mi. |
| 05-27-2000 | TRAIN | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 1reg |
| 05-27-2000 | OT | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 2.00 | 2.00 | |
| 05-27-2000 | TOTAL | 0.00 | 8.00 | 8.00 | 8.00 | 0.00 | 5.00 | 10.00 | 39.00 | 7 1/2 hrs 6.5OT |
| 06-03-2000 | REG | 0.00 | 3.50 | 0.00 | 4.00 | 0.00 | 3.50 | 8.00 | 19.00 | |
| 06-03-2000 | TRAIN | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | |
| 06-03-2000 | OT | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 1.00 | 1.00 | |
| 06-03-2000 | TOTAL | 0.00 | 3.50 | 0.00 | 4.00 | 0.00 | 3.50 | 9.00 | 20.00 | 6 hrs reg |
| 06-10-2000 | REG | 8.00 | 8.00 | 3.00 | 7.00 | 8.00 | 6.00 | 0.00 | 40.00 | 25 miles |
| 06-10-2000 | TRAIN | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | |
| 06-10-2000 | OT | 1.00 | 3.00 | 0.00 | 0.00 | 0.50 | 4.00 | 8.00 | 16.50 | |
| 06-10-2000 | TOTAL | 9.00 | 11.00 | 3.00 | 7.00 | 8.50 | 10.00 | 8.00 | 56.50 | 8 hrs OT |
| 06-17-2000 | REG | 8.00 | 0.00 | 8.00 | 7.00 | 4.00 | 0.00 | 0.00 | 27.00 | |
| 06-17-2000 | TRAIN | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | |
| 06-17-2000 | OT | 2.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 2.00 | |
| 06-17-2000 | TOTAL | 10.00 | 0.00 | 8.00 | 7.00 | 4.00 | 0.00 | 0.00 | 29.00 | |

SSN : [redacted]7123

PAYROLL SUMMARY



PAYROLL DATA

| PAY PERIOD END DATE | TYPE | SUN | MON | TUE | WED | THU | FRI | SAT | TOTAL | ESTIMATE OVERTIME WORKED* |
|---|---|---|---|---|---|---|---|---|---|---|
| 07-15-2000 | REG | 0.00 | 0.00 | 4.00 | 6.50 | 0.00 | 8.00 | 8.00 | 26.50 | |
| 07-15-2000 | TRAIN | 0.00 | 0.00 | 4.00 | 0.00 | 0.00 | 0.00 | 0.00 | 4.00 | |
| 07-15-2000 | OT | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | |
| 07-15-2000 | TOTAL | 0.00 | 0.00 | 8.00 | 6.50 | 0.00 | 8.00 | 8.00 | 30.50 | |
| 07-22-2000 | REG | 0.00 | 8.00 | 8.00 | 8.00 | 8.00 | 4.00 | 0.00 | 36.00 | 12 mi. |
| 07-22-2000 | TRAIN | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | |
| 07-22-2000 | OT | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 4 reg |
| 07-22-2000 | TOTAL | 0.00 | 8.00 | 8.00 | 8.00 | 8.00 | 4.00 | 0.00 | 36.00 | 7 hrs 3 OT |
| 08-05-2000 | REG | 0.00 | 0.00 | 8.00 | 5.50 | 5.00 | 8.00 | 0.00 | 26.50 | 9 mi |
| 08-05-2000 | TRAIN | 0.00 | 8.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 8.00 | 5.5 reg |
| 08-05-2000 | OT | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | |
| 08-05-2000 | TOTAL | 0.00 | 8.00 | 8.00 | 5.50 | 5.00 | 8.00 | 0.00 | 34.50 | 8 1/2 hrs 3 OT |

ROLLED-OVER OVERTIME HOURS:
"Rolled," "banked" or "carried over" hours refer to overtime hours that you worked in one week, but were not able to record on the day that you actually worked them, and, therefore, you recorded them on a later date. Some census employees were told to "roll" or "carry" over their overtime hours to later weeks in which they worked less than 40 hours and therefore were already partially paid for their overtime.

