No. 01-495C
(Judge Bruggink)

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

KENT CHRISTOFFERSON, et al.,

Plaintiffs,

v.

THE UNITED STATES,

Defendant.

DEFENDANT'S RESPONSE TO PLAINTIFFS' BRIEF PURSUANT TO COURT'S JULY 1, 2008 ORDER AND EXHIBITS

GREGORY G. KATSAS
Assistant Attorney General

JEANNE E. DAVIDSON
Director

STEVEN J. GILLINGHAM
Assistant Director
Commercial Litigation Branch
Civil Division
Department of Justice
1100 L Street, N.W.
Attn: Classification Unit, 8th Floor
Washington, D.C. 20530

Attorneys for Defendant

OF COUNSEL:

RAYNA ELLER
Office of the General Counsel
Bureau of the Census
Suitland, MD 20746-24

July 24, 2008

# TABLE OF CONTENTS

**PAGE(S)**

DEFENDANT'S RESPONSE TO PLAINTIFFS' BRIEF PURSUANT TO COURT'S JULY 1, 2008 ORDER . . . . . 1

I. Plaintiffs' Focus Upon The Assistance Of Counsel And Associated Privileges Is Irrelevant Because They Have Had The Assistance Of Counsel And The Court Already Has Ruled That The Notes At Are Not Privileged . . . . . 1

A. Attorney-Client Privilege . . . . . 2

B. Work-Product Privilege . . . . . 4

II. The Right To Amend Is Not At Issue. Either Plaintiffs Certified Their Responses Timely Or They Did Not. At Issue Is The Content Of Their Alleged Amendments . . . . . 6

## INDEX TO THE EXHIBITS

Communication between Plaintiff's Attorney and Defendant's Attorney, dated March 24, 2008 . . . . . Exhibit A

Sharon West Claim Form . . . . . Exhibit B

Toni-Ann Jewell Claim Form . . . . . Exhibit C

Laura Mae Workman Claim Form . . . . . Exhibit D

Field Nonsupervisory Census Employee Handbook . . . . . Exhibit E

Field Supervisory Census Employee Handbook . . . . . Exhibit F

Carol Siemons Statement Regarding Overtime Worked . . . . . Exhibit G

## TABLE OF AUTHORITIES

**CASES** **PAGE(S)**

Barton v. U.S. District Court for Central Dist. Of Cal.,
410 F.3d 1004 (9th Cir. 2005) . . . . . . . . . . 2

Bittaker v. Woodford,
331 F.3d 715 (9th Cir. 2003) . . . . . . . . . . 6

Christofferson v. United States,
No. 01-495C (Fed. Cl. July 6, 2007) . . . . . . . . . . passim

Christofferson v. United States,
No. 01-495C (Fed. Cl. July 6, 2007) . . . . . . . . . . 10

EEOC v. Int'l Profit Assocs., Inc.,
206 F.R.D. 215 (N.D. Ill. 2002) . . . . . . . . . . 2

Upjohn Company v. United States,
449 U.S. 383 (1981) . . . . . . . . . . 2

**STATUTES and RULES**

29 U.S.C. § 207 (a)(1) . . . . . . . . . . 7

RCFC 15 . . . . . . . . . . 9

RCFC 26 . . . . . . . . . . 3, 9, 10

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| KENT CHRISTOFFERSON, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 01-495C |
| | ) | (Senior Judge Bruggink) |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

DEFENDANT'S RESPONSE TO PLAINTIFFS'
BRIEF PURSUANT TO COURT'S JULY 1, 2008 ORDER

Defendant, the United States, respectfully submits this reply to plaintiffs' brief opposing our motion to compel notes of plaintiffs' responses to the claim questionnaire ("Questionnaire"). The Questionnaire was established by the parties' Court-approved Memorandum of Understanding ("MOU"). The flaw in plaintiffs' argument is its failure to acknowledge the Court's previous resolution of plaintiffs' privilege claims, the inadequacy of plaintiffs' attorney-created "database" as a substitute for compliance with the MOU, and plaintiffs' inapt analogy of the Questionnaire to an interrogatory. In the end, plaintiffs' position does nothing but tear down the painstakingly-crafted dispute resolution procedure that has guided this case successfully for two years.

