# IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| KENT CHRISTOFFERSON, et al., | Case N. 01-495C |
| Plaintiffs | Senior Judge Eric G. Bruggink |
| v. | |
| UNITED STATES OF AMERICA, | **Plaintiffs' Reply Brief Submitted Pursuant To Court's July 1, 2008 Order** |
| Defendant. | |

Jack W. Lee
Bethany Caracuzzo
MINAMI TAMAKI LLP
360 Post St. 8th Floor
San Francisco, CA 94108-4903
Telephone: (415) 788-9000
Attorneys of Record

**TABLE OF CONTENTS**

**INTRODUCTION** ........ 2

**ARGUMENT** ........ 3

A. DEFENDANT ATTEMPTS TO USE THE MEDIATION PROCESS TO EXCLUDE PLAINTIFFS' CLAIMS ........ 3

1. The MOU Mediation Process Does Not Provide For Dismissal Of Groups Of Plaintiffs ........ 3
2. Defendant Seeks Relief Which Violates Plaintiffs' Due Process Rights ........ 4
3. Defendant's Position Is Extreme: These Claim Forms Are For Mediation Purposes Only ........ 6
4. Defendant Attempts To Stand In The Place Of The Court ........ 6
5. Examples Cited by Defendant Demonstrate Claimants' Confusion ........ 7

B. DEFENDANT IS BREACHING THE MOU BY REFUSING TO FOLLOW ITS PROCEDURES IN TAKING DEPOSITIONS ........ 8

C. THE NOTICE OF CLAIMS PROCEDURE INDICATES THAT PLAINTIFFS CANNOT BE DISMISSED BASED UPON THEIR INCOMPLETE RESPONSES ........ 10

D. THIS MOU PROCESS HAS NOT BEEN A "SUCCESS" ........ 10

E. PLAINTIFFS ARE ENTITLED TO, AND RESERVE THEIR RIGHT TO, LITIGATE THEIR CLAIMS ........ 11

F. THESE COMMUNICATIONS AND IMPRESSIONS ARE ABSOLUTELY PROTECTED AND WERE NOT WAIVED ........ 13

G. ALTERNATIVE METHODS OF ADDRESSING THIS ISSUE ........ 14

**CONCLUSION** ........ 14

# TABLE OF AUTHORITIES

**Cases**
*EEOC v. Lutheran Social Services* 186 F.3d (1999) .......... 14

**Statutes**
29 USC §216(b) .......... 13

**Rules**
Federal Rules of Evidence 408 .......... 6

**Treatises**
Newberg on Class Actions, 2008 Update .......... 13

# INTRODUCTION

A "deal is a deal" except when Defendant says so. Defendant's true intentions are revealed in its footnote 4 on page 8 of its Brief: the claims of Plaintiffs who submitted incomplete questionnaire responses "*should be dismissed.*" Defendant seeks to use the Memorandum of Understanding ("MOU") settlement process to summarily adjudicate individual claims and define a class of Plaintiffs. This is not the bargain the parties struck. This result -- dismissal of claims -- sought by Defendant was never discussed by the parties during negotiations over the MOU, is not contained in the MOU, and was never intended by Plaintiffs' counsel.

The purpose and process called for by the MOU was to possibly expedite settlement of the thousands of opt-in claims in this matter. It is not part of the litigation process; it is not part of the discovery process, nor is it part of the trial process. It is, essentially, a *mediation* process. Defendant provides no authority, as there is none, that information informally submitted by Plaintiffs in an attempt to mediate a case, can somehow by used as a means to deny any number of those Plaintiffs' claims.

Furthermore, there has been no Court order defining *any* class nor has there has been a ruling on Plaintiffs' motion for class certification. Defendant cannot use the mediation process to define or exclude potential class members. Following Defendant's tactic to its logical conclusion, Defendant will next move to strike out class members and/or refuse to discuss or attempt to settle large numbers of class members, based arbitrarily on whether Defendant unilaterally accepts their Claim Form responses. (Defendant's Brief, p. 8 at fn. 4.) Again, this was not contemplated by the MOU.