If you DID NOT roll over any overtime hours, leave this section blank.

If you "banked," "rolled" or "carried over" any of the overtime you have claimed above, in the spaces below, give your best estimate of the dates on which you actually worked those hours and also the dates on which you recorded those hours on your pay form.

Example: Assume you worked 50 hours in the first week of May. Because you were not permitted to record more than 40 hours in a week, you recorded only 40 for that week and then kept track of the 10 additional hours. Assume you worked only 20 hours in the second week of May. Instead of recording 20 hours for that week, you recorded 30 (the 20 actually worked that week, plus the 10 carried over from the first week). In that example, your answer to this Question would be: "Rolled 10 hours from the first week of May to the second week of May."

If you are not sure of exact dates, you may estimate. For example, "Rolled about 20 hours in May to June."

1a. Week/Date Overtime Worked: ________________

1b. Number of Overtime Hours Not Recorded: ________________

1c. Week/Date in which Overtime was recorded: ________________

---

2a. Week/Date Overtime Worked: ________________

2b. Number of Overtime Hours Not Recorded: ________________

2c. Week/Date in which Overtime was recorded: ________________

---

3a. Week/Date Overtime Worked: ____________________

3b. Number of Overtime Hours Not Recorded: ____________________

3c. Week/Date in which Overtime was recorded: ____________________

---

(Continue on another sheet of paper as necessary.)

If any of the numbers you give for Overtime or Rolled-Over Hours are based on estimates, please write out below, to the best of your knowledge, which dates and numbers are estimates, and describe how you arrived at those estimates. Please use the back of the Payroll Summary for your description. If you need additional space, use a separate sheet of paper clearly labeled with your name and SSN at the top of each additional page.

Maxwell, Robert

AUG 1 7 2006

# CLAIM FORM

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**
**WASHINGTON D.C.**
**KENT CHRISTOFFERSON, et al., vs. THE UNITED STATES (No. 01-495C)**

Please print clearly in dark ink.

1. ROBERT W. MAXWELL — Name (First, Middle, Last)
   [redacted]-7365 — Social Security Number

2. 118 BRISTLECONE PINES RD — Street Address — Apartment Number

   SEDONA — City; AZ — State; 86336 — Zip Code

3. Do you wish to continue with your claim against the federal government for unpaid overtime?
   X YES ___NO

   If "Yes," please complete this Claim Form and provide estimates of your overtime on the Payroll Summary. If "No," you do not need to complete the rest of this Claim Form. Please return this form and the Payroll Summary to our offices at the address provided. A "No" means you no longer wish to be a participant in this lawsuit.

4. bmayasi@msn.com — E-mail Address (if any)

5. 928-301-2564 — Work Phone Number; 9-6 — Best Times to Call

6. ~~928-2882~~-928-282-7118 — Home Phone Number; After 6:00 pm — Best Times to Call

7. ______ Cell Phone Number; ______ Best Times to Call

8. ______ Phone Number of Relative or Other Contacts (Optional)

9. Please list any other names used while employed by the U.S. Census Bureau in the year 2000.

   ______ ______



Q010508

10. While working for the Census Bureau in 2000, did you ever work more than 40 hours in a work week (Sunday through Saturday)? You should include as work time the time you spent traveling to and from your home, time spent on work-related activities at your home, and lunch or dinner breaks if you worked during those breaks.
X Yes ___ No

11. Review the Payroll Summary produced from the Census Bureau payroll records which show the days you worked and hours you submitted in 2000. What is your best estimate of which weeks you worked MORE THAN 40 hours (40+) per work week, and how many hours of overtime you worked each of those 40+ hour weeks?

There are spaces on the right hand side of the Payroll Summary where you should indicate how much overtime you believe you worked. Please include on the Payroll Summary overtime hours that you claim to have worked in the following decennial field positions only: Enumerator, Crew Leader Assistant, Crew Leader, Field Operations Supervisor Assistant, Field Operations Supervisor, and Special Places Operation Supervisor.