I. Plaintiffs' Focus Upon The Assistance Of Counsel And Associated Privileges Is Irrelevant Because They Have Had The Assistance Of Counsel And The Court Already Has Ruled That The Notes At Are Not Privileged

Plaintiffs' brief demonstrates either their misunderstanding or refusal to acknowledge this Court's October 25, 2007 decision. There, the Court held that the answers to the Questionnaire were not privileged, noting that its purpose was not to facilitate plaintiffs' internal investigation and legal positioning, but to identify *to the Government* the factual underpinning and amount

claimed by each plaintiffs. Christofferson v. U.S., No. 01-495, slip op. at 11.[1]

A. Attorney-Client Privilege

In rejecting plaintiffs' last claim of attorney-client privilege, the Court explained that in order to qualify for the privilege, a plaintiff must have sought legal advice by "including communications *outside of the questions posed in the Questionnaire* . . . ." Id. n. 4 (emphasis added). The Court found that completing a Questionnaire response did not amount to a request for legal advice. Id. at 9. Emphasizing that the Questionnaire was designed jointly, the Court rejected the very argument plaintiffs make here, that cases such as Upjohn Company v. United States, 449 U.S. 383 (1981), Barton v. U.S. District Court for Central Dist. of Cal., 410 F.3d 1004 (9th Cir. 2005), and EEOC v. Int'l Profit Assocs., Inc., 206 F.R.D. 215 (N.D. Ill. 2002), require the protection of the notes. Christofferson, slip op. at 8-11. In doing so, the Court distinguished the questionnaires in those cases, which were developed by the parties' attorneys to investigate the cases and provide legal advice, from the Questionnaire here, which was jointly developed, induced no expectation of confidentiality, and was intended to elicit responses for *the Government's* analysis. Id.

Other than arguing the general sanctity of the privilege and asserting that the notes at issue were created in the course of conversations between plaintiffs and attorneys, plaintiffs offer no new argument concerning the notes we seek, other than to assert that, generally, the attorney notes are in the form of a chart and include "legal analysis and advice . . . and impressions and

[1] Plaintiffs' argument that "liability is still hotly contested" (Pl. Br. 5) and that, therefore, the notes are privileged misses this point and is self-defeating. The point of the Questionnaire, which addresses liability and quantum, is to achieve a settlement. Without complete responses, settlement cannot be achieved.

legal strategy for the future." Pl. Br. 6. Plaintiffs also assert that "sometimes a client would impart information that was not relevant to this litigation, but would disclose it to counsel seeking their advice and opinion." Id.

However, we do not seek information about a plaintiff's legal problems "not relevant to this litigation" or their attorneys' legal advice.[2] But, the fact that attorneys or clerks might have memorialized a plaintiff's response *to the questionnaire* makes no difference, if in fact, plaintiffs intended to communicate their sworn responses in that manner.[3] At best, those notes represent the attorneys' work as scriveners – not attorneys. The fact that they might have provided legal advice before plaintiffs arrived at their answers is of no moment. And, to the extent that the attorneys' or clerks' note-taking practices mingled evidence of any such advice with a plaintiffs' Questionnaire responses is a difficulty of plaintiffs' own making – a difficulty to be addressed, if at all, by a proper redaction and privilege log concerning the alleged advice or request for advice, not a withholding of the Questionnaire response.[4]

---

[2] For the same reasons, plaintiffs' reliance upon the Court's distinction between "'counsel's notes from conversations with clients'" and "'answers to a jointly drafted questionnaire,'" (Pl. Br. 11 (quoting Christofferson at slip op. at 10)) is misplaced. We do not seek notes of unrelated conversations, we seek the notes of the responses themselves – or to strike any response written by an attorney on the questionnaire response form.

[3] If they did not, the attorney's notes are irrelevant and should not be considered.

[4] As we have previously explained, we requested such a proper log and received only a list of 4,000 names and a letter asserting that plaintiffs' attorneys spoke with them some time between August and February 2007. Def. Ex. 14. The list did not specify the dates of individual conversations, the individual participants, the subject matter or any details that would allow us or the Court to determine whether any privilege was applicable in any particular case. Id. We brought this to Plaintiffs' attention in a letter dated March 23, 2008. Def. Ex. A (attached to this brief). Having failed to provide a proper privilege log pursuant to RCFC 26(b)(5)(A), plaintiffs' reliance upon its broad assertion of privilege, untestable even by the Court, fails.

In any event, claims that attorneys and "Law Grads" were involved in refining responses to the Questionnaire and that "sometimes" a client might disclose something irrelevant cannot possibly support the blanket denial of the *relevant* notes we seek – notes made relevant by the attorneys themselves having referred to the disclosures in the Questionnaire responses, which plaintiffs were obliged to supply *the Government* under oath.