Lastly, Defendant now explicitly breaches its MOU obligations by abandoning the MOU's procedures by refusing to take the depositions of Plaintiffs whose Claim Forms it believes raises issues: "[I]t is not for plaintiff to say that defendant should engage in costly and time-consuming depositions." (Defendant's Brief at p.9.) Yet, that is the *exact procedure* Defendant's counsel agreed upon when it signed the MOU: "Step Four: Identification of Deponents Subject to Further Discovery." (MOU, Plaintiffs' Opening Brief, Exh B, Declaration of J. Lee at p.2, ¶8.)

Defendant improperly attempts to obtain privileged attorney-client communications and work product rather than follow the process set forth in the MOU. The Government's motion improperly seeks to use the settlement process to exclude and/or deny wholesale the claims of hundreds of Plaintiffs.

## ARGUMENT

### A. DEFENDANT ATTEMPTS TO USE THE MEDIATION PROCESS TO EXCLUDE PLAINTIFFS' CLAIMS

#### 1. The MOU Mediation Process Does Not Provide For Dismissal Of Groups Of Plaintiffs

The February 2005 MOU is an agreed-upon procedure for ***mediation of these claims***. (MOU, Exh B to J. Lee Decl. at p.1, ¶2: "the parties met with their mediator, Senior Judge Eric Bruggink, to design a procedure for resolving the claims of the non-Concord, California plaintiffs in this case.") The MOU describes how the parties were to attempt to obtain sufficient information to be able to negotiate and "make their best efforts to resolve the remaining 7500+ claims through the process described [in the MOU]" (*Id.* at ¶4.)

> *In general, the process will include four general phases: first, completion of a questionnaire to elicit information about plaintiffs' claims and to advise plaintiffs of this process and their obligations; second, depositions of some plaintiffs; third, the negotiation of the claims of the deponents; and fourth, the application of the deposition results to the claims of the non-deposed plaintiffs.* MOU at pg. 1.

At no point in the MOU do the parties ever indicate that the procedure set forth in the MOU could be used to summarily exclude any class of Plaintiffs based upon information exchanged pursuant to the MOU process. If that was Defendant's understanding, it was never communicated to Plaintiffs and it was never included in the MOU.

**2. Defendant Seeks Relief Which Violates Plaintiffs' Due Process Rights**

Using Defendant's newly expressed interpretation of the MOU and its purpose, Plaintiffs would be denied their due process rights of pursuing litigation in this case. Defendant has now made it clear that it believes it, and only it, can determine which class of Plaintiffs can proceed:

> "Therefore, it is defendant's position that any information on the spreadsheet that differs from that on the questionnaire responses…***should be disregarded***. Also, the claims of plaintiffs who submitted incomplete questionnaire responses cannot be cured by means of the spreadsheet and ***should be dismissed***." (Defendant's Brief at p.8, fn. 4; emphasis added.)

Defendant does not address the second issue the Court asked the parties to address. Instead, the Government couches its motion as an issue over work product, when really it seeks to dismiss groups of Plaintiffs. ***At no point does the MOU agreement ever indicate that incomplete questionnaires will result in immediate dismissal, yet Defendant now asks the Court to impute this key provision into the MOU.*** If such an extreme provision had been in the MOU, Plaintiffs' counsel would never have agreed to its inclusion and would have proceeded with the

litigation process afforded under the law.

Defendant is attempting to circumvent the entire litigation process and use Plaintiffs' counsel to "trick" its clients. In order to dismiss a party from an action, a Defendant is required to file formal motions, such as motions to dismiss, for summary judgment, or to decertify a class. Instead of following established motion practice, Defendant relies upon Plaintiffs' counsel's efforts to elicit information from their clients to seize an undue advantage. The MOU calls for Plaintiffs' counsel to encourage thousands of its clients to complete claim forms and to call their counsel for advice on how to estimate their years-old claims for overtime pay and other legal issues. Defendant seizes on claimants' reliance on legal counsel to claim "adulteration" and asks the Court to dismiss groups of Plaintiffs without having met any of the burdens placed upon it by the law. This is a violation of the law and of Plaintiffs' due process rights.