**Example:** Assume you worked 50 hours in the first week of May and 20 hours in the second week of May. Because you were not permitted to record more than 40 hours in a week, you only recorded 40 hours for the first week of May and did not submit any overtime worked. Therefore, you would indicate your estimate of overtime as follows:

| PAY PERIOD END DATE | TYPE | PAYROLL DATA SUN | MON | TUE | WED | THU | FRI | SAT | TOTAL | ESTIMATE UNPAID OVERTIME* |
|---|---|---|---|---|---|---|---|---|---|---|
| 05-06-2000 | REG | 0.00 | 8.00 | 8.00 | 8.00 | 8.00 | 8.00 | 0.00 | 40.00 | |
| 05-06-2000 | TRAIN | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | |
| 05-06-2000 | OT | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | |
| 05-06-2000 | TOTAL | 0.00 | 8.00 | 8.00 | 8.00 | 8.00 | 8.00 | 0.00 | 40.00 | 10 HRS |
| 05-13-2000 | REG | 4.00 | 8.00 | 8.00 | 0.00 | 0.00 | 0.00 | 0.00 | 20.00 | |
| 05-13-2000 | TRAIN | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | |
| 05-13-2000 | OT | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | |
| 05-13-2000 | TOTAL | 4.00 | 8.00 | 8.00 | 0.00 | 0.00 | 0.00 | 0.00 | 20.00 | ______ |

12. If you "banked," "rolled," or "carried over" any overtime you worked, add those also to the Payroll Summary, in the space indicated. "Rolled-over," "banked" or "carried-over" hours refer to overtime hours you worked in one week, but were not able to record because doing so would exceed 40 hours in one week. Some census employees were told to "roll" or "carry" over their overtime hours to later weeks in which they worked less than 40 hours and therefore were already partially paid for their overtime. You may be entitled to some recovery even if you rolled over your overtime hours.

13. Are any of the numbers you wrote on the Payroll Summary based on an estimate?
___ Yes X No see phone log

14. If any of your numbers are based on estimates, please identify on the Payroll Summary, where indicated, which numbers are estimates and describe how you arrived at those estimates.

15. If you have any documents, which existed in 2000, that may tend to show that you worked the overtime claimed (e.g. datebooks, calendar entries), attach copies of the documents to this claim form. If you provide documents, send copies only. No originals should be provided as your documents will not be returned to you. *Note that documentary proof is not required to make a claim.*

16. Do you believe your supervisor knew or had reason to know that you worked overtime prior to your working the overtime?
X Yes ___ No

17. If you answered yes to Question 16, explain why you believe your supervisor knew or had reason to know that you worked overtime prior to your working the overtime. (Please refer to pages 2 and 3, **"What is Overtime?"** for examples of how your supervisor knew or should have known about your working overtime.)
We were told NOT to record hours over 40 in a week. They were recorded in following week

If you need additional space to respond to any of the above questions, use a separate sheet of paper. Clearly print your name and SSN at the top of each additional page, and indicate the question number.

Certification: I swear or affirm under penalty of perjury that the above statements are true to the best of my knowledge and belief.

Date: 8/11/06

Signature: Robert W. Maxwell

Print Name: ROBERT W. MAXWELL

**You Must Complete, Sign and Return this Claim Form and the enclosed Payroll Summary by mail postmarked no later than SEPTEMBER 29, 2006.**

If you wish to confirm our receipt of this form, we strongly recommend that you send it via Registered Mail/Return Receipt requested. To obtain a Registered Mail/Return Receipt form, please visit your local post office or go to: www.usps.com.
**You must keep a copy of completed forms for your records.**

ID: 4246

Robert W Maxwell
118 BRISTLECONE PINES RD
SEDONA, AZ 86336-4927

SSN : [redacted]7365 **PAYROLL SUMMARY** 

NAME : Maxwell,Robert W

| CHANGEDATE | LOCAL CENSUS OFFICE NAME | POSITION |
|---|---|---|
| 04-24-2000 | Flagstaff | Enumerator |