B. Work-Product Privilege

Plaintiffs' claim of privilege pursuant to the work product doctrine also ignores the Courts earlier resolution and lacks a proper privilege log, let alone a proven factual predicate. Again, plaintiffs' argument dwells upon the general nature of the work product doctrine and its salutary purpose. What the argument fails to do is establish that the doctrine applies here. Plaintiffs' concern over the admixture of attorney and "Law Grad" notes concerning "impressions of the individual," "conclusions about what the client expressed to them about their hours," and theories and strategies for deposition of that individual and for trial" is no answer to the Court's holding that the documents are not protected – nor a substitute for the plaintiffs' obligation to supply, *to the Government*, responses under oath – not a Law Grad's conclusion about the responses.

Plaintiffs' argument that the notes were prepared "in anticipation of litigation," one of the predicates of a work product claim, also is of little moment. As the Court noted, the Questionnaire response process was intended to settle the case. To the extent that, in 2006 and 2007, plaintiffs' attorneys still had to interview plaintiffs concerning the basis and amount of their claim, the privileged component of any such interview could have been recorded in another column on their "chart." But, those columns that comprise a plaintiff's actual responses should

be disclosed. At bottom, those plaintiffs who wish to proceed with a claim in *this* lawsuit either supplied Questionnaire responses for the Government's analysis or they did not. If all they supplied was extraneous information concerning this or some other litigation, intended for their attorneys' ears only, then they have not timely responded to the Questionnaire, and as the MOU provides, their claims should be dismissed.[5]

Assuming without having demonstrated that the privilege applies, plaintiffs also assert that the absence of notes does not prejudice the Government, because it "has been provided with Plaintiffs' database of information." Pl. Br. 10. Setting aside the apparent anomaly between plaintiffs' willingness to disclose their attorneys' conclusions about plaintiffs's responses, and not plaintiffs responses themselves, our opening brief demonstrated our need for the notes at issue and why depositions of the "many" plaintiffs whose forms are incomplete without those notes will not do. Suffice it to say the "database" is not accurate, attorney interpretations are not what the parties negotiated, and the Court already has rejected this argument. See Christofferson, slip op. (Oct. 25, 2007) at 10-11.

[5] Indeed, it is clear that at least some missed the deadline and the changes, i.e., the complete responses, were not supplied until after the November 30, 2006 deadline. In addition to the changes made to the Questionnaire responses of Carla Smith, which were noted in our moving brief, changes were made to Sharon West's Questionnaire response on January 16, 2007 (Exh. B at 17761); changes were made to Toni-Ann Jewell's Questionnaire response February 2, 2007 (Exh. C at 8089); and changes were made to Laura Workman's Questionnaire response on March 8, 2007 (Exh. D at 18339). The changes to Ms. Workman's response are dated outside the dates of plaintiffs' privilege log and after plaintiffs had sent defendant the 'database" purporting to contain all the information from the Questionnaires. Many other changes on the Questionnaires, and all the changes purportedly made directly on the spreadsheet, are undated. Accordingly, any changes made after the November 30, 2007, deadline should be disregarded. By that deadline, plaintiffs were expected to have submitted a complete and accurate Questionnaire response, and the parties had agreed that the claims of plaintiffs who failed to do so would be dismissed, and had so informed the Court. A select few should not be able to take advantage of a procedure not agreed upon and presumably not made known to other plaintiffs.

Finally, plaintiffs contend that the MOU does not require them to waive any privilege. While that may be, they have not shown that any privilege applies here. The MOU's bottom line is this: plaintiffs either provide certified responses to all required questions or not. If they wish not to, because they consider the responses privileged, their complaints should be dismissed. But, as we demonstrated in our moving brief, what they cannot do is selectively disclose that which suits them and conceal that which does not. See Bittaker v. Woodford, 331 F.3d 715, 719 (9th Cir. 2003) ("The principle is often expressed in terms of preventing a party from using the privilege as both a shield and a sword").