Furthermore, Plaintiffs are *still* entitled to proceed to litigation and trial. This would include full-fledged discovery by *both* sides: Plaintiffs would have the right to pursue full discovery against Defendant rather than the one-sided process now being used. The mediation process described in the MOU is a voluntary one that Plaintiffs agreed to in the hopes that resolution could be obtained expeditiously. The mediation process agreed to in the MOU never contemplated that the mediator would have the power to dismiss wholesale certain Plaintiffs' claims during mediation. Mediation is, by definition, voluntary and it involves negotiation, not summary adjudication or dismissal of claims. If this is the result the Government seeks to attain through mediation, e.g., dismissal of wholesale groups of Plaintiffs' claims based upon questionnaire responses, then Plaintiffs are all placed in conflict with one another, and with their counsel.

### 3. Defendant's Position Is Extreme: These Claim Forms Are For Mediation Purposes Only

Defendant's position is extreme: it asks the Court to dismiss each and every Plaintiff who submitted an incomplete questionnaire. No class action litigation of which Plaintiffs' counsel is aware has ever dismissed unsophisticated plaintiffs for their failure to fill out every answer to a *mediation* questionnaire seeking answers on technical legal questions, on their first try, without assistance of counsel. Yet when Plaintiffs' counsel does provide legal counsel, Defendant argues their answers cannot be considered because they have been "adulterated."[1] Clients are damned if they do and damned if they don't.

No law supports such an extreme position. These questionnaires and responses are not even admissible at trial and cannot be used during the discovery process or for impeachment. These Claim Forms were crafted, distributed, completed, and used *solely for the mediation process set forth in the MOU.* If the MOU procedure is abandoned, these questionnaires are unusable by *any* party, as they are confidential disclosures made during and for the mediation process; similar to exchanged mediation briefs and communications made during mediation. (Fed. Rules of Evid. 408) The law does not provide any authority that information exchanged and disclosed that is not even part of the formal discovery process can result in a summary dismissal of a party.

### 4. Defendant Attempts To Stand In The Place Of The Court

Defendant takes the position, for the first time, that it believes Defendant has the power and authority to define the class of Plaintiffs. It believes all it has to do is inform the Court that

---

[1] How can a form be 'adulterated' when Defendant has the entire claim form which consists of all plaintiffs' uncensored writings, has the database, and can depose the plaintiffs? These changes were made with the consent of the Plaintiffs, based on information they provided.

specific Plaintiffs submitted confusing or incomplete mediation Claim Forms and those Plaintiffs will be dismissed. As set forth above, this violates Plaintiffs' due process rights and fails to follow the Federal Rules of Civil Procedure for bringing a motion for summary judgment or motion to dismiss. It also is an improper attempt to define the class of Plaintiffs that can proceed. Defendant here attempts to bypass that process and have it, and it alone, define and winnow down which Plaintiffs may proceed.

**5. Examples Cited by Defendant Demonstrate Claimants' Confusion**

Defendant cites as examples the files of specific claimants. However, these examples only demonstrate how any alleged ambiguities are within the Government's power (and MOU duty) to clarify. (Deft's Brief at pp. 4-6) Plaintiffs' counsel addresses Doris McAfee, Shunell Kiper and Steven Graham in their opening Brief; these people were clearly confused by the questions. Ms. McAfee did not originally answer Question 16 as to whether or not her supervisor knew she was working overtime, until she spoke to her attorney--- which she was encouraged to do. (Exh. J to Decl. of J. Lee submitted with opening Brief.)

As Plaintiffs' counsel Jack W. Lee described in detail during the June 17, 2008 telephonic conference with the Court, many Plaintiffs simply could not understand what such a speculative question meant. Many at first believed that supervisor knowledge meant supervisor approval, rather than imputed knowledge such as a supervisor seeing a person clock in and out over a 12+ hour day. The Court agreed it was a "very subjective" question. (See Exh. A to Defense Brief at 34:6-35:13) Claimant Steven Graham answered No. 16 with a "yes," but did not answer No. 17 regarding why he believed his supervisor knew, evidencing his confusion. (See Exh. J to Decl. of J. Lee) Shunell Kiper explicitly wrote on her form that she did not know how

to estimate, but then attempted to estimate on a separate document. (*Id.*) Rachel Muhammad initially failed to answer questions 14-17, but filled out the Payroll Summary (Exh. 19 to Deft's Brief.)