Hours Worked During 1/1/2000 - 11/30/2000

* Overtime can only be claimed if you worked more than 40 hours total during a work week (Sunday through Saturday). "Work time" includes travel time to and from your home, time you spent at home making work-related calls or on other work activities, and time you worked during a lunch or dinner break.

| PAY PERIOD END DATE | TYPE | PAYROLL DATA SUN | MON | TUE | WED | THU | FRI | SAT | TOTAL | ESTIMATE OVERTIME WORKED* |
|---|---|---|---|---|---|---|---|---|---|---|
| 04-29-2000 | REG | 0.00 | 0.00 | 0.00 | 0.00 | 8.00 | 4.50 | 3.50 | 16.00 | |
| 04-29-2000 | TRAIN | 0.00 | 8.00 | 8.00 | 8.00 | 0.00 | 0.00 | 0.00 | 24.00 | |
| 04-29-2000 | OT | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | rolled to 5/6 |
| 04-29-2000 | TOTAL | 0.00 | 8.00 | 8.00 | 8.00 | 8.00 | 4.50 | 3.50 | 40.00 | 9 |
| 05-06-2000 | REG | 0.00 | 4.50 | 5.50 | 4.50 | 5.50 | 3.00 | 6.00 | 29.00 | |
| 05-06-2000 | TRAIN | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | |
| 05-06-2000 | OT | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 9 ROlls from 4/29 |
| 05-06-2000 | TOTAL | 0.00 | 4.50 | 5.50 | 4.50 | 5.50 | 3.00 | 6.00 | 29.00 | |
| 05-13-2000 | REG | 0.00 | 0.00 | 0.00 | 4.50 | 4.50 | 3.00 | 6.50 | 18.50 | |
| 05-13-2000 | TRAIN | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | |
| 05-13-2000 | OT | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | |
| 05-13-2000 | TOTAL | 0.00 | 0.00 | 0.00 | 4.50 | 4.50 | 3.00 | 6.50 | 18.50 | |
| 05-20-2000 | REG | 2.50 | 2.00 | 6.00 | 5.00 | 6.50 | 7.00 | 7.50 | 36.50 | |
| 05-20-2000 | TRAIN | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | |
| 05-20-2000 | OT | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | |
| 05-20-2000 | TOTAL | 2.50 | 2.00 | 6.00 | 5.00 | 6.50 | 7.00 | 7.50 | 36.50 | |
| 05-27-2000 | REG | 5.00 | 2.50 | 5.00 | 7.50 | 8.00 | 0.00 | 0.00 | 28.00 | |
| 05-27-2000 | TRAIN | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | |
| 05-27-2000 | OT | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | |
| 05-27-2000 | TOTAL | 5.00 | 2.50 | 5.00 | 7.50 | 8.00 | 0.00 | 0.00 | 28.00 | |
| 06-03-2000 | REG | 0.00 | 4.50 | 4.00 | 1.00 | 0.00 | 0.00 | 0.00 | 9.50 | |
| 06-03-2000 | TRAIN | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | |
| 06-03-2000 | OT | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | |
| 06-03-2000 | TOTAL | 0.00 | 4.50 | 4.00 | 1.00 | 0.00 | 0.00 | 0.00 | 9.50 | |

ROLLED-OVER OVERTIME HOURS:
"Rolled," "banked" or "carried over" hours refer to overtime hours that you worked in one week, but were not able to record on the day that you actually worked them, and, therefore, you recorded them on a later date. Some census employees were told to "roll" or "carry" over their overtime hours to later weeks in which they worked less than 40 hours and therefore were already partially paid for their overtime.

If you DID NOT roll over any overtime hours, leave this section blank.

If you "banked," "rolled" or "carried over" any of the overtime you have claimed above, in the spaces below, give your best estimate of the dates on which you actually worked those hours and also the dates on which you recorded those hours on your pay form.