## II. The Right To Amend Is Not At Issue. Either Plaintiffs Certified Their Responses Timely Or They Did Not. At Issue Is The Content Of Their Alleged Amendments

Plaintiffs focus upon their purported right to "amend" is no more than a restatement of their argument that we should be required to accept the attorneys' report of Questionnaire responses (the "database"), and not the responses themselves. In our moving brief and in multiple conferences, reports and briefs, we have explained why we cannot do so. In its October 25, 2007 decision, the Court agreed. Christofferson, slip op. at 11. Consequently, the claims of any plaintiffs whose Questionnaires are incomplete should be dismissed, regardless of what information plaintiffs' attorneys' placed on the spreadsheet.[6] The Plaintiffs' "amendment" twist

[6] In its October 25, 2007 opinion, the Court stated that it had "no reason to doubt the veracity and accuracy of plaintiffs' database (particularly its summary of questions #14 and #17)" (Christofferson, slip op., Oct. 25, 2007, at 11). However, since then, defendant has been provided ample reason to doubt the accuracy of plaintiffs' "database." The information on the spreadsheet is inconsistent with information on the Questionnaire responses. See Defendant's Motion To Compel Production of Notes of Responses to Questionnaires at 6-8. Moreover, plaintiffs' attorney admits that it filled in responses to questions # 14 and # 17 on the spreadsheet even when narrative responses were not supplied on the Questionnaire responses and kept no written memorialization of the actual responses plaintiffs gave them. Def. Ex. 1 at 10.

on its privilege argument does not demonstrate otherwise.

At the outset, we note that plaintiffs were afforded more than enough to time to draft, amend, and finalize their questionnaire forms. The questionnaires were mailed two years ago, in August 2006. Although, by agreement, responses were due almost two months later on September 29, 2006, the deadline was extended another two months to November 30, 2006. According to plaintiffs' attorney's declaration in support of the motion to conceal the questionnaires, his firm began receiving completed forms as early as August 7, 2006. Declaration of Jack W. Lee in Support of Plaintiffs' Motion for a Protective Order ¶ 12. In addition to the questionnaire, which was carefully crafted over a year's time with the advice of both parties' survey experts and identified plaintiffs' attorney's contact information, plaintiffs received a cover letter from their attorneys offering more advice and contact information. Thus, the right or opportunity to amend, or the right to assistance is simply not at issue here.

Perhaps that is why plaintiffs have been unable to demonstrate that they need to amend. Thus, in place of any actual plaintiff's complaint, plaintiffs' argument is based upon plaintiffs' attorney's conclusory and hearsay-based declaration attesting to the helplessness of his clients – who presumably were interested in pursuing these claims, who were responsible for recording the work hours at issue, and who presumably were prepared to attest to their supervisor's knowledge of their overtime. See 29 U.S.C. § 207 (a)(1).[7]

The declaration's principle point is to attack the comprehensability of questions 14 and

[7] These questions are of particular importance in establishing entitlement to be paid because the facts are uniquely in possession of the plaintiffs. During the 2000 decennial census, their workstations were their residences and the thousands of neighborhoods enumerated. Def. Exs. F and G at 3-2.

16 – questions that counsel and his expert helped draft and approved. In fact, there is nothing confusing about the questions, which read:

> 14. If any of your numbers are based on estimates, please identify on the Payroll Summary, where indicated, which numbers are estimates and describe how you arrived at those estimates.
>
> 16. Do you believe your supervisor knew or had reason to know
> that you worked overtime prior to your working the overtime?
> _____Yes _____No

Def. Ex. 2 at 7.

Question 17 requested the factual basis for the response to Question 16:

> 17. If you answered yes to Question 16, explain why you believe your supervisor knew or had reason to know that you worked overtime prior to your working the overtime. (Please refer to pages 2 and 3, **"What is Overtime?"** for examples of how your supervisor knew or should have known about your working overtime.)

Id.

Plaintiffs suggest that question 16 is confusing because it required plaintiffs to "speculate as to whether their supervisor had knowledge of their overtime." Pl. Br. 14. However, the question asks only for plaintiffs' *belief* concerning their supervisor's knowledge, and the Questionnaire itself explained that:

> It is not necessary for your supervisor to state directly to you that he/she knows that you are working overtime to show knowledge. Examples of how your supervisor "knew or should have know" you worked overtime would include, but are not be [sic] limited to, the following situations: (1) where your supervisor asked you to record hours worked over 40 on the next week's time sheet (rolling over hours ); (2) where your supervisor signed off on your weekly timesheets which already recorded 40 hours that week and advised your to work more hours to complete the job; (3) where your supervisor asked or ordered you to work overtime for which you have not been paid; (4) where you told your supervisor

> that you were or would be working overtime; and (5) where your supervisor worked overtime alongside you.

Def. Ex. 2 at 3.