Richard Lawler indicated that he did not want to participate, but then in the exact same claim form, he provided his estimate of overtime hours worked —thereby indicating that he *did* wish to proceed and was confused. Plaintiffs' counsel contacted him to confirm whether he intended to proceed, and he responded affirmatively. (Exh. 12 to Defense Brief.) Cindy Leung expressed her confusion and her concern that she would fill something out wrong. (Exh. 17 to Defense Brief.) In fact, she wrote, "I really don't remember. I don't want to write anything wrong. Did I work over 40 hours from Aug. to Nov. 2000?" This only evidences the claimants need for clarification and assistance from their counsel, just as they would for any discovery response.

Jeffrey Smith properly answered all the questions, and even wrote why his supervisor knew of his overtime (Exh 21 to Defense Brief) but then was confused filling out the Payroll Summary. All of Defendant's examples merely show how most of the responding claimants were confused by the questions and/or how to fill out the forms. All these individual situations demonstrate how responses can or would be subject to clarification through depositions as contemplated by the MOU process.

## B. DEFENDANT IS BREACHING THE MOU BY REFUSING TO FOLLOW ITS PROCEDURES IN TAKING DEPOSITIONS

In its Brief, Defendant repeatedly-- six times --reiterates that the MOU procedures are to be strictly adhered to, with no deviation. (See Defendant's Brief at p.1, ¶3; p.2, ¶1; p.8, ¶1; p.9,

¶4; p.11, ¶; p.15, ¶2):

> "…the MOU, which established the procedural regimen this case has followed for years." (Defendant's Brief at p.8, ¶1.)
>
> "Of equal moment are the parties' and the Court's interest in preserving the painstakingly-developed, intricate and already successful procedure the parties and the Court have crafted to resolve this case with the Courts' prime directive: to achieve the "just, speedy, and efficient resolution of ***every*** action." (*Id.* at p.15, ¶2; emphasis added.)

And yet in spite of demanding that the MOU is to be rigidly followed, Defendant itself ***refuses to comply with the MOU*** when it arbitrarily chooses:

> "Plaintiffs also suggest we cure these defects by simply taking depositions. However, having adulterated hundreds of questionnaires, it is not for plaintiff to say that defendant should engage in costly time-consuming depositions…" (*Id.* at p.9, ¶3)
>
> "[Defendant] has in good faith negotiated a procedure to obtain reliable information to resolve this case without having to depose every plaintiff." (*Id.* at p.9, ¶4-p.10.)

Defendant is simply wrong. The MOU expressly sets forth that Defendant is required to select and depose *any* Plaintiffs.

> "8. Step Four: Identification of Deponents Subject to Further Discovery: After the questionnaires are returned…the parties will examine the data…identif[y] specific groups for further discovery, including depositions, [and depose certain Plaintiffs]."
> MOU at p. 2.

Defendant calls for the Court to adhere to the MOU only when it sees fit. The Government cannot have it both ways. Defendant is correct to say that the parties negotiated this MOU over a long period of time and that the procedure was one that both parties agreed to. But instead of following that procedure, Defendant seeks to add requirements to the MOU that do not exist and chooses to ignore procedures that are explicitly included.

## C. THE NOTICE OF CLAIMS PROCEDURE INDICATES THAT PLAINTIFFS CANNOT BE DISMISSED BASED UPON THEIR INCOMPLETE RESPONSES

Accompanying the Claim Forms that were sent to Plaintiffs to be completed was a "Notice of Claims Procedures." (See Exh. A to the Declaration of John Ota, Esq., filed herewith.) This Notice was expressly reviewed and approved by Defense counsel.

> "**<u>What is the Process?</u>**
>
> **Step One.**
> ...Your claim for overtime *will not necessarily be disqualified* if you cannot recall the exact days and/or amounts of overtime you worked. The Claim Form must be signed under penalty of perjury and must be returned by the date indicated. *A good faith estimate of your overtime hours which later turns out to be in error is not perjury.*" (Exh A to Decl. of J. Ota; Emphasis added.)

Defendant is now requesting that the Claim Notice procedure that was supplied to Plaintiffs be nullified retroactively simply because Defendant wants to arbitrarily diminish the number of plaintiff class. Defendant takes the unsupported position that Plaintiffs should be required to have perfect and complete responses to their Claim Forms, even when the Notice explained to them the Claim Form responses need not be perfect.