Example: Assume you worked 50 hours in the first week of May. Because you were not permitted to record more than 40 hours in a week, you recorded only 40 for that week and then kept track of the 10 additional hours. Assume you worked only 20 hours in the second week of May. Instead of recording 20 hours for that week, you recorded 30 (the 20 actually worked that week, plus the 10 carried over from the first week). In that example, your answer to this Question would be: "Rolled 10 hours from the first week of May to the second week of May."

If you are not sure of exact dates, you may estimate. For example, "Rolled about 20 hours in May to June."

1a. Week/Date Overtime Worked: 4/29/2000

1b. Number of Overtime Hours Not Recorded: 9

1c. Week/Date in which Overtime was recorded: 5/06/2000

---

2a. Week/Date Overtime Worked: ______________

2b. Number of Overtime Hours Not Recorded: ______________

2c. Week/Date in which Overtime was recorded: ______________

---

3a. Week/Date Overtime Worked: ______________

3b. Number of Overtime Hours Not Recorded: ______________

3c. Week/Date in which Overtime was recorded: ______________

---

(Continue on another sheet of paper as necessary.)

If any of the numbers you give for Overtime or Rolled-Over Hours are based on estimates, please write out below, to the best of your knowledge, which dates and numbers are estimates, and describe how you arrived at those estimates. Please use the back of the Payroll Summary for your description. If you need additional space, use a separate sheet of paper clearly labeled with your name and SSN at the top of each additional page.

/ Graham, Steven

# CLAIM FORM

AUG 2 8 2006

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**
**WASHINGTON D.C.**
**KENT CHRISTOFFERSON, et al., vs. THE UNITED STATES (No. 01-495C)**

Please print clearly in dark ink.

1. steven l.graham
Name (First, Middle, Last)
[redacted]-3753
Social Security Number

2. 1080 SO.LUCERNE BLVD
Street Address
Apartment Number

LOS ANGELES
City
CALIF.
State
90019-6808
Zip Code

3. Do you wish to continue with your claim against the federal government for unpaid overtime? X YES ___NO

If "Yes," please complete this Claim Form and provide estimates of your overtime on the Payroll Summary. If "No," you do not need to complete the rest of this Claim Form. Please return this form and the Payroll Summary to our offices at the address provided. A "No" means you no longer wish to be a participant in this lawsuit.

4. none
E-mail Address (if any)

5. (323)936-0063
Work Phone Number
FIVE P.M.
Best Times to Call

6. SAME
Home Phone Number
FIVE P.M.
Best Times to Call

7. NONE
Cell Phone Number
Best Times to Call

8. ______
Phone Number of Relative or Other Contacts (Optional)

9. Please list any other names used while employed by the U.S. Census Bureau in the year 2000.

NONE



Q006415

10. While working for the Census Bureau in 2000, did you ever work more than 40 hours in a work week (Sunday through Saturday)? You should include as work time the time you spent traveling to and from your home, time spent on work-related activities at your home, and lunch or dinner breaks if you worked during those breaks.
___ Yes ___ No

11. Review the Payroll Summary produced from the Census Bureau payroll records which show the days you worked and hours you submitted in 2000. What is your best estimate of which weeks you worked MORE THAN 40 hours (40+) per work week, and how many hours of overtime you worked each of those 40+ hour weeks?

There are spaces on the right hand side of the Payroll Summary where you should indicate how much overtime you believe you worked. Please include on the Payroll Summary overtime hours that you claim to have worked in the following decennial field positions only: Enumerator, Crew Leader Assistant, Crew Leader, Field Operations Supervisor Assistant, Field Operations Supervisor, and Special Places Operation Supervisor.