Counsel suggests that "examples" of confusion include the case of Carol Siemons, who "claimed she could not estimate her overtime. . . " Pl. Br. 16.[8] However, estimating is beyond the layman's ken; if anything, the responsive statements by Ms. Siemons and others demonstrate the comprehensability of the questions at issue. Def. Exh. G; B at 17763; C at 8091; D at 18340. To the extent it is a statement of "confusion" regarding how to estimate, even assuming that counsel's assistance was helpful, which we do not gainsay, this is why claimants were given four months. The case of Ms. Kiper, who, the brief simply asserts, "clear[ly] . . did not fully understand the question" (Pl. Br. 17) is of the same sort. Ms. Kiper's case as reported in the brief betrays no confusion concerning question 14, explaining only that her estimate required "adding lunch breaks and/or travel times."

Finally, plaintiffs assert that it is proper to amend as a matter of procedural law, relying upon RCFC 15(e) (amendment of the complaint) and 26(e) (updating discovery). However, as we have noted, amendment is not the issue. Failing to provide us with the evidence of amendment is. Moreover, the analogy to the preparation of a complaint and discovery responses is particularly inapt. In the circumstances to which Rule 15 and 26 apply, presumably, a party already has: conferred with its counsel, had as many discussions as necessary, then, *by the deadline*, pursuant to Rule 11, filed its complaint alleging its prima facie case; then, having received a discovery request, again met with its counsel, and submitted *verified* responses under

---

[8] Short of a deposition there is no way to know how persistent this problem is and, without a proper privilege log or interviewing plaintiffs' attorney, we have no way of knowing.

penalty of perjury to its opponent; then, in the example given, learned that its verified allegations or responses were incorrect, and supplied its opponent with more information from which its opponent can draw its own conclusions or inquire into the reason for the changed information.[9]

Here, pursuant to rules established by the MOU, we expected and were entitled to receive complete, sworn responses establishing a *prima facie* right to recovery. If, after we received those responses, we received additional information, we would have considered it, considered its timeliness, and perhaps have identified the respondent for a deposition. Applying the analogy to Rules 15 and 26, we have not received a complaint that states a claim – nor we have received a discovery response by the deadline.

In July 2007, the Court held that plaintiffs' effort to graft claims for regular hours regular hours on to the MOU process was not in the interests of justice, because to overcome the prejudice to the Government would require too much time and, therefore, delay the resolution of this case. Christofferson v. United States, No. 01-495C, slip op. at 7 (Fed. Cl. July 6, 2007). The same reasoning applies to plaintiffs' current effort to alter the established process by excusing plaintiffs from supplying original, authentic responses. As explained in detail in our moving brief – and in the four other briefs we have filed in defense of this process, there is a reason the parties agreed to the very few, pointed questions they did: the answers to those

[9] Plaintiff actually closes with a general attack upon the negotiated procedure, an assertion that it is one of a kind in its counsel's experience, and that we have somehow stacked the deck by effectively precluding plaintiffs from talking to their lawyers. However, this is the procedure that the parties and the Court has fashioned, and is particularly apt for ensuring that those entitled to be paid are and those who are not entitled are not. Moreover, it is one in which plaintiffs have had full access to counsel – presumably since 2001. The fact that plaintiffs either could not make a simplified prima facie case in four months or that their counsel were investigating their claims at the same time they were preparing Questionnaire responses is a matter of poor execution, not faulty design.

questions *establish* entitlement to payment (or not) and the amounts at issue. Plaintiffs' answer is that we can get the information we require in depositions. But there remain over 1800 plaintiffs and plaintiff has conceded that "many" are affected by the substitutions at issue. Thus, before we would even contemplate such an ambitious undertaking, we would do what we already have done: endeavor to devise a substitute procedure. But, with the Court's assistance, we already have done that, and it took us over a year to do so.

If plaintiffs have now changed their answers to Question No. 16 from "no" to "yes," or supplied a response where there was none, we are entitled to see whatever notes substantiate those changes – before deciding whether to accept any changes, additions, or deletions – or whether to depose a particular plaintiff.

Respectfully submitted,

GREGORY G. KATSAS
Assistant Attorney General

s/ Jeanne E. Davidson
JEANNE E. DAVIDSON
Director

s/ Steven J. Gillingham
STEVEN J. GILLINGHAM
Assistant Director
Commercial Litigation Branch
Civil Division
Department of Justice
1100 L St. NW
Attn: Classification Unit
8th Floor
Washington, D.C. 20530
Tele: (202) 616-2311

Attorneys for Defendant

OF COUNSEL:

RAYNA ELLER
Office of the General Counsel
Department of Commerce
Bureau of the Census
Suitland MD 20746-24

July 24, 2008

**CERTIFICATE OF SERVICE**

I hereby certify that, on July 24, 2008, a copy of the foregoing was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/ Steven J. Gillingham