## D. THIS MOU PROCESS HAS NOT BEEN A "SUCCESS"

While Defendant claims that the MOU process has been a "success," Plaintiffs believe it has been a failure and a source of unproductive satellite litigation whose sole purpose has been to delay payment of the rightful claims of the plaintiffs. The process of submitting and attempting to informally mediate and resolve these claims by utilizing the voluntary Claims Form process has been going on for over three years, with no resolution in sight. Not a single claim, except for the Concord Plaintiffs, has been adjudicated, or been the subject of any negotiation. Defendant

now seeks to further violate this process by trying to use the Claim Forms as a way to summarily adjudicate individuals out of a "potential" settlement. Despite the Court's admonition during the recent June 2008 conference call to Defendant to settle the cases it finds meritorious, Defendant declines to proffer *any* plan to pay *any* individual to whom they clearly and plainly owe overtime. Prime candidates would be the field operative supervisors whom the Court found non-exempt (*see* Order of July 29, 2005) and whom Defendant itself concedes worked hundred of hours of overtime as a required part of their jobs. Defendant admitted during the June 17, 2008 telephone conference with the Court that it could be negotiating hundreds of cases involving field operative

supervisors' whose claims have already been determined as viable. (*See* Transcript, Exh. A to Defense Brief at p.40:16-41:8; 42:3-43:8). Yet the Government refuses to pay any amount to the hundreds of claimants whom they *admit* are owed money for overtime and whom the Court has determined were non-exempt three years ago. If the "success" of the MOU is measured by expediting settlement to worthy claimants, the MOU has failed.

**E. PLAINTIFFS ARE ENTITLED TO, AND RESERVE THEIR RIGHT TO, LITIGATE THEIR CLAIMS**

As set forth above, Defendant has already boldly pronounced its anticipatory breach of the MOU. Instead of taking a statistical sampling of depositions, which they admit would solve their issue --see Defense Reply Brief at p.9, footnote 8-- they intend to engage in a person-by-person attack on each of the Claim Form responders. Just as Defendant now wants to expand the scope of obtaining the Claim Forms to obtaining attorney notes that are work-product and privi

leged, Defendant will next seek to depose Plaintiffs' attorneys on these issues if they deem the attorneys' notes to be ambiguous. This tactic portends more satellite litigation on individual details of each claim form and each claimant. If this approach is allowed, individual Plaintiffs would prefer, and actually have no choice, but to withdraw from the mediation track and move forward and litigate their claims individually and engage in full reciprocal discovery and trial. This can be accomplished either individually or in groups, in forums close to the claimants' homes. The current claimants live in over 17 different states.

If it is Defendant's position that they can unilaterally ignore the MOU provisions, ignore deposition discovery, and attempt to whittle away at the class of plaintiffs by improperly using the mediation process as a sword, then Plaintiffs believe return to the litigation track is no less efficient and would give both parties an insight on which claims will prevail in successive mini-trials.

If Plaintiffs withdraw from the voluntary mediation process, *all +/- 7400 opted-in claimants would be entitled to trial(s).*[2] The rationale for this is that for the purposes of attempting to expeditiously resolve these claims through an MOU process, Plaintiffs agreed that those who did not return Claim Forms, could not continue with the *mediation* process. At no point did Plaintiffs agree, nor has the Court ordered, that opted-in Plaintiffs who did not submit a Claim Form (4,644 people) were automatically dismissed, or even subject to dismissal, for not sending in the Form. The Claim Form process does not negate the FLSA opt-in forms submitted by thousands of claimants and, therefore, does not exclude any opted-in Plaintiff from the litiga-

---

[2] Litigation would proceed with all opted-in Plaintiffs, other than those members expressly limited by the Court's prior Orders. (See *Christofferson v. United States*, 64 Fed. Cl. 316 (February 28, 2005): dismissal of claims where a plaintiff asserted he or she was owed overtime because he or she worked over 8 hours in a day but worked less than 40 hours in a week; and *Christofferson v. United States*, 72 Fed.Cl.541 (August 22, 2006): denial of two specific individual plaintiffs' request for equitable tolling.)

tion---it just excluded them from the MOU mediation. FLSA requires that interested Plaintiffs take affirmative steps to proceed with claims by opting in. (29 USC §216(b); *See* Newberg on Class Actions, 2008 Update, at §7:38). These Plaintiffs took that affirmative step and have not been excluded or dismissed by Court order.