**Example:** Assume you worked 50 hours in the first week of May and 20 hours in the second week of May. Because you were not permitted to record more than 40 hours in a week, you only recorded 40 hours for the first week of May and did not submit any overtime worked. Therefore, you would indicate your estimate of overtime as follows:

| PAY PERIOD END DATE | TYPE | PAYROLL DATA SUN | MON | TUE | WED | THU | FRI | SAT | TOTAL | ESTIMATE UNPAID OVERTIME* |
|---|---|---|---|---|---|---|---|---|---|---|
| 05-06-2000 | REG | 0.00 | 8.00 | 8.00 | 8.00 | 8.00 | 8.00 | 0.00 | 40.00 | |
| 05-06-2000 | TRAIN | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | |
| 05-06-2000 | OT | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | |
| 05-06-2000 | TOTAL | 0.00 | 8.00 | 8.00 | 8.00 | 8.00 | 8.00 | 0.00 | 40.00 | 10 HRS |
| 05-13-2000 | REG | 4.00 | 8.00 | 8.00 | 0.00 | 0.00 | 0.00 | 0.00 | 20.00 | |
| 05-13-2000 | TRAIN | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | |
| 05-13-2000 | OT | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | |
| 05-13-2000 | TOTAL | 4.00 | 8.00 | 8.00 | 0.00 | 0.00 | 0.00 | 0.00 | 20.00 | ______ |

12. If you "banked," "rolled," or "carried over" any overtime you worked, add those also to the Payroll Summary, in the space indicated. "Rolled-over," "banked" or "carried-over" hours refer to overtime hours you worked in one week, but were not able to record because doing so would exceed 40 hours in one week. Some census employees were told to "roll" or "carry" over their overtime hours to later weeks in which they worked less than 40 hours and therefore were already partially paid for their overtime. You may be entitled to some recovery even if you rolled over your overtime hours.

13. Are any of the numbers you wrote on the Payroll Summary based on an estimate?
___ Yes _X_ No



Q006416

14. If any of your numbers are based on estimates, please identify on the Payroll Summary, where indicated, which numbers are estimates and describe how you arrived at those estimates.

15. If you have any documents, which existed in 2000, that may tend to show that you worked the overtime claimed (e.g. datebooks, calendar entries), attach copies of the documents to this claim form. If you provide documents, send copies only. No originals should be provided as your documents will not be returned to you. *Note that documentary proof is not required to make a claim.*

16. Do you believe your supervisor knew or had reason to know that you worked overtime prior to your working the overtime?
X Yes ___ No

17. If you answered yes to Question 16, explain why you believe your supervisor knew or had reason to know that you worked overtime prior to your working the overtime. (Please refer to pages 2 and 3, **"What is Overtime?"** for examples of how your supervisor knew or should have known about your working overtime.)

If you need additional space to respond to any of the above questions, use a separate sheet of paper. Clearly print your name and SSN at the top of each additional page, and indicate the question number.

Certification: I swear or affirm under penalty of perjury that the above statements are true to the best of my knowledge and belief.

Date: AUGUST 20,2006 Signature: Steven L Graham

Print Name: STEVEN L.GRAHAM

**You Must Complete, Sign and Return this Claim Form and the enclosed Payroll Summary by mail postmarked no later than SEPTEMBER 29, 2006.**

If you wish to confirm our receipt of this form, we strongly recommend that you send it via Registered Mail/Return Receipt requested. To obtain a Registered Mail/Return Receipt form, please visit your local post office or go to: www.usps.com.
**You must keep a copy of completed forms for your records.**

ID: 2541

Steven Graham
1080 S LUCERNE BLVD
LOS ANGELES, CA 90019-6808

filled out by mags aleks
based on phone conversation
on 9.20.06

SSN : [redacted]3753 PAYROLL SUMMARY 

NAME : Graham, Steven

| CHANGEDATE | LOCAL CENSUS OFFICE NAME | POSITION |
|---|---|---|
| 02-14-2000 | Culver City East Local Ce | Enumerator |

Hours Worked During 1/1/2000 - 11/30/2000

* Overtime can only be claimed if you worked more than 40 hours total during a work week (Sunday through Saturday). "Work time" includes travel time to and from your home, time you spent at home making work-related calls or on other work activities, and time you worked during a lunch or dinner break.