## F. THESE COMMUNICATIONS AND IMPRESSIONS ARE ABSOLUTELY PROTECTED AND WERE NOT WAIVED

Defendant argues in its opening brief that Plaintiffs have waived the attorney-client privilege applicable to their telephone conversations with their attorneys because Plaintiffs' counsel supplied Defendant with the Claim Forms/questionnaires and database. (Defendant's Brief at p.13, ¶1.) This argument is circular and misrepresents what occurred. Plaintiffs strongly objected to turning over the Claim Forms and database, and filed a Motion for Protective Order requesting protection from having to do so. The Court ordered Plaintiffs' counsel to turn over the Claim Forms and the database, and Plaintiffs' counsel complied with that Court Order. At no time did Plaintiffs voluntarily turn over this information and at no time did they waive their objections to turning them over. In fact, the Court already noted that there was no such waiver. (Transcript, Exh 1 to Defendant's Brief, at 12:3-12: "No, certainly nothing after that [his order compelling production of the claim forms] would be a waiver…")

It is disingenuous of Defense counsel to represent that Plaintiffs voluntarily waived the privilege by turning over the documents, when Defendant is aware of the objections voiced by Plaintiffs' counsel and the motion procedure that resulted in an *order* to turn the information over.

## G. ALTERNATIVE METHODS OF ADDRESSING THIS ISSUE

While Plaintiffs object to turning over attorney-client privileged information and work product, less drastic alternatives to simply dropping those plaintiffs' claims must be considered in the interests of justice. One example would be, as the Court noted, sample clients can be deposed to see if there really is an issue regarding the attorney-client privilege.

As set forth above, the MOU provides for the depositions of the Plaintiffs if Defendant seeks additional information. If Defendant deems the database to be "adulterated" then it can ask the claimants directly what the basis was for their initial and subsequent responses. This is a far less intrusive means of obtaining the "information" Defendant says it needs than releasing privileged communications. (See *EEOC v. Lutheran Social Services*, 186 F.3d 959, 966 (1999), holding that even though privilege was not waived, the EEOC had access to all evidentiary information because the Commission could interview witnesses itself).

## CONCLUSION

Defendant asks the Court to impose, out of thin air, a critical term to the MOU to further frustrate and delay the rightful claims of census workers denied overtime pay. The Government renounces the MOU process while it seeks to wield it as a sword to dismiss Plaintiffs' claims without proper motion, in violation of Plaintiffs' due process rights. The MOU process has now gone on for over three years without success and little progress to show for the thousands of hours expended by Plaintiffs' counsel in paying statistical consultants, sending out claim forms, speaking to thousands of claimants and collecting the data for submission to the Government. Plaintiff has complied with all its obligations under the MOU and more. It is clear that Defen-

dant does not intend to utilize the MOU process in a good faith attempt to resolve these claims, but instead wrongfully seeks to use it to attack individually Plaintiffs' claims, summarily adjudicate individuals' claims, and violate the attorney-client privilege by "tricking" laypersons to seek their lawyers' counsel. The Government's change of position on the MOU forces Plaintiffs to reconsider the MOU process and the satellite litigation it has spawned. Plaintiffs reserve their right to return to the litigation track so that individual opt-ins can have full and fair adjudication of their lawful claims. Plaintiffs ask the Court to set a case management conference immediately following the resolution of this motion to discuss other options.

DATED: July 29, 2008

Respectfully submitted,

MINAMI TAMAKI LLP

JACK W. LEE
BETHANY CARACUZZO
360 Post St. 8th Floor
San Francisco, CA 94108-4903
Telephone: (415) 788-9000
Fax: (415) 398-3887

**CERTIFICATE OF SERVICE**

I hereby certify that, on July 29, 2008, copies of the PLAINTIFFS' REPLY BRIEF SUBMITTED PURSUANT TO COURT'S JULY 1, 2008 ORDER and DECLARATION OF JOHN OTA IN SUPPORT OF PLAINTIFFS' REPLY BRIEF were filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's Electronic Filing System. Following the Court's Order, I also served copies by electronic mail on the Court at Jeremy_Kehr@ao.uscourts.gov; and on steve.gillingham@usdoj.gov.



Rob Robinson