| PAY PERIOD END DATE | TYPE | SUN | MON | TUE | WED | THU | FRI | SAT | TOTAL | ESTIMATE OVERTIME WORKED* |
|---|---|---|---|---|---|---|---|---|---|---|
| | | PAYROLL DATA | | | | | | | | |
| 02-19-2000 | REG | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | |
| 02-19-2000 | TRAIN | 0.00 | 8.00 | 8.00 | 8.00 | 0.00 | 0.00 | 0.00 | 24.00 | |
| 02-19-2000 | OT | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | |
| 02-19-2000 | TOTAL | 0.00 | 8.00 | 8.00 | 8.00 | 0.00 | 0.00 | 0.00 | 24.00 | |
| 02-26-2000 | REG | 0.00 | 0.00 | 8.00 | 8.00 | 8.00 | 8.00 | 8.00 | 40.00 | |
| 02-26-2000 | TRAIN | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | |
| 02-26-2000 | OT | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | |
| 02-26-2000 | TOTAL | 0.00 | 0.00 | 8.00 | 8.00 | 8.00 | 8.00 | 8.00 | 40.00 | 8 |
| 03-04-2000 | REG | 8.00 | 8.00 | 8.00 | 8.00 | 4.00 | 4.00 | 0.00 | 40.00 | |
| 03-04-2000 | TRAIN | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | |
| 03-04-2000 | OT | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | |
| 03-04-2000 | TOTAL | 8.00 | 8.00 | 8.00 | 8.00 | 4.00 | 4.00 | 0.00 | 40.00 | 8 |
| 03-11-2000 | REG | 8.00 | 8.00 | 8.00 | 8.00 | 0.00 | 0.00 | 8.00 | 40.00 | |
| 03-11-2000 | TRAIN | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | |
| 03-11-2000 | OT | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | |
| 03-11-2000 | TOTAL | 8.00 | 8.00 | 8.00 | 8.00 | 0.00 | 0.00 | 8.00 | 40.00 | 8 |
| 03-25-2000 | REG | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 4.00 | 4.00 | |
| 03-25-2000 | TRAIN | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | |
| 03-25-2000 | OT | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | |
| 03-25-2000 | TOTAL | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 4.00 | 4.00 | |

ROLLED-OVER OVERTIME HOURS:

"Rolled," "banked" or "carried over" hours refer to overtime hours that you worked in one week, but were not able to record on the day that you actually worked them, and, therefore, you recorded them on a later date. Some census employees were told to "roll" or "carry" over their overtime hours to later weeks in which they worked less than 40 hours and therefore were already partially paid for their overtime.

If you DID NOT roll over any overtime hours, leave this section blank.

If you "banked," "rolled" or "carried over" any of the overtime you have claimed above, in the spaces below, give your best estimate of the dates on which you actually worked those hours and also the dates on which you recorded those hours on your pay form.

Example: Assume you worked 50 hours in the first week of May. Because you were not permitted to record more than 40 hours in a week, you recorded only 40 for that week and then kept track of the 10 additional hours. Assume you worked only 20 hours in the second week of May. Instead of recording 20 hours for that week, you recorded 30 (the 20 actually worked that week, plus the 10 carried over from the first week). In that example, your answer to this Question would be: "Rolled 10 hours from the first week of May to the second week of May."

If you are not sure of exact dates, you may estimate. For example, "Rolled about 20 hours in May to June."

1a. Week/Date Overtime Worked: ________________

1b. Number of Overtime Hours Not Recorded: ________________

1c. Week/Date in which Overtime was recorded: ________________

---

2a. Week/Date Overtime Worked: ________________

2b. Number of Overtime Hours Not Recorded: ________________

2c. Week/Date in which Overtime was recorded: ________________

---

3a. Week/Date Overtime Worked: ________________

3b. Number of Overtime Hours Not Recorded: ________________

3c. Week/Date in which Overtime was recorded: ________________

---

(Continue on another sheet of paper as necessary.)

If any of the numbers you give for Overtime or Rolled-Over Hours are based on estimates, please write out below, to the best of your knowledge, which dates and numbers are estimates, and describe how you arrived at those estimates. Please use the back of the Payroll Summary for your description. If you need additional space, use a separate sheet of paper clearly labeled with your name and SSN at the top of each additional